UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

-------------------------------------------------------------------------x

| | |
|---|---|
| SHIRLEY STEARNS, JOHN STEARNS, KAREN | : |
| HALL, MARILYN HAYBECK, M.S., a minor, JAMES | : |
| COLE ON BEHALF OF B.C., a minor, SHIRLEY | : |
| STEARNS FOR THE ESTATE OF MICHELLE R. | : |
| RING, AMENIA JONAUS, GERNESSOIT JONAUS, | : |
| AMENIA JONAUS FOR THE ESTATE OF JUDE | : |
| JONAUS, DAPHNIE JONAUS MARTIN, RICKY | : |
| JONAUS, MARCKENDY JONAUS, CLAIRE JONAUS, | : |
| SHAREN JONAUS MARTIN, ALVIS BURNS, JODEE | : |
| JOHNSON, JAMES HIGGINS, WENDY COLEMAN, | : |
| BRIAN RADKE, NOVA RADKE, HENRY J. | : |
| BANDHOLD, AFONSO BANDHOLD, MARIANA | : |
| BANDHOLD, HENRY J. BANDHOLD FOR THE | : |
| ESTATE OF SCOTT BANDHOLD, JOAQINA SAENZ | : |
| CHORENS, LUZ MARIA ESTRADA, FRANCES | : |
| CATHERINE CASTRO, ELVA ESPINOZA, KATHY | : |
| STILLWELL, M.C., a minor, KATHY STILLWELL | : |
| FOR THE ESTATE OF DANIEL CRABTREE, JOSHUA | : |
| STARKEY, MICHAEL MOCK, TAMMY DORSEY, | : |
| WILLIAM RONALD LITTLE, BRENDA LITTLE, | : |
| KIRA SIKES, BRENDA LITTLE ON BEHALF OF | : |
| WILLIAM RONALD LITTLE, JR., JOSH DENMAN, | : |
| MICHAEL LUCAS, ADAM G. STOUT, SAMANTHA | : |
| BALSLEY, SAMANTHA BALSLEY FOR THE | : |
| ESTATE OF MICHAEL C. BALSLEY, L.R.-W, a minor, | : |
| DEADRA GARRIGUS, DAVID GARRIGUS, NICHOLE | : |
| GARRIGUS, KYLA OSTENSON, MATTHEW | : |
| GARRIGUS, LAVONNA HARPER, LINDSAY | : |
| YOUNG, LINDSAY YOUNG FOR THE ESTATE OF | : |
| BRETT A. WALTON, S.W., a minor, CASEY | : |
| BOEHMER, KIMBERLEE AUSTIN-OLIVER, DAVID | : |
| DIXON, TIFFANY M. LITTLE, K.L., a minor, | : |
| DAKOTA SMITH-LIZOTTE, SHYANNE SMITH- | : |
| LIZOTTE, TIFFANY M. LITTLE FOR THE ESTATE | : |
| OF KYLE A. LITTLE, RENE POOL, MATTHEW | : |
| LAMMERS, URSULA ANN JOSHUA FOR THE | : |
| ESTATE OF RON J. JOSHUA, JR., JESSICA | : |
| HEINLEIN, JESSICA HEINLINE FOR THE ESTATE | : |
| OF CHARLES T. HEINLEIN, CHARLES HEINLEIN, | : |
| SR., JODY LYN HEINLEIN, MARICEL MURRAY, | : |
| J.M., a minor, MARICEL MURRAY FOR THE ESTATE | : |
| OF JOEL L. MURRAY, BRYAN S. SHELTON, | : |
| AMANDA SHELTON, BRYAN T. SHELTON, | : |

**COMPLAINT**

BRYAN S. SHELTON FOR THE ESTATE OF                    :
RANDOL S. SHELTON, PRESTON REECE,                     :
SHAYLYN C. REECE, JOSHUA SCHICHTL, MARK               :
SCHICHTL, KATHERINE PROWSE, NICHOLAS                  :
PROWSE, H.S., a minor, S.S., a minor, C.S., a minor,  :
A.S., a minor, WILLIE WILSON, II, TABITHA             :
MCCOY, L.M., a minor, R.M., a minor, TABITHA          :
MCCOY FOR THE ESTATE OF STEVE A. MCCOY,               :
KYNESHA DHANOOLAL FOR THE ESTATE OF                   :
DAYNE D. DHANOOLAL, MARLEN PICKETT,                   :
KEMELY PICKETT, VIVIAN PICKETT, KYSHIA                :
SUTTON, MERLESE PICKETT FOR THE ESTATE OF             :
EMANUEL PICKETT, DAVID WAYNE HARTLEY,                 :
KAYLEE HARTLEY, LISA DUNCAN, WILLIAM                  :
ALLMON, RUSSEL HICKS, SR., RUSSEL HICKS, JR.,         :
PATRICK O'NEILL, JOHN O'NEILL, DIANNE                 :
O'NEILL, MAX W. HURST, LILLIAN HURST,                 :
CHRISTOPHER HURST, MARK HURST, MAX W.                 :
HURST FOR THE ESTATE OF DAVID R. HURST,               :
DANIEL MENKE FOR THE ESTATE OF JONATHAN               :
D. MENKE, JESSICA H. WILLIAMS, J.H., a minor,         :
J.H., a minor, J.H., a minor, JESSICA H. WILLIAMS     :
FOR THE ESTATE OF JAMES M. HALE, ANDREW               :
BRADLEY, JULIE SALHUS, KRISTEN GALEN, KARI            :
CAROSELLA FOR THE ESTATE OF JUSTIN BAUER,             :
SANDRA VALENCIA, VERONICA ANDRADE PENA,               :
ANGELICA ANDRADE, VERONICA D. ANDRADE,                :
ROBERTO ANDRADE, SR. FOR THE ESTATE OF                :
ROBERTO ANDRADE, JR., RHETT MURPHY,                   :
JOSEPH HELTON, SR., JESSICA CABOT, JEANNE             :
RHEA MCMANUS, and CASSIE COLLINS FOR THE              :
ESTATE OF SHANNON M. SMITH,                           :
                                                      :
                 Plaintiffs,                          :
                                                      :
-against-                                             :
                                                      :
THE ISLAMIC REPUBLIC OF IRAN                          :
Ministry of Foreign Affairs                           :
Khomeini Avenue                                       :
United Nations Street                                 :
Tehran, Iran                                          :
                                                      :
                 Defendant.                           :
--------------------------------------------------------------------x

## I.       NATURE OF THE ACTION

1.       This is a civil action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A (hereinafter "FSIA") for wrongful death, personal injury and related torts, by the estates and families of United States nationals and/or members of the U.S. armed forces who were killed or injured in Iraq by the Islamic Republic of Iran ("Iran") and/or its agents between 2004 and 2011.

2.       Iran's aforementioned agents included the U.S.-designated Foreign Terrorist Organization (as that term is defined in 8 U.S.C. § 1189) Hezbollah, the Islamic Revolutionary Guard Corps ("IRGC"), whose subdivision known as the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF") is a U.S.-designated Specially Designated Global Terrorist ("SDGT"), and other terrorist agents that included a litany of Iraqi Shi'a terror groups referred to herein collectively as "Special Groups."

3.       The United States officially designated Iran a State Sponsor of Terrorism on January 19, 1984, pursuant to § 6(j) of the Export Administration Act, § 40 of the Arms Export Control Act, and § 620A of the Foreign Assistance Act.

4.       Hezbollah was designated a Foreign Terrorist Organization ("FTO") by the United States on October 8, 1997, and it has retained that designation since that time. Hezbollah was designated as an SDGT by the United States on October 31, 2001, pursuant to Executive Order ("E.O.") 13224.

## II.      JURISDICTION AND VENUE

5.       This Court has jurisdiction over this matter and over the Defendant pursuant to 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2) and 1605A(a)(1), which create subject-matter and personal jurisdiction for civil actions for wrongful death and personal injury against State Sponsors of Terrorism and their officials, employees and agents.

6.      28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury and related torts.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

## III.   <u>THE DEFENDANT</u>

8.      At all times relevant to this Complaint, Defendant Iran is and was a foreign state within the meaning of 28 U.S.C. § 1603 and designated a State Sponsor of Terrorism pursuant to § 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)).

9.      Iran provided material support and resources for the commission of acts of extrajudicial killing, within the meaning of 28 U.S.C. § 1605A, including the terrorist attacks in which Plaintiffs were killed, injured or maimed, and performed actions that caused the terrorist attacks and the harm to the Plaintiffs herein.

10.     The Government of Iran is politically and ideologically hostile to the United States and its allies, and has consistently provided material support for acts of international terrorism, including extrajudicial killings, torture and hostage takings, particularly through its Lebanese proxy, Hezbollah, and the IRGC.

11.     According to the U.S. State Department's 2005 *Country Reports on Terrorism*: "[t]he IRGC was increasingly involved in supplying lethal assistance to Iraqi militant groups, which destabilizes Iraq …. Senior Iraqi officials have publicly expressed concern over Iranian interference in Iraq, and there were reports that Iran provided funding, safe passage, and arms to insurgent elements."

12.     The IRGC-QF's "Department 2000" manages Iran's relationship with Hezbollah, which includes the flow of some of Iran's most sophisticated weapon systems, including military grade Explosively Formed Penetrators ("EFPs"), anti-tank guided missiles, RKG-3 armor penetrating anti-tank grenades and various rockets, such as the Fajr-5.

13.     EFPs were used to injure and kill most of the Plaintiffs herein. Such bombs are sometimes inaccurately called "improvised explosive devices" ("IEDs"); in reality, the EFPs were not "improvised" but professionally manufactured and specifically designed by Iran and its agents to target U.S. and Coalition Forces' armor.

14.     In October 2007, the IRGC-QF was designated as an SDGT pursuant to E.O. 13324 for its terrorism-related activities. The U.S. Treasury Department's press release announcing the designation noted that:

> The Qods Force has had a long history of supporting Hezbollah's military, paramilitary, and terrorist activities, providing it with guidance, funding, weapons, intelligence, and logistical support. The Qods Force operates training camps for Hezbollah in Lebanon's Bekaa Valley and has reportedly trained more than 3,000 Hezbollah fighters at IRGC training facilities in Iran. The Qods Force provides roughly $100 to $200 million in funding a year to Hezbollah and has assisted Hezbollah in rearming in violation of UN Security Council Resolution 1701.
>
> *In addition, the Qods Force provides lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shi'a militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians.* (Emphasis added.)

## IV.     IRAN'S MATERIAL SUPPORT TO ACTS OF TERRORISM IN IRAQ:  2004-2011

### A.     THE IRGC-QF IN IRAQ

15.     Even before the U.S. invasion of Iraq in 2003, the IRGC-QF had long cultivated ties to Shi'a opposition groups opposed to Saddam Hussein's brutal regime, including the Badr Corps that was headquartered in Iran throughout the 1990s.

3

16.     During that time, the Badr Corps smuggled men and weapons into Iraq to conduct attacks against the Hussein regime.

17.     Before 2003, the Badr Corps served as Iran's most important surrogate inside Iraq, acting as a de facto arm of the IRGC-QF.

18.     After Saddam Hussein's overthrow in 2003, the Badr Corps renamed itself the Badr Organization, and many of its operatives joined the newly formed Iraqi security forces.

19.     "Department 1000" of the IRGC-QF, known as the Ramezan Corps, was in charge of Iraq operations and remains the largest IRGC-QF command outside of Iran. It coordinated, armed and influenced the Badr Organization.

20.     Published reports indicate that thousands of members of the Badr Organization remained on the IRGC-QF payroll after 2004.

21.     Several senior Badr Organization operatives later emerged as key conduits for funneling weapons to Iranian proxies in Iraq from 2004 through 2011, including Abu Mustafa al-Sheibani, a key smuggler of deadly Iranian IEDs, and Jamal Ja'far Muhammad, a.k.a. Abu Mahdi al-Muhandis (a.k.a. "The Engineer"), who later led Kata'ib Hezbollah (discussed further below).

22.     Although the Badr Organization evolved into a major political organization with seats in the new Iraqi parliament, it also played a significant role in facilitating Special Groups operations in Iraq, and a segment of senior Special Groups commanders such as Al-Muhandis are, or were, initially Badr Organization personnel.

23.     On May 1, 2003, President Bush declared that "major combat operations in Iraq have ended."

24.     On May 23, 2003, the Coalition Provisional Authority established as the interim government for Iraq disbanded the Iraqi military forces.

4

25.     The U.N. Security Council authorized the post-conflict occupation of Iraq by Coalition Forces in October 2003 to maintain "security and stability." S.C. Res. 1511, para. 13, U.N. Doc. S/RES/1511 (Oct. 16, 2003).

26.     Although U.S. policy (supported by U.N. Security Council resolutions) was to establish peace and stability in Iraq in the hopes of establishing a democratic government, Iran viewed the U.S. peacekeeping efforts in Iraq as a potential threat to its regime.

27.     Rather than engage in armed conflict with the U.S. or other Coalition Forces, Iran chose to undermine U.S. peacekeeping efforts by supporting terrorism and sectarian violence in Iraq.

28.     After 2003, the IRGC inserted hundreds of its Iranian-trained operatives into Iraq's state security organs (notably the Ministry of Interior intelligence structure) in part through its influence within the Badr Organization.

29.     Although a June 7, 2004 U.N. Security Council Resolution (S.C. Res. 1546, U.N. Doc. S/RES/1546) expressly assigned Coalition Forces the task of helping Iraq "*by preventing and deterring terrorism,*" Iran set out to target Coalition Forces and force them out of Iraq.

30.     Notwithstanding the fact that from October 16, 2003 onward, U.S. military personnel in Iraq were participants in an internationally recognized peace keeping mission, Iran opposed such efforts, and engaged in a policy of terrorism, murder, kidnapping and torture against American military personnel, Coalition Forces and Iraqi citizens with the goals of destabilizing Iraq and increasing Iranian influence within that country.

31.     Iran, through its authorized agents and instrumentalities acting within the scope of their employment, agency and direction from Iran, provided material support and/or resources that

facilitated acts of torture, extrajudicial killing and hostage taking that caused personal injury or death to more than one thousand Americans in Iraq.

32.     In particular, Iranian agents developed and cultivated Shi'a Special Groups, providing training in the use of EFPs, Improvised Rocket Assisted Munitions ("IRAMs"), rocket-propelled grenades, sniper fire, mortars and operational and computer security.

**B.     SHI'A SPECIAL GROUPS**

**1.     JAYSH AL MAHDI and the PROMISED DAY BRIGADES**

33.     Jaysh al Mahdi (the "Mahdi Army" or "JAM") was established by radical Shi'a cleric Muqtada al-Sadr in June 2003.

34.     JAM was co-founded by Imad Mughniyah, one of Hezbollah's most senior commanders, acting under the direction of Iran.

35.     Like the Badr Organization, it received support and training from the IRGC.

36.     On April 18, 2004, JAM led the first major armed confrontation from the Shi'a community against U.S.-led forces in Iraq.

37.     JAM expanded its territorial control of mixed or predominantly Shi'a neighborhoods and displaced or killed the local Sunni population. JAM was able to gain initial control in many of the neighborhoods surrounding Baghdad (including the Shi'a slum referred to as "Sadr City") by offering the Shi'a population protection and social services.

38.     Muqtada Al-Sadr purportedly dissolved part of his militia after 2007, but he maintained a small group of Iranian-supported terrorists called the Promised Day Brigades to carry out attacks against Coalition Forces.

39.     The Promised Day Brigades received funding, training and weapons from the IRGC.

40.     The Promised Day Brigades actively targeted U.S. forces in an attempt to disrupt security operations and further destabilize Iraq.

## 2.     KATA'IB HEZBOLLAH

41.     For many years, Kata'ib Hezbollah ("KH") functioned as Iran's go-to terrorist group in Iraq and received support from Lebanese Hezbollah, including training in weapons use, IED construction and operation, and sniper, rocket, and mortar attacks.

42.     Historically, KH operated mainly in Shi'a areas of Baghdad, such as Sadr City, and throughout the Shi'a-dominated south of Iraq.

43.     On June 24, 2009 the United States designated KH as an FTO.

44.     The State Department's notice of KH's designation stated:

> The organization has been responsible for numerous violent terrorist attacks since 2007, including improvised explosive device bombings, rocket propelled grenade attacks, and sniper operations. Kata'ib Hezbollah also targeted the International Zone in Baghdad in a November 29, 2008 rocket attack that killed two UN workers. In addition, KH has threatened the lives of Iraqi politicians and civilians that support the legitimate political process in Iraq.

45.     KH was also simultaneously designated as an SDGT because it was "responsible for numerous terrorist acts against Iraqi, U.S., and other targets in Iraq since 2007."

46.     The Treasury Department's press release announcing KH's designation explained that it had "committed, directed, supported, or posed a significant risk of committing acts of violence against Coalition and Iraqi Security Forces…."

47.     The press release also quoted then-Under Secretary for Terrorism and Financial Intelligence Stuart Levey as stating: "the IRGC-Qods Force provides lethal support to Kata'ib Hezbollah and other Iraqi Shia militia groups who target and kill Coalition and Iraqi Security Forces."

48.     The press release further reported that between March 2007 and June 2008, KH led a number of attacks against U.S. forces in Iraq, advising: "[a]s of 2008, Kata'ib Hezbollah was funded by the IRGC-Qods Force and received weapons training and support from Lebanon-based Hezbollah. In one instance, Hezbollah provided training--to include building and planting IEDs and training in coordinating small and medium arms attacks, sniper attacks, mortar attacks, and rocket attacks--to Kata'ib Hezbollah members in Iran."

49.     In 2008, the U.S. Department of Defense stated that KH, "also known as Hezbollah Brigades, is a terrorist group believed to receive funding, training, logistics and material support from Iran to attack Iraqi and coalition forces using what the military calls 'explosively formed penetrators' – roadside bombs designed to pierce armor-hulled vehicles – and other weapons such as rocket-assisted mortars."

50.     KH's leadership includes Abu Mahdi al-Muhandis (real name: Jamal al-Ibrahimi), a long-standing member of the Badr Organization who lived for many years in Iran.

51.     Al-Muhandis is wanted in Kuwait for his alleged role in the 1983 bombings of the American and French embassies in Kuwait City, as well as for his alleged involvement in the assassination attempt on the Kuwaiti Emir in 1985.

52.     Al-Muhandis was designated as an SDGT in July 2009 on the same day KH was so designated.

53.     In a July 2010 press briefing, U.S. General Ray Odierno described KH as "clearly connected to Iranian IRGC."

### 3.   ASA'IB AHL AL-HAQ or the LEAGUE OF THE RIGHTEOUS

54.     Asa'ib Ahl al-Haq ("AAH") is a Shi'a Special Group supported by Hezbollah and the IRGC-QF that has conducted assassinations and operations against Iraqi civilians, Iraqi Security Forces and Coalition Forces.

55.     AAH was originally established by a follower of Muqtada al-Sadr named Qais al-Khazali.

56.     His brother, Laith Khazali, also helped to lead the organization.

57.     AAH split from al-Sadr's JAM in 2006. Following the split, AAH conducted thousands of IED attacks against U.S. and Iraqi forces, engaged in kidnappings of Westerners, launched rocket and mortar attacks on the U.S. Embassy, murdered American soldiers and assassinated Iraqi officials.

58.     At all relevant times, AAH received significant funding, training and arms from Iran, and closely coordinated with the IRGC-QF and Hezbollah.

59.     In particular, Lebanese Hezbollah operative Ali Musa Daqduq ("Daqduq") provided training to AAH terrorists.

60.     The U.S. Treasury Department's November 19, 2012 press release announcing Daqduq's designation as an SDGT stated, in part:

> Daqduq is a senior Hezbollah commander responsible for numerous attacks against Coalition Forces in Iraq, including planning an attack on the Karbala Joint Provincial Coordination Center (JPCC) [sic] on January 20, 2007, which resulted in the deaths of five U.S. soldiers.

61.     Daqduq is Lebanese-born and served in Hezbollah for twenty-four years.

62.     Daqduq served as a bodyguard for Hezbollah leader Hassan Nasrallah and also led Hezbollah operations in large areas of Lebanon.

63.     According to the U.S. government, Daqduq "was in Iraq working as a surrogate for Iranian Revolutionary Guards Corps Quds Force operatives involved with special groups."

64.     In 2005, Daqduq was directed by senior Lebanese Hezbollah leadership to go to Iran and work with the IRGC-QF to train Iran's proxies in Iraq.

65.     According to the U.S. government: "In May 2006, [Daqduq] traveled to Tehran with Yussef Hashim, a fellow Lebanese Hezbollah and head of their operations in Iraq. There they met with the commander and deputy commander of the Iranian Quds Force special external operations."

66.     Daqduq was ordered to Iraq to report on the training and operations of the Iraqi Special Groups.

67.     In the year prior to his capture in 2007, Daqduq made four trips to Iraq where he monitored and reported on the training and arming of the Special Groups in mortars and rockets, manufacturing and employment of IEDs, and kidnapping operations.

68.     Most significantly, Daqduq was tasked with organizing the Special Groups in ways that mirrored how Hezbollah was organized in Lebanon.

69.     Daqduq also helped the IRGC train Iraqis at multiple sites in Iran.

70.     Using training groups of approximately twenty to sixty Iraqis at a time, Daqduq instructed his trainees on how to use EFPs, mortars and rockets, as well as intelligence, sniper and kidnapping operations.

71.     The IRGC then provided operational, intelligence and logistical support to insert the terrorist trainees back into various Iraqi cities where they rejoined their respective Special Groups.

72.     The IRGC also supplied the Groups with weapons and a funding stream ranging from an estimated $750,000 to $3 million per month.

73.     Hezbollah and the IRGC-QF provided JAM, the Promised Day Brigades, KH, AAH, and other Shi'a groups with a variety of weapons used to target U.S. and Coalition Forces engaged in their post-2003 peacekeeping mission.

74.     These weapons included signature Iranian munitions such as EFPs and IRAMs, as well as 107 mm rockets (often used as part of IRAMs), 120 mm and 60 mm mortars, RPG launchers and other small arms.

### C.     EXPLOSIVELY FORMED PENETRATORS

75.     One of Iran's primary forms of material support and/or resources that facilitated extrajudicial killings of U.S. citizens in Iraq was the financing, manufacturing and deployment of EFPs.

76.     As noted above, the EFPs deployed by the IRGC and Hezbollah in Iraq were not truly "improvised" explosive devices but professionally manufactured and specifically designed to target U.S. and Coalition Forces' armor.

77.     EFPs constitute "weapons of mass destruction" as that term is defined in 18 U.S.C. § 2332a(2)(A).

78.     First used by Hezbollah against Israeli armor in Lebanon, EFPs are known as shaped charges, usually made with a manufactured concave copper disk and a high explosive (such as C-4) packed behind the liner.

79.     In Iraq, EFPs were often triggered by a passive infra-red device that set off the explosion within the EFP's casing, forcing the copper disk forward and turning it into a high velocity slug that could pierce most military-grade armor.

80.     To produce these weapons, copper sheets are often loaded onto a punch press to yield copper discs. These discs are annealed in a furnace to soften the copper. The discs are then loaded into a large hydraulic press and formed into the disk-like final shape.

81.     EFPs are far more sophisticated than homemade explosive devices such as traditional IEDs, and they are designed specifically to target vehicles such as armored patrols and supply convoys, although Hezbollah and the Special Groups have deployed them against U.S. and Iraqi civilians as well.

82.     Although Iran's use of EFPs was publicly disclosed by U.S. and British officials in 2005, the official identification of *specific* attacks as EFP attacks was not first publicly disclosed until 2010.

83.     In 2006, the U.S. State Department's *Country Reports on Terrorism* further documented Iran's specific efforts to provide terrorists with lethal EFPs to ambush and murder U.S. and other Coalition Forces:

> Iranian government forces have been responsible for at least some of the increasing lethality of anti-Coalition attacks by providing Shia militants with the capability to build IEDs with explosively formed projectiles similar to those developed by Iran and Lebanese Hezbollah. The Iranian Revolutionary Guard was linked to armor-piercing explosives that resulted in the deaths of Coalition Forces. The Revolutionary Guard, along with Lebanese Hezbollah, implemented training programs for Iraqi militants in the construction and use of sophisticated IED technology. *These individuals then passed on this training to additional militants in Iraq.* (Emphasis added.)

84.     Also in 2006, Brigadier Gen. Michael Barbero, Deputy Chief of Staff for Strategic Operations of the Multi-National Force – Iraq ("MNF-I") stated: "Iran is definitely a destabilizing force in Iraq. I think it's irrefutable that Iran is responsible for training, funding and equipping

some of these Shi'a extremist groups and also providing advanced IED technology to them, and there's clear evidence of that."

85.     Brigadier Gen. Kevin Bergner commented on Iran's material support of Hezbollah operatives in Iraq:

> Actions against these Iraqi groups have allowed coalition intelligence officials to piece together the Iranian connection to terrorism in Iraq […] Iran's Quds Force, a special branch of Iran's Revolutionary Guards, is training, funding and arming the Iraqi groups. […] It shows how Iranian operatives are using Lebanese surrogates to create Hezbollah-like capabilities. And it paints a picture of the level of effort in funding and arming extremist groups in Iraq…. The groups operate throughout Iraq. They planned and executed a string of bombings, kidnappings, sectarian murders and more against Iraqi citizens, Iraqi forces and coalition personnel. They receive arms -- including explosively formed penetrators, the most deadly form of improvised explosive device -- and funding from Iran. They also have received planning help and orders from Iran.

86.     In May 2007, the Commander of the Multinational Division-Center, U.S. Army Major General Richard Lynch, commented that "[m]ost of our casualties have come from improvised explosive devices. That's still the primary threat to our soldiers -- IEDs. And we have an aggressive campaign to counter those IEDs, but they still are taking a toll on our soldiers: 13 killed, 39 soldiers wounded. *What we're finding is that the technology and the financing and the training of the explosively formed penetrators are coming from Iran.* The EFPs are killing our soldiers, and we can trace that back to Iran." (Emphasis added.)

87.     According to the U.S. State Department's 2007 *Country Reports on Terrorism*:

> The Islamic Revolutionary Guard Corps (IRGC)-Qods Force, continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, mortars that have killed thousands of Coalition and Iraqi Forces, and explosively formed projectiles (EFPs) that have a higher lethality rate than other types of improvised explosive devices (IEDs), and are specially designed to defeat armored vehicles used by Coalition Forces. The Qods

Force, in concert with Lebanese Hezbollah, provided training outside Iraq for Iraqi militants in the construction and use of sophisticated IED technology and other advanced weaponry. These individuals then passed on this training to additional militants inside Iraq, a "train-the-trainer" program. In addition, the Qods Force and Hezbollah have also provided training inside Iraq. In fact, Coalition Forces captured a Lebanese Hezbollah operative in Iraq in 2007.

88.     The U.S. State Department reaffirmed these exact allegations against Iran in its 2008 *Country Reports on Terrorism*.

## V.     **THE PLAINTIFFS**

### 1.     **THE MAY 3, 2007 ATTACK – BAGHDAD**

**The Ring Family**

89.     Michelle R. Ring was a citizen of the United States and was domiciled in the State of Oregon when she was killed in Iraq.

90.     On May 3, 2007, Michelle R. Ring, aged 24, was serving in the U.S. military when she was involved in a mortar attack.

91.     Michelle R. Ring was killed in the attack.

92.     The terrorist group that planned and executed the mortar attack was trained and armed by Iran's IRGC-QF with the assistance of Hezbollah.

93.     Plaintiff Shirley Stearns is a citizen of the United States and is domiciled in the State of Oregon. She is the mother of Michelle R. Ring.

94.     Plaintiff John Stearns is a citizen of the United States and is domiciled in the State of Oregon. He is the father of Michelle R. Ring.

95.     Plaintiff Karen Hall is a citizen of the United States and is domiciled in the State of Alaska. She is the sister of Michelle R. Ring.

96.     Plaintiff Marilyn Haybeck is a citizen of the United States and is domiciled in the State of Oregon. She is the sister of Michelle R. Ring.

97.     Plaintiff M.S., a minor represented by his legal guardian, Shirley Stearns, is a citizen of the United States and is domiciled in the State of Oregon. He is the son of Michelle R. Ring.

98.     Plaintiff B.C., a minor represented by his legal guardian, James Cole, is a citizen of the United States and is domiciled in the State of Tennessee.  He is the son of Michelle R. Ring.

99.     James Cole is a citizen of the United States and domiciled in the State of Tennessee. He was the ex-husband of Michelle R. Ring and is the legal guardian of Plaintiff B.C. James Cole brings an action solely on behalf of Plaintiff B.C., a minor.

100.    Plaintiff Shirley Stearns brings an action, individually and on behalf of the Estate of Michelle R. Ring, as its legal representative.

101.    As a result of the attack, and the death of Michelle R. Ring, Plaintiffs Shirley Stearns, John Stearns, Karen Hall, Marilyn Haybeck, M.S. and B.C. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their daughter's/sister's/mother's society, companionship, comfort, advice and counsel.

## 2.     THE SEPTEMBER 6, 2005 ATTACK – BAGHDAD

**The Jonaus Family**

102.    Jude Jonaus was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

103.    On December 6, 2005, Jude Jonaus, aged 27, was serving in the United States military in Iraq when an EFP detonated near his Humvee in Baghdad.

104.    Jude Jonaus was killed in the attack.

105.     The weapon used to kill Jude Jonaus was an Iranian-manufactured EFP provided to Iranian-funded and –trained terror operatives in Iraq.

106.     Plaintiff Amenia Jonaus is a citizen of the United States and domiciled in the State of Florida.  She is the mother of Jude Jonaus.

107.     Plaintiff Gernessoit Jonaus Martin is a citizen of the United States and domiciled in the State of Florida.  He is the father of Jude Jonaus.

108.     Plaintiff Amenia Jonaus brings this action individually and on behalf of the Estate of Jude Jonaus.

109.     Plaintiff Daphnie Jonaus Martin is a citizen of the United States and domiciled in the State of Florida.  She is the sister of Jude Jonaus.

110.     Plaintiff Ricky Jonaus is a citizen of the United States and domiciled in the State of South Carolina.  He is the brother of Jude Jonaus.

111.     Plaintiff Marckendy Jonaus is a citizen of the United States and domiciled in the State of Florida.  He is the brother of Jude Jonaus.

112.     Plaintiff Claire Jonaus is a citizen of the United States and domiciled in the State of Florida.  She is the sister of Jude Jonaus.

113.     Plaintiff Sharen Jonaus Martin is a citizen of the United States and domiciled in the State of Florida.  She is the sister of Jude Jonaus.

114.     As a result of the attack, and the death of Jude Jonaus, Plaintiffs Amenia Jonaus, Gernessoit Jonaus, Daphnie Jonaus Martin, Ricky Jonaus, Marckendy Jonaus, Claire Jonaus and Sharen Jonaus Martin have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 3.  <u>THE OCTOBER 6, 2005 ATTACK – BAGHDAD</u>

**<u>The Burns Family</u>**

115.    Alvis Burns is a citizen of the United States and domiciled in the State of Arizona.

116.    On October 6, 2005, Alvis Burns, then 41, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

117.    As a result of the blast, Alvis Burns's skull was cracked and shrapnel was lodged in his brain.

118.    Mr. Burns experienced brain swelling and he underwent brain surgery. He has been diagnosed with a traumatic brain injury ("TBI").

119.    Mr. Burns suffered shrapnel in his face and throughout his left arm. He also sustained hearing loss as a result of the blast.

120.    Mr. Burns fell in and out of comas and was, at times, in a vegetative state for long periods. He was fed through a feeding tube.

121.    As a result of the injuries sustained in the attack and following his many procedures, Mr. Burns has had to relearn how to swallow, eat, speak, and walk.

122.    He experiences pain in his legs and feet and currently uses an electric wheelchair and at times, a walker.

123.    As a result of the attack, and the injuries he suffered, Alvis Burns has experienced severe physical and mental anguish and extreme emotional pain and suffering.

124.    Plaintiff JoDee Johnson is a citizen of the United States and domiciled in the State of Arizona.  She is the sister of Alvis Burns.

125.    Plaintiff James Higgins is a citizen of the United States and domiciled in the State of Arizona.  He is the brother of Alvis Burns.

17

126.    Plaintiff Wendy Coleman is a citizen of the United States and domiciled in the State of Washington.  She is the sister of Alvis Burns.

127.    As a result of the attack, and the injuries Alvis Burns has suffered, Plaintiffs JoDee Johnson, James Higgins, and Wendy Coleman have experienced severe mental anguish, and extreme emotional pain and suffering.

**The Radke Family**

128.    Brian Radke is a citizen of the United States and domiciled in the State of Arizona.

129.    On October 6, 2005, Brian Radke, then 30, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

130.    As a result of the attack, Brian Radke sustained shrapnel to his body, including a piece that clipped his carotid artery.

131.    He also sustained shrapnel in his right leg and he has undergone reconstructive knee surgery.

132.    His jaw was fractured in multiple locations, and he lost his right finger.

133.    His left arm was fractured in two locations, and his median nerve was severed.

134.    He has undergone numerous surgical procedures, including those to address the severed nerve and to emplace rods and to apply skin grafts in his left arm.

135.    He was in a coma, during which time he was fed by a feeding tube and breathed through a trach tube.

136.    Mr. Radke still has pieces of shrapnel in his body, including some fragments lodged in his brain.

137.    Mr. Radke's injuries have required physical therapy and occupational therapy.

138.   Mr. Radke has been diagnosed with post-traumatic stress disorder ("PTSD") and has received treatment and counseling. He has been prescribed medication to address both the pain and emotional impact of the attack.

139.   As a result of the attack, and the injuries he suffered, Brian Radke has experienced severe physical and mental anguish and extreme emotional pain and suffering.

140.   Plaintiff Nova Radke is a citizen of the United States and domiciled in the State of Arizona.  She is the wife of Brian Radke.

141.   As a result of the attack, and the injuries Brian Radke has suffered, Plaintiff Nova Radke has experienced severe mental anguish, and extreme emotional pain and suffering.

## 4.   THE APRIL 12, 2006 ATTACK – MISIAB

**The Bandhold Family**

142.   Scott Bandhold was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

143.   On April 12, 2006, Scott Bandhold, aged 37, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

144.   Scott Bandhold was killed in the attack.

145.   The weapon used to kill Scott Bandhold was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

146.   Plaintiff Henry J. Bandhold is a citizen of the United States and domiciled in the State of Florida. He is the father of Scott Bandhold.

147.   Plaintiff Afonso Bandhold is a citizen of the United States and domiciled in Portugal. He is the son of Scott Bandhold.

19

148.   Plaintiff Mariana Bandhold is a citizen of the United States and domiciled in Portugal. She is the daughter of Scott Bandhold.

149.   Plaintiff Henry J. Bandhold brings an action individually and on behalf of the Estate of Scott Bandhold, as its legal representative.

150.   As a result of the attack, and the death of Scott Bandhold, Plaintiffs Henry J. Bandhold, Afonso Bandhold and Mariana Bandhold have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/father's society, companionship, comfort, advice and counsel.

## 5.   THE MAY 5, 2006 ATTACK – BAGHDAD

**The Saenz Family**

151.   Carlos N. Saenz was a citizen of the United States and domiciled in the State of Nevada when he was killed in Iraq.

152.   On May 5, 2006, Carlos N. Saenz, aged 46, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

153.   Carlos N. Saenz was killed in the attack.

154.   The weapon used to kill Carlos N. Saenz was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

155.   Plaintiff Joaqina Saenz Chorens is a citizen of the United States and domiciled in the State of Nevada. She is the mother of Carlos N. Saenz.

156.   Plaintiff Luz Maria Estrada is a citizen of the United States and domiciled in the State of Nevada. She is the sister of Carlos N. Saenz.

157.   Plaintiff Frances Catherine Castro is a citizen of the United States and domiciled in the State of Nevada. She is the sister of Carlos N. Saenz.

158.    Plaintiff Elva Espinoza is a citizen of the United States and domiciled in the State of Nevada. She is the sister of Carlos N. Saenz.

159.    As a result of the attack, and the death of Carlos N. Saenz, Plaintiffs Joaqina Saenz Chorens, Luz Maria Estrada, Frances Catherine Castro and Elva Espinoza have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 6.    THE JUNE 8, 2006 ATTACK – AL KUT

### The Crabtree Family

160.    Daniel Crabtree was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

161.    On June 8, 2006, Daniel Crabtree, aged 31, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

162.    Daniel Crabtree was killed in the attack.

163.    The weapon used to kill Daniel Crabtree was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

164.    Plaintiff Kathy Stillwell is a citizen of the United States and domiciled in the State of Ohio. She is the widow of Daniel Crabtree.

165.    Plaintiff M.C., a minor represented by her legal guardian, Kathy Stillwell, is a citizen of the United States and domiciled in the State of Ohio. She is the daughter of Daniel Crabtree.

166.    Plaintiff Kathy Stillwell brings an action individually and on behalf of the Estate of Daniel Crabtree.

167.    As a result of the attack, and the death of Daniel Crabtree, Plaintiffs Kathy Stillwell and M.C. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

## 7.    THE DECEMBER 3, 2006 ATTACK – BAGHDAD

**The Starkey Family**

168.    Joshua Starkey is a citizen of the United States and domiciled in the State of Texas.

169.    On December 3, 2006, Joshua Starkey, then 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

170.    The weapon used to injure Joshua Starkey was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

171.    As a result of the attack, shrapnel impacted Joshua Starkey's body on his right shoulder and right side of his face. He also sustained burns to his face and shoulder.

172.    Joshua Starkey has been diagnosed with PTSD.  He has sought out counseling and has been prescribed medication to address related issues.

173.    As a result of the attack, and the injuries he suffered, Joshua Starkey has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 8.    THE OCTOBER 22, 2006 ATTACK – BAGHDAD

**The Mock Family**

174.    Willsun Mock was a citizen of the United States and domiciled in the State of Kansas when he was killed in Iraq.

175.    On October 22, 2006, Willsun Mock, aged 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

176.    Willsun Mock was killed in the attack.

177.    The weapon used to kill Willsun Mock was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

178.    Plaintiff Michael Mock is a citizen of the United States and domiciled in the State of Kansas. He is the father of Willsun Mock.

179.    Plaintiff Tammy Dorsey is a citizen of the United States and domiciled in the State of Kansas. She is the sister of Willsun Mock.

180.    As a result of the attack, and the death of Willsun Mock, Plaintiffs Michael Mock and Tammy Dorsey have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 9.    THE DECEMBER 20, 2006 ATTACK – BAGHDAD

**The Little Family**

181.    William Ronald Little is a citizen of the United States and domiciled in the State of Florida.

182.    On December 20, 2008, William Ronald Little, then 43, and a former soldier in the U.S. military, was serving as a civilian contractor in Iraq when an EFP detonated near his vehicle.

183.    Mr. Little was injured in the attack.

184.    The weapon used to injure Mr. Little was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

185.    As a result of the attack, Mr. Little sustained shrapnel to his right eye socket necessitating the placement of a metal plate under his right eye. Shrapnel also impacted the right side of his face and his arm.

186.    He lost a portion of muscle tissue in his back shoulder area and part of his right tricep muscle was detached. He no longer has full range of motion in his right arm.

187.     He sustained nerve damage to his right cheek, sinus area, and his upper lip.  He has undergone rhinoplasty and other procedures to address the injuries to these areas.

188.     As a result of the attack, and the injuries he suffered, Mr. Little has experienced severe physical and mental anguish and extreme emotional pain and suffering.

189.     Plaintiff Brenda Little is a citizen of the United States and domiciled in the State of Florida. She is the wife of William Ronald Little.

190.     Plaintiff Kira Sikes is a citizen of the United States and domiciled in the State of Florida. She is the daughter of William Ronald Little and Brenda Little.

191.     Plaintiff William Ronald Little, Jr. is a citizen of the United States and domiciled in the State of Florida. He is the son of William Ronald Little and Brenda Little.

192.     Brenda Little brings this action individually and on behalf of William Ronald Little, Jr. as his power of attorney.

193.     As a result of the attack, and the injuries William Ronald Little has suffered, Plaintiffs Brenda Little, Kira Sikes and William Ronald Little, Jr. have experienced severe mental anguish, and extreme emotional pain and suffering.

**The Denman Family**

194.     Josh Denman is a citizen of the United States and domiciled in the State of Florida.

195.     On December 20, 2008, Josh Denman, then 21, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

196.     Josh Denman was injured in the attack.

197.     The weapon used to injure Josh Denman was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

198.    As a result of the attack, Josh Denman sustained shrapnel in his right arm and right hand.  He has undergone surgery and procedures to address the removal of shrapnel and scar tissue.

199.    As a result of the attack, and the injuries he suffered, Josh Denman has experienced physical and mental anguish and extreme emotional pain and suffering.

## 10.    THE JANUARY 20, 2007 ATTACK – KARBALA

200.    On the night of January 20, 2007, Iran launched a coordinated terrorist attack against the Provincial Joint Coordination Center ("PJCC") in Karbala, about thirty miles south of Baghdad.

201.    The attack on the PJCC was largely planned by Hezbollah, under the direction of Daqduq, and carried out by the Special Group AAH.

202.    Just after nightfall, a five-car convoy of black GMC Suburban sport-utility vehicles ("SUVs") – the type frequently used by the U.S. government in Iraq – made its way through three checkpoints on the access road approaching the PJCC.

203.    The vehicles contained approximately a dozen of AAH operatives dressed in U.S. military-style fatigues, carrying American-type weapons.

204.    After they entered the PJCC compound, the five vehicles split up, with some parking in front, and others circling to the back of the main building.

205.    After exiting their vehicles, the AAH terrorists threw grenades and opened fire on the PJCC compound with automatic rifles.

206.    One U.S. soldier, Johnathon M. Millican, jumped on one of the grenades that was thrown into the Coordination Center's main office, an upper-floor office that also contained the provincial Iraqi police chief's office.

207.    Although Millican was killed, and several other U.S. soldiers injured, his selfless act provided his fellow soldiers in the PJCC's main building a few extra moments to recover and begin returning fire.

208.    For his act of bravery, Johnathon M. Millican was posthumously awarded the Silver Star medal by the U.S. Army.

209.    At the same time that AAH terrorists were attacking the PJCC's main building, other AAH operatives detonated explosives throughout the PJCC and abducted four U.S. soldiers before fleeing the compound.

210.    The AAH getaway vehicles drove east, crossing the Euphrates River and then turned north.

211.    Realizing the likelihood of escaping with their captives was low, the AAH operatives murdered the four Americans they had just kidnapped, and abandoned their bodies and the vehicles near the town of Mahawil. Three of the four Americans died at the scene.

212.    Only one of the four abducted U.S. soldiers, Brian S. Freeman, was still alive when rescuers reached the scene. Two of the soldiers were found in the back of one of the SUVs, handcuffed and shot dead. A third soldier was found dead on the ground near the abandoned vehicles. Brian S. Freeman had also been shot in the head, and died on the way to the hospital.

213.    The terrorist group that planned and executed the PJCC attack, AAH, was trained and armed by Iran's IRGC with Hezbollah's assistance.

214.    On March 20, 2007, two months after the attack was perpetrated, Hezbollah leader Daqduq and AAH leader Qais al-Khazali and his brother Laith al-Khazali were captured by Coalition Forces in southern Iraq.

215.    The United States government charged them with responsibility for the Karbala PJCC attack.

216.    Documents captured with Qais al-Khazali showed that the IRGC-QF had gathered detailed information on "soldiers' activities, shift changes and defenses" at the PJCC "and this information was shared with the attackers."

217.    A 22-page memorandum found with Daqduq "detailed the planning, preparation, approval process and conduct of the [Karbala] operation," among others. Other documents discussed tactics to attack Iraqi and Coalition Forces.

218.    Daqduq also had a personal journal that noted his having met with Special Groups members who were targeting other Iraqis and Coalition Forces in the Diyala province using Improvised Explosive Devices ("IEDs"), as well as small-arms fire.

219.    According to U.S. military officials, both Daqduq and Qais al-Khazali admitted that senior leadership within the IRGC-QF knew of and helped plan the Karbala attack.

220.    It was later reported that U.S. spy satellites spotted a full-scale mockup of the Karbala PJCC at the IRGC-QF Farj Garrison in the city of Ahwaz, Iran.

221.    Analysis of the satellite imagery indicated that the IRGC had duplicated the PJCC's layout to specifically train the AAH operatives for the attack.

222.    The terror attack on the PJCC was commanded by Azhar al-Dulaymi. He was trained by Hezbollah operatives, including Daqduq, near the city of Qom, Iran, where he and his AAH operatives trained to execute military-style, precision kidnappings.

223.    Although al-Dulaymi commanded the attack, Daqduq, a longtime Hezbollah commander, masterminded it.

224.    Daqduq advised AAH commanders al-Dulaymi and Qais al-Khazali, and served as a liaison between the IRGC-QF and Qais al-Khazali, who along with his brother Laith al-Khazali, oversaw the attack.

225.    On April 26, 2007, the Commander of the MNF-I, Gen. David Petraeus, gave a briefing in which he stated:

> The Iranian involvement has really become much clearer to us and brought into much more focus during the interrogation of the members -- the heads of the Khazali network and some of the key members of that network that have been in detention now for a month or more. This is the head of the secret cell network, the extremist secret cells. They were provided substantial funding, training on Iranian soil, advanced explosive munitions and technologies as well as run of the mill arms and ammunition, in some cases advice and in some cases even a degree of direction.  When we captured these individuals -- the initial capture, and then there have been a number of others since then -- we discovered, for example, a 22-page memorandum on a computer that detailed the planning, preparation, approval process and conduct of the operation that resulted in five of our soldiers being killed in Karbala. It also detailed -- there are numerous documents which detailed a number of different attacks on coalition forces, and our sense is that these records were kept so that they could be handed in to whoever it is that is financing them. And there's no question, again, that Iranian financing is taking place through the Quds force of the Iranian Republican Guards Corps.

226.    The Americans killed during the Karbala attack included Brian S. Freeman, Johnathon M. Millican, Shawn P. Falter and Johnathan B. Chism.

**The Falter Family**

227.    Shawn P. Falter was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

228.    Michael Lucas is a citizen of the United States and domiciled in the State of New York. He is the step-brother of Shawn P. Falter.

229.    As a result of the attack, and the death of Shawn P. Falter, Plaintiff Michael Lucas has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his brother's society, companionship, comfort, advice and counsel.

## 11.    THE JANUARY 22, 2007 ATTACK – BAGHDAD

### The Stout Family

230.    Brandon L. Stout was a citizen of the United States and domiciled in the State of Michigan when he was killed in Iraq.

231.    On January 22, 2007, Brandon L. Stout, aged 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

232.    Brandon L. Stout was killed in the attack.

233.    The weapon used to kill Brandon L. Stout was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

234.    Plaintiff Adam G. Stout is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Brandon L. Stout.

235.    As a result of the attack, and the death of Brandon L. Stout, Plaintiff Adam G. Stout has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his brother's society, companionship, comfort, advice and counsel.

## 12.    THE JANUARY 25, 2007 ATTACK – BAGHDAD

### The Balsley Family

236.    Michael C. Balsley was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

237.    On January 25, 2007, Michael C. Balsley, aged 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

238.    Michael C. Balsley was killed in the attack.

239.    The weapon used to kill Michael C. Balsley was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

240.    Plaintiff Samantha Balsley is a citizen of the United States and domiciled in the State of Virginia. She is the widow of Michael C. Balsley.

241.    Plaintiff Samantha Balsley brings an action individually and on behalf of the Estate of Michael C. Balsley, as its legal representative.

242.    Plaintiff L.R.-W., a minor represented by his legal guardian Samantha Balsley, is a citizen of the United States and domiciled in the State of Virginia. He is the son of Michael C. Balsley.

243.    As a result of the attack, and the death of Michael C. Balsley, Plaintiffs Samantha Balsley and L.R.-W. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

## 13.    THE JANUARY 27, 2007 ATTACK – TAJI

### The Garrigus Family

244.    Mickel D. Garrigus was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

245.    On January 27, 2007, Mickel D. Garrigus, aged 24, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

246.    Mickel D. Garrigus was killed in the attack.

247.    The weapon used to kill Mickel D. Garrigus was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

248.    Plaintiff Deadra Garrigus is a citizen of the United States and domiciled in the State of Washington. She is the mother of Mickel D. Garrigus.

249.    Plaintiff David Garrigus is a citizen of the United States and domiciled in the State of Washington. He is the stepfather of Mickel D. Garrigus.

250.    Plaintiff Nichole Garrigus is a citizen of the United States and domiciled in the State of Washington. She is the sister of Mickel D. Garrigus.

251.    Plaintiff Kyla Ostenson is a citizen of the United States and domiciled in the State of Washington. She is the sister of Mickel D. Garrigus.

252.    Plaintiff Matthew Garrigus is a citizen of the United States and domiciled in the State of Washington. He is the brother of Mickel D. Garrigus.

253.    As a result of the attack, and the death of Mickel D. Garrigus, Plaintiffs Deadra Garrigus, David Garrigus, Nichole Garrigus, Kyla Ostenson and Matthew Garrigus have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 14.    THE FEBRUARY 26, 2007 ATTACK – DIWANIYAH

### The Beardsley Family

254.    William J. Beardsley was a citizen of the United States and domiciled in the State of Minnesota when he was killed in Iraq.

255.    On February 26, 2007, William J. Beardsley, aged 25, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

256.    William J. Beardsley was killed in the attack.

257.    The weapon used to kill William J. Beardsley was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

258.     Plaintiff Lavonna Harper is a citizen of the United States and domiciled in the State of Oklahoma. She is the mother of William J. Beardsley.

259.     As a result of the attack, and the death of William J. Beardsley, Plaintiff Lavonna Harper has experienced the loss of her son's society, companionship, comfort, advice and counsel.

## 15.    THE APRIL 9, 2007 ATTACK – BAGHDAD

### The Walton Family

260.     Brett A. Walton was a citizen of the United States and domiciled in the State of Oregon when he was killed in Iraq.

261.     On April 9, 2007, Brett A. Walton, aged 37, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

262.     Brett A. Walton was killed in the attack.

263.     The weapon used to kill Brett A. Walton was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

264.     Plaintiff Lindsay Young is a citizen of the United States and domiciled in the State of Oregon. She is the widow of Brett A. Walton.

265.     Plaintiff Lindsay Young brings an action individually and on behalf of the Estate of Brett A. Walton.

266.     Plaintiff S.W., a minor represented by her legal guardian Lindsay Young, is a citizen of the United States and domiciled in the State of Oregon. She is the daughter of Brett A. Walton.

267.     As a result of the attack, and the death of Brett A. Walton, Plaintiffs Lindsay Young and S.W. have experienced the loss of their husband's/father's society, companionship, comfort, advice and counsel.

## 16.    THE MAY 3, 2007 ATTACK – MUSAYYIB

**The Umbrell Family**

268.    Colby J. Umbrell was a citizen of the United States and domiciled in the State of Pennsylvania when he was killed in Iraq.

269.    On May 3, 2007, Colby J. Umbrell aged 26, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

270.    Colby J. Umbrell was killed in the attack.

271.    The weapon used to kill Colby J. Umbrell was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

272.    Plaintiff Casey Boehmer is a citizen of the United States and domiciled in the State of Maryland. She is the sister of Colby J. Umbrell.

273.    As a result of the attack, and the death of Colby J. Umbrell, Plaintiff Casey Boehmer has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her brother's society, companionship, comfort, advice and counsel.

## 17.    THE MAY 6, 2007 ATTACK – BAGHDAD

**The Martinez Family**

274.    Virgil C. Martinez was a citizen of the United States and domiciled in the State of Utah when he was killed in Iraq.

275.    On May 6, 2007, Virgil C. Martinez, aged 33, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

276.    Virgil C. Martinez was killed in the attack.

277.    The weapon used to kill Virgil C. Martinez was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

33

278.     Plaintiff Kimberlee Austin-Oliver is a citizen of the United States and domiciled in the State of Utah. She is the sister of Virgil C. Martinez.

279.     As a result of the attack, and the death of Virgil C. Martinez, Plaintiff Kimberlee Austin-Oliver has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her brother's society, companionship, comfort, advice and counsel.

## 18.    THE MAY 6, 2007 ATTACK – BAGHDAD

**The Dixon Family**

280.     Robert J. Dixon was a citizen of the United States and domiciled in the State of Minnesota when he was killed in Iraq.

281.     On May 6, 2007, Robert J. Dixon aged 27, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

282.     Robert J. Dixon was killed in the attack.

283.     The weapon used to kill Robert J. Dixon was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

284.     Plaintiff David Dixon is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Robert J. Dixon.

285.     As a result of the attack, and the death of Robert J. Dixon, Plaintiff David Dixon has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his brother's society, companionship, comfort, advice and counsel.

## 19.    THE MAY 8, 2007 ATTACK – SALMAN PAK

**The Little Family**

286.     Kyle A. Little was a citizen of the United States and domiciled in the State of Massachusetts when he was killed in Iraq.

287.    On May 8, 2007, Kyle A. Little, aged 20, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

288.    Kyle A. Little was killed in the attack.

289.    The weapon used to kill Kyle A. Little was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

290.    Plaintiff Tiffany M. Little is a citizen of the United States and domiciled in the State of Alabama. She is the widow of Kyle A. Little.

291.    Plaintiff K.L., a minor represented by her legal guardian Tiffany M. Little, is a citizen of the United States and domiciled in the State of Alabama. She is the daughter of Kyle A. Little.

292.    Plaintiff Dakota Smith-Lizotte is a citizen of the United States and domiciled in the State of Massachusetts. He is the brother of Kyle A. Little.

293.    Plaintiff Shyanne Smith-Lizotte is a citizen of the United States and domiciled in the State of Massachusetts. She is the sister of Kyle A. Little.

294.    Plaintiff Tiffany M. Little brings an action individually and on behalf of the Estate of Kyle A. Little as its legal representative.

295.    As a result of the attack, and the death of Kyle A. Little, Plaintiffs Tiffany M. Little, K.L., Dakota Smith-Lizotte, and Shyanne Smith-Lizotte have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/brother's society, companionship, comfort, advice and counsel.

## THE JULY 7, 2007 ATTACK – BAGHDAD

**The Miller Family**

296.    Mikeal Miller was a citizen of the United States and domiciled in the State of Oregon when he was injured in Iraq.

297.    On July 7, 2007, Mikeal Miller, aged 21, was serving 3in the U.S. military in Iraq when an EFP detonated near his vehicle.

298.    Mikeal Miller was severely injured in the attack when shrapnel went through his left eye and lodged in the back of his head.

299.    Mikeal never regained consciousness after the attack.

300.    Mikeal remained in a coma and died on January 27, 2008.

301.    The weapon used to kill Mikeal Miller was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

302.    Plaintiff Rene Pool is a citizen of the United States and domiciled in the State of Oregon. She is the mother of Mikeal Miller.

303.    As a result of the attack, and the death of Mikeal Miller, Plaintiff Rene Pool has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

## 20.    THE JUNE 10, 2007 ATTACK – BAGHDAD

**The Lammers Family**

304.    Matthew Lammers is a citizen of the United States and domiciled in the State of Arizona.

305.    On June 10, 2007, Matthew Lammers, then 25, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

306.     Matthew Lammers was injured in the attack.

307.     The weapon used to injure Matthew Lammers was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

308.     As a result of the attack, Matthew Lammers' left hand was completely severed. Both of his legs were nearly severed below his kneecaps.

309.     His femoral arteries had been cut and he lost a significant amount of blood.

310.     After the attack he began to asphyxiate due to his lungs filling with bodily fluids. Mr. Lammers remained conscious while this occurred.

311.     Mr. Lammers' injuries necessitated that he undergo surgery to fully amputate both of his legs below the knees. He has been rendered a triple amputee.

312.     He underwent multiple procedures and frequent wound cleanings. His treatment included debridement of muscle tissue.

313.     Mr. Lammers has prosthetics to assist with the use of his left hand. He must use a wheelchair to ambulate.

314.     He has experienced and continues to experience severe phantom limb pain and pain in his back.

315.     He has undergone extensive physical therapy.

316.     He has been diagnosed with a TBI.

317.     Mr. Lammers has also been diagnosed with PTSD and depression and has received treatment and counseling. He has been prescribed medication to address both the pain and emotional impact of the attack.

318.     Mr. Lammers continues to experience pain and emotional distress each day and he receives continuing treatment for his injuries.

319.    As a result of the attack, and the injuries he suffered, Matthew Lammers has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 21.    THE JULY 17, 2007 ATTACK – BAGHDAD

**The Joshua Family**

320.    Ron J. Joshua, Jr. was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

321.    On July 17, 2007, Ron J. Joshua, Jr., aged 19, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

322.    Ron J. Joshua, Jr. was killed in the attack.

323.    The weapon used to kill Ron J. Joshua, Jr. was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

324.    Plaintiff Ursula Ann Joshua is a citizen of the United States and domiciled in the State of Michigan. She is the mother of Ron J. Joshua, Jr. and brings an action on behalf of the Estate of Ron J. Joshua as its legal representative.

## 22.    THE JULY 31, 2007 ATTACK – BAGHDAD

**The Heinlein Family**

325.    Charles T. Heinlein, Jr. was a citizen of the United States and domiciled in the State of Michigan when he was killed in Iraq.

326.    On July 31, 2007, Charles T. Heinlein, Jr., aged 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

327.    Charles T. Heinlein, Jr. was killed in the attack.

328.    The weapon used to kill Charles T. Heinlein, Jr. was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

329.   Plaintiff Jessica Heinlein is a citizen of the United States and domiciled in the State of Washington. She is the widow of Charles T. Heinlein, Jr.

330.   Plaintiff Jessica Heinlein brings an action individually and on behalf of the Estate of Charles T. Heinlein, Jr., as its legal representative.

331.   Plaintiff Charles Heinlein, Sr. is a citizen of the United States and domiciled in the State of Michigan. He is the father of Charles T. Heinlein, Jr.

332.   Plaintiff Jody Lyn Heinlein is a citizen of the United States and domiciled in the State of Texas. She is the sister of Charles T. Heinlein, Jr.

333.   As a result of the attack, and the death of Charles T. Heinlein, Jr., Plaintiffs Jessica Heinlein, Charles Heinlein, Sr. and Jody Lyn Heinlein have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

## 23.   THE SEPTEMBER 4, 2007 ATTACK – BAGHDAD

**The Murray Family**

334.   Joel L. Murray was a citizen of the United States and domiciled in the State of Missouri when he was killed in Iraq.

335.   On September 4, 2007, Joel L. Murray, aged 26, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

336.   Joel L. Murray was killed in the attack.

337.   The weapon used to kill Joel L. Murray was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

338.   Plaintiff Maricel Murray is a citizen of the United States and domiciled in the State of Kansas. She is the widow of Joel L. Murray.

339.     Plaintiff J.M., a minor represented by his legal guardian, Maricel Murray, is a citizen of the United States and domiciled in the State of Kansas. He is the son of Joel L. Murray.

340.     Plaintiff Maricel Murray brings an action individually and on behalf of the Estate of Joel L. Murray, as its legal representative.

341.     As a result of the attack, and the death of Joel L. Murray, Maricel Murray and J.M. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Shelton Family**

342.     Randol S. Shelton was a citizen of the United States and domiciled in the State of Illinois when he was killed in Iraq.

343.     On September 4, 2007, Randol S. Shelton, aged 22, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

344.     Randol S. Shelton was killed in the attack.

345.     The weapon used to kill Randol S. Shelton was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

346.     Plaintiff Bryan S. Shelton is a citizen of the United States and domiciled in the State of Illinois. He is the father of Randol S. Shelton.

347.     Plaintiff Amanda Shelton is a citizen of the United States and domiciled in the State of Illinois. She is the sister of Randol S. Shelton.

348.     Plaintiff Bryan T. Shelton is a citizen of the United States and domiciled in the State of Illinois. He is the brother of Randol S. Shelton.

349.     Plaintiff Bryan S. Shelton brings an action individually and on behalf of the Estate of Randol S. Shelton, as its legal representative.

350.    As a result of the attack, and the death of Randol S. Shelton, Plaintiffs Bryan S. Shelton, Amanda Shelton and Bryan T. Shelton have experienced severe mental anguish, extreme emotional pain and suffering and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 24.    THE DECEMBER 1, 2007 ATTACK – BAGHDAD

### The Reece Family

351.    Matthew K. Reece was a citizen of the United States and domiciled in the State of Arkansas when he was killed in Iraq.

352.    On December 1, 2007, Matthew K. Reece, aged 24, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

353.    Matthew K. Reece was killed in the attack.

354.    The weapon used to kill Matthew K. Reece was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

355.    Plaintiff Preston Reece is a citizen of the United States and domiciled in the State of Arkansas. He is the brother of Matthew K. Reece.

356.    Plaintiff Shaylyn C. Reece is a citizen of the United States and domiciled in the State of Arkansas. She is the sister of Matthew K. Reece.

357.    As a result of the attack, and the death of Matthew K. Reece, Plaintiffs Preston Reece and Shaylyn C. Reece have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

25.    **THE JANUARY 6, 2008 ATTACK – BAGHDAD**

**The Schichtl Family**

358.    Joshua Schichtl is a citizen of the United States and domiciled in the State of Florida.

359.    On January 6, 2008, Joshua Schichtl, then 40, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

360.    The weapon used to injure Joshua Schichtl was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

361.    As a result of the attack, Joshua Schichtl sustained shrapnel to his body, impacting his left eye, face and bicep. He also lost the use of his right eye.

362.    As a result of the blast, his cheekbone and roof of his mouth were shattered and he lost a number of his teeth. His lower jawbone was broken in 19 locations and he has had pins placed in the area to attempt to provide some stability. He is still unable to open his mouth as wide as necessary and chewing continues to be difficult.

363.    Joshua Schichtl received medical treatment both as an in-patient and resident for approximately five years.

364.    He has undergone multiple surgeries including bone and skin grafts, many of which have involved the reconstruction of his mouth.

365.    Significant scarring is apparent on his face.

366.    Joshua Schichtl has been diagnosed with TBI and an anxiety disorder, and has sought and continues to seek counseling.

367.    He still experiences frequent pain.

368.    As a result of the attack, and the injuries he suffered, Joshua Schichtl has experienced severe physical and mental anguish and extreme emotional pain and suffering.

369.    Plaintiff Mark Schichtl is a citizen of the United States and domiciled in the State of Arkansas. He is the father of Joshua Schichtl.

370.    Plaintiff Katherine Prowse is a citizen of the United States and domiciled in the State of Arkansas. She is the sister of Joshua Schichtl.

371.    Plaintiff Nicholas Prowse is a citizen of the United States and domiciled in the State of Arkansas. He is the brother of Joshua Schichtl.

372.    Plaintiff H.S., a minor represented by his legal guardian, Joshua Schichtl, is a citizen of the United States and domiciled in the State of Florida. He is the son of Joshua Schichtl.

373.    Plaintiff S.S., a minor represented by his legal guardian, Joshua Schichtl, is a citizen of the United States and domiciled in the State of Florida. He is the son of Joshua Schichtl.

374.    Plaintiff C.S., a minor represented by his legal guardian, Joshua Schichtl, is a citizen of the United States and domiciled in the State of Florida. He is the son of Joshua Schichtl.

375.    Plaintiff A.S., a minor represented by his legal guardian, Joshua Schichtl, is a citizen of the United States and domiciled in the State of Florida. He is the son of Joshua Schichtl.

376.    As a result of the attack, and the injuries Joshua Schichtl has suffered, Plaintiffs Mark Schichtl, Katherine Prowse, Nicholas Prowse, H.S., S.S., C.S. and A.S. have experienced severe mental anguish, and extreme emotional pain and suffering.

## 26.    **THE JANUARY 26, 2008 ATTACK – BAGHDAD**

**The Wilson Family**

377.    Robert J. Wilson was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

43

378.    On January 26, 2008, Robert J. Wilson, aged 28, was serving in the U.S. military when an IED detonated near his dismounted patrol.

379.    Robert J. Wilson died in the attack.

380.    The terrorist group that planned and executed the IED attack, the Mahdi Army, was trained and armed by Iran's IRGC-QF with the assistance of Hezbollah.

381.    Plaintiff Willie Wilson, II is a citizen of the United States and domiciled in the State of Illinois. He is the father of Robert J. Wilson.

382.    As a result of the attack, and the death of Robert J. Wilson, Plaintiff Willie Wilson, II has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his son's society, companionship, comfort, advice and counsel.

## 27.    THE MARCH 23, 2008 ATTACK – BAGHDAD

**The McCoy Family**

383.    Steve A. McCoy was a citizen of the United States and domiciled in the State of Georgia when he was injured in Iraq.

384.    On March 23, 2008, Steve A. McCoy, aged 22, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

385.    As a result of the attack, Steve A. McCoy sustained third degree burns over 98% of his body.  The explosion and resulting fire also caused the loss of some fingers, his ear, and his nose.

386.    After initial treatment in Iraq and Germany, Steve A. McCoy received extensive treatment in the United States.  During the course of his treatment he underwent a number of skin grafts.

387.     He was heavily sedated for hours each day so that his bandages could be changed and his wounds could be treated.

388.     Occasionally, he was conscious and able to communicate through blinking and other methods. Following a tracheotomy procedure, he developed a limited ability to speak.

389.     His condition also required respiratory therapy and dialysis treatment.

390.     Steve A. McCoy died on June 10, 2008 as a result of the injuries he sustained in the attack.

391.     Plaintiff Tabitha McCoy is a citizen of the United States and domiciled in the State of Georgia. She is the widow of Steve A. McCoy.

392.     Plaintiff L.M., a minor represented by his legal guardian Tabitha McCoy, is a citizen of the United States and domiciled in the State of Georgia. He is the son of Steve A. McCoy.

393.     Plaintiff R.M., a minor represented by her legal guardian Tabitha McCoy, is a citizen of the United States and domiciled in the State of Georgia. She is the daughter of Steve A. McCoy.

394.     Plaintiff Tabitha McCoy brings an action individually and on behalf of the Estate of Steve A. McCoy, as its legal representative.

395.     As a result of the attack, and the death of Steve A. McCoy, Plaintiffs Tabitha McCoy, L.M., and R.M. have experienced severe mental anguish, extreme emotional pain and suffering and loss of their husband's/father's society, companionship, comfort, advice and counsel.

## 28.   **THE MARCH 31, 2008 ATTACK – BAGHDAD**

**The Dhanoolal Family**

396.     Dayne D. Dhanoolal was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

397. On March 31, 2008, Dayne D. Dhanoolal, aged 26, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

398. Dayne D. Dhanoolal was killed in the attack.

399. The weapon used to kill Dayne D. Dhanoolal was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

400. Plaintiff Kynesha Dhanoolal is a citizen of the United States and domiciled in the State of Georgia. She is the widow of Dayne D. Dhanoolal and brings an action on behalf of the Estate of Dayne D. Dhanoolal as its legal representative.

## 29. THE APRIL 6, 2008 ATTACK – BAGHDAD

**The Pickett Family**

401. Emanuel Pickett was a citizen of the United States and domiciled in the State of North Carolina when he was killed in Iraq.

402. On April 6, 2008, Emanuel Pickett, aged 34, was serving in the U.S. military when he was involved in a mortar attack.

403. Emanuel Pickett was killed in the attack.

404. The terrorist group that planned and executed the mortar attack, the Mahdi Army, was trained and armed by Iran's IRGC-QF with the assistance of Hezbollah.

405. Plaintiff Marlen Pickett is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Emanuel Pickett.

406. Plaintiff Kemely Pickett is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Emanuel Pickett.

407. Plaintiff Vivian Pickett is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of Emanuel Pickett.

408.     Plaintiff Kyshia Sutton is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of Emanuel Pickett.

409.     Plaintiff Merlese Pickett is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Emanuel Pickett and brings an action on behalf of the Estate of Emanuel Pickett as its legal representative.

410.     As a result of the attack, and the death of Emanuel Pickett, Plaintiffs Marlen Pickett, Kemely Pickett, Vivian Pickett and Kyshia Sutton have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

## 30.   THE APRIL 8, 2008 ATTACK – KHARGULIAH

**The Hartley Family**

411.     Jeffery Hartley was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

412.     On April 8, 2008, Jeffery Hartley, aged 25, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

413.     Jeffery Hartley was killed in the attack.

414.     The weapon used to kill Jeffery Hartley was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

415.     Plaintiff David Wayne Hartley is a citizen of the United States and domiciled in the State of Texas. He is the brother of Jeffrey Hartley.

416.     Plaintiff Kaylee Hartley is a citizen of the United States and domiciled in the State of Texas. She is the sister of Jeffery Hartley.

47

417.     Plaintiff Lisa Duncan is a citizen of the United States and domiciled in the State of Texas. She is the sister of Jeffery Hartley.

418.     As a result of the attack, and the death of Jeffery Hartley, Plaintiffs David Wayne Hartley, Kaylee Hartley and Lisa Duncan have experienced severe mental anguish, extreme emotional pain and suffering and loss of their brother's society, companionship, comfort, advice and counsel.

## 31.    THE APRIL 12, 2008 ATTACK – BAGHDAD

### The Allmon Family

419.     William E. Allmon was a citizen of the United States and domiciled in the State of Oklahoma when he was killed in Iraq.

420.     On April 12, 2008, William E. Allmon, aged 25, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

421.     William E. Allmon was killed in the attack.

422.     The weapon used to kill William E. Allmon was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

423.     Plaintiff William Allmon is a citizen of the United States and domiciled in the State of Georgia. He is the father of William E. Allmon.

424.     As a result of the attack, and the death of William E. Allmon, Plaintiff William Allmon has experienced severe mental anguish, extreme emotional pain and suffering and loss of his son's society, companionship, comfort, advice and counsel.

## 32.   THE MAY 2, 2008 ATTACK – BAGHDAD

**The Hicks Family**

425.   Corey L. Hicks was a citizen of the United States and domiciled in the State of Arizona when he was killed in Iraq.

426.   On May 2, 2008, Corey L. Hicks, aged 22, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

427.   Corey L. Hicks was killed in the attack.

428.   The weapon used to kill Corey L. Hicks was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

429.   Plaintiff Russel Hicks, Sr. is a citizen of the United States and domiciled in the State of Wyoming. He is the father of Corey L. Hicks.

430.   Plaintiff Russel Hicks, Jr. is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Corey L. Hicks.

431.   As a result of the attack, and the death of Corey L. Hicks, Plaintiffs Russel Hicks, Sr. and Russel Hicks, Jr. have experienced severe mental anguish, extreme emotional pain and suffering and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 33.   THE MAY 11, 2008 ATTACK – BAGHDAD

**The O'Neill Family**

432.   Patrick O'Neill is a citizen of the United States and domiciled in the State of Virginia.

433.   On May 11, 2008, Patrick O'Neill, then 18, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

434.   Patrick O'Neill was injured in the attack.

435.    The weapon used to injure Patrick O'Neill was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

436.    As a result of the attack, Patrick O'Neill was rendered unconscious.

437.    He had sustained shrapnel in his back, buttock, and right shoulder and had also suffered injuries to his neck and face.

438.    His shoulder had been fractured and his right ear was severed in multiple places.

439.    Shrapnel had also pierced through Mr. O'Neill's body, causing his right lung to collapse.

440.    He continues to experience pain in his chest and shoulder.

441.    Mr. O'Neill was diagnosed with PTSD and has sought counseling. He continues to have nightmares stemming from the attack.

442.    As a result of the attack, and the injuries he suffered, Patrick O'Neill has experienced physical and mental anguish and extreme emotional pain and suffering.

443.    Plaintiff John O'Neill is a citizen of the United States and domiciled in the State of Virginia. He is the father of Patrick O'Neill.

444.    Plaintiff Dianne O'Neill is a citizen of the United States and domiciled in the State of Virginia. She is the mother of Patrick O'Neill.

445.    As a result of the attack, and the injuries Patrick O'Neill has suffered, Plaintiffs John O'Neill and Dianne O'Neill have experienced severe mental anguish, and extreme emotional pain and suffering.

## 34.   THE JUNE 7, 2008 ATTACK – BAGHDAD

### The Hurst Family

446.     David R. Hurst was a citizen of the United States and domiciled in the State of Louisiana when he was killed in Iraq.

447.     On June 7, 2008, David R. Hurst, aged 31, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

448.     David R. Hurst was killed in the attack.

449.     The weapon used to kill David R. Hurst was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

450.     Plaintiff Max W. Hurst is a citizen of the United States and domiciled in the State of Louisiana. He is the father of David R. Hurst.

451.     Plaintiff Lillian Hurst is a citizen of the United States and domiciled in the State of Louisiana. She is the step-mother of David R. Hurst.

452.     Plaintiff Christopher Hurst is a citizen of the United States and domiciled in the State of Louisiana. He is the brother of David R. Hurst.

453.     Plaintiff Mark Hurst is a citizen of the United States and domiciled in the State of Louisiana. He is the brother of David R. Hurst.

454.     Plaintiff Max W. Hurst brings an action individually and on behalf of the Estate of David R. Hurst, as its legal representative.

455.     As a result of the attack, and the death of David R. Hurst, Plaintiffs Max W. Hurst, Lillian Hurst, Christopher Hurst and Mark Hurst have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 35.    THE AUGUST 4, 2008 ATTACK – BAGHDAD

**The Menke Family**

456.    Jonathan D. Menke was a citizen of the United States and domiciled in the State of Indiana when he was killed in Iraq.

457.    On August 4, 2008, Jonathan D. Menke, aged 22, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

458.    Jonathan D. Menke was killed in the attack.

459.    The weapon used to kill Jonathan D. Menke was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

460.    Plaintiff Daniel Menke is a citizen of the United States and domiciled in the State of Indiana. He is the father of Jonathan D. Menke and brings an action on behalf of the Estate of Jonathan D. Menke as its legal representative.

## 36.    THE AUGUST 13, 2008 ATTACK – BAGHDAD

**The Hale Family**

461.    James M. Hale was a citizen of the United States and domiciled in the State of Illinois when he was killed in Iraq.

462.    On August 13, 2008, James M. Hale, aged 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

463.    James M. Hale was killed in the attack.

464.    The weapon used to kill James M. Hale was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

465.    Plaintiff Jessica H. Williams is a citizen of the United States and domiciled in the State of Texas. She is the widow of James M. Hale.

466.    Plaintiff J.H., a minor represented by his legal guardian, Jessica H. Williams, is a citizen of the United States and domiciled in the State of Texas. He is the son of James M. Hale.

467.    Plaintiff J.H., a minor represented by his legal guardian, Jessica H. Williams, is a citizen of the United States and domiciled in the State of Texas. He is the son of James M. Hale.

468.    Plaintiff J.H., a minor represented by his legal guardian, Jessica H. Williams, is a citizen of the United States and domiciled in the State of Texas. He is the son of James M. Hale.

469.    Plaintiff Jessica H. Williams brings an action individually and on behalf of the Estate of James M. Hale, as its legal representative.

470.    As a result of the attack, and the death of James M. Hale, Plaintiffs Jessica H. Williams, J.H., J.H. and J.H. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

## 37.    THE JANUARY 10, 2009 ATTACK – BAGHDAD

**The Bauer Family**

471.    Justin Bauer was a citizen of the United States and domiciled in the State of Colorado when he was killed in Iraq.

472.    On January 10, 2009, Justin Bauer, aged 24, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

473.    Justin Bauer was killed in the attack.

474.    The weapon used to kill Justin Bauer was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

475.     Plaintiff Kari Carosella is a citizen of the United States and domiciled in the State of Colorado. She is the widow of Justin Bauer and brings an action and on behalf of the Estate of Justin Bauer as its legal representative.

**The Bradley Family**

476.     Plaintiff Andrew Bradley is a citizen of the United States and domiciled in the State of Texas.

477.     On January 10, 2009, Andrew Bradley, then 20, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

478.     As a result of the attack, Mr. Bradley lost part of his right leg, rendering him a below-the-knee amputee.

479.     He also sustained burns on his left foot and has experienced nerve damage in that foot.

480.     Apart from treatment in Iraq and Germany, Mr. Bradley received in-patient treatment at Brooke Army Medical Center for over one year.

481.     Surgeons performed bone reconstruction in an effort to retain as much of his joint area as possible.

482.     He also underwent multiple procedures to address infections in his wounds.

483.     He has received physical therapy and has been prescribed medications to address pain resulting from his injuries.

484.     Mr. Bradley has also required treatment for medical conditions that developed from issues involving his prosthetics.

485.     Mr. Bradley continues to experience pain and emotional distress each day, and he receives treatment for his injuries as necessary.

486.     As a result of the attack, and the injuries he suffered, Mr. Bradley has experienced severe physical and mental anguish and extreme emotional pain and suffering.

487.     Plaintiff Julie Salhus is a citizen of the United States and domiciled in the State of Texas. She is the mother of Andrew Bradley.

488.     Plaintiff Kristen Galen is a citizen of the United States and domiciled in the State of Texas. She is the sister of Andrew Bradley.

489.     As a result of the attack, and the injuries Andrew Bradley suffered, Plaintiffs Julie Salhus and Kristen Galen have experienced severe mental anguish and extreme emotional pain and suffering.

## 38.     THE JANUARY 18, 2009 ATTACK – BAGHDAD

### The Andrade Family

490.     Roberto Andrade, Jr. was a citizen of the United States and domiciled in the State of Illinois when he was killed in Iraq.

491.     On January 18, 2009, Roberto Andrade, Jr., aged 26, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

492.     Roberto Andrade, Jr. was killed in the attack.

493.     The weapon used to kill Roberto Andrade, Jr. was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

494.     Plaintiff Sandra Valencia is a citizen of the United States and domiciled in the State of California. She is the mother of Roberto Andrade, Jr.

495.     Plaintiff Veronica Andrade Pena is a citizen of the United States and domiciled in the State of Arizona. She is the step-mother of Roberto Andrade, Jr.

496.     Plaintiff Angelica Andrade is a citizen of the United States and domiciled in the State of Arizona. She is the sister of Roberto Andrade, Jr.

497.     Plaintiff Veronica D. Andrade is a citizen of the United States and domiciled in the State of Arizona. She is the sister of Roberto Andrade, Jr.

498.     Plaintiff Roberto Andrade, Sr. is a citizen of the United States and domiciled in the State of Arizona. He is the father of Roberto Andrade, Jr. and brings a claim on behalf of the Estate of Roberto Andrade, Jr. as its legal representative.

499.     As a result of the attack, and the death of Roberto Andrade, Jr., Plaintiffs Sandra Valencia, Veronica Pena Andrade, Angelica Andrade, and Veronica D. Andrade have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 39.     THE MAY 17, 2009 ATTACK – BAGHDAD

**The Murphy Family**

500.     Plaintiff Rhett Murphy is a citizen of the United States and domiciled in the State of Florida.

501.     On May 17, 2009, Rhett Murphy, then 30, was serving in the U.S. military in Iraq.

502.     Mr. Murphy was on a routine patrol in northwest Baghdad when his vehicle was struck by an EFP.

503.     The weapon used to injure Mr. Murphy was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

504.     As a result of the attack, he sustained significant injuries due to the impact of shrapnel impacting his body. This has resulted in scarring.

56

505.     Apart from the shrapnel-related injuries he also sustained injuries to the tendons in his left hand a fracture of his finger. These have necessitated various surgical procedures.

506.     Mr. Murphy has been diagnosed with PTSD and major depression and has received treatment and counseling. He has been prescribed medication to address both the pain and emotional impact of the attack.

507.     Mr. Murphy continues emotional distress and he receives treatment for his injuries. As a result of the attack, and the injuries he suffered, Rhett Murphy has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 40.     THE SEPTEMBER 8, 2009 ATTACK – BAGHDAD

### The Helton Family

508.     Joseph D. Helton, Jr. was a citizen of the United States and domiciled in the State of Georgia when he was killed in Iraq.

509.     On September 8, 2009, Joseph D. Helton, Jr., aged 24, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

510.     Joseph D. Helton Jr. was killed in the attack.

511.     The weapon used to kill Joseph D. Helton, Jr. was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

512.     Plaintiff Joseph Helton, Sr. is a citizen of the United States and domiciled in the State of Washington. He is the father of Joseph D. Helton, Jr.

513.     Plaintiff Jessica Cabot is a citizen of the United States and domiciled in the State of California. She is the sister of Joseph D. Helton, Jr.

514.     Plaintiff Jeanne Rhea McManus is a citizen of the United States and domiciled in the State of Pennsylvania. She is the sister of Joseph D. Helton, Jr.

515.     As a result of the attack, and the death of Joseph D. Helton, Jr., Plaintiffs Joseph Helton, Sr., Jessica Cabot, and Jeanne Rhea McManus have experienced severe mental anguish, extreme emotional pain and suffering and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 41.     THE SEPTEMBER 8, 2009 ATTACK - TIKRIT

**The Smith Family**

516.     Shannon M. Smith was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

517.     On September 8, 2009, Shannon M. Smith was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

518.     Shannon M. Smith was killed in the attack.

519.     The weapon used to kill Shannon M. Smith was an Iranian-manufactured EFP provided to Iranian-funded and trained terror operatives in Iraq.

520.     Plaintiff Cassie Collins is a citizen of the United States and domiciled in the State of Ohio. She is the widow of Shannon M. Smith and brings an action on behalf of the Estate of Shannon M. Smith as its legal representative.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### AGAINST DEFENDANT ON BEHALF OF EACH PLAINTIFF IDENTIFIED HEREIN WHO SURVIVED AN ACT OF INTERNATIONAL TERRORISM FOR DEFENDANT'S MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING THAT RESULTED IN PERSONAL INJURY UNDER 28 U.S.C. § 1605A(c)

521.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

522.    Plaintiffs identified in the foregoing paragraphs were grievously injured by Defendant's provision of material support (within the meaning of § 1605A(h)(3)) to terror operatives in Iraq who engaged in extrajudicial killing, torture and hostage taking, and who injured the Plaintiffs.

523.    As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendant and its agents, Plaintiffs identified in the foregoing paragraphs were injured and endured severe physical injuries, extreme mental anguish, pain and suffering, and economic losses.

524.    Plaintiffs' compensatory damages, including, but not limited to, their severe physical injuries, extreme mental anguish, pain and suffering, and any economic losses determined by the trier of fact.

525.    The conduct of the Defendant was criminal, outrageous, extreme, wanton, willful, malicious, and a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. § 1605A(c).

**SECOND CLAIM FOR RELIEF**
**AGAINST DEFENDANT ON BEHALF OF THE ESTATES OF PLAINTIFFS**
**IDENTIFIED HEREIN FOR DEFENDANT'S MATERIAL SUPPORT TO ACTS OF**
**EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING THAT**
**RESULTED IN WRONGFUL DEATH UNDER 28 U.S.C. § 1605A(c)**

526.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

527.    The Estates of Plaintiffs listed in the foregoing paragraphs assert claims on behalf of the decedents who were grievously injured by Defendant's provision of material support (within the meaning of § 1605A(h)(3)), to terror operatives in Iraq who engaged in the acts of extrajudicial killing, torture and/or hostage taking that caused the decedents' deaths.

528.    As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendant and its agents, the decedents listed in the foregoing paragraphs endured physical injury, extreme mental anguish, and pain and suffering that ultimately lead to their deaths.

529.    Defendant is therefore liable for the full amount of Plaintiffs' compensatory damages, including physical injuries, extreme mental anguish, pain and suffering and any pecuniary loss (or loss of income to the estates).

530.    Defendant's conduct was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. § 1605A(c).

60

**THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANT ON BEHALF OF THE FAMILIES OF PLAINTIFFS IDENTIFIED HEREIN AS INJURED OR KILLED AS A RESULT OF DEFENDANT'S MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING FOR LOSS OF SOLATIUM AND INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS UNDER 28 U.S.C. § 1605A(c)**

531.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

532.     Defendant's acts in providing material support for acts of extrajudicial killing, torture, and hostage-taking were intended to inflict severe emotional distress on the Plaintiffs.

533.    As a result of Defendant's acts, the families of individuals identified in the foregoing paragraphs as injured or killed as a result of Defendant's acts in providing material support for acts of extrajudicial killing, torture, and hostage-taking have suffered severe emotional distress, extreme mental anguish, loss of sleep, loss of appetite, and other severe physical manifestations, the loss of their loved ones' society, companionship, comfort, advice and counsel, and other harms to be set forth to the trier of fact.

534.    Defendant's conduct was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. § 1605A(c).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand:

(a)    Judgment for all Plaintiffs against Defendant for compensatory damages, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, economic losses, and solatium in amounts to be determined at trial;

(b)    Judgment for Plaintiff Estates against Defendant for compensatory damages for wrongful death, including, but not limited to, physical injury, extreme mental

61

anguish, pain and suffering, economic losses, and any pecuniary loss (or loss of income to the estates) in amounts to be determined at trial;

(c)     Judgment for all Plaintiffs against Defendant for punitive damages in an amount to be determined at trial;

(d)     Plaintiffs' costs and expenses;

(e)     Plaintiffs' attorney's fees; and

(f)     Such other and further relief as the Court finds just and equitable.


Dated: January 19, 2017


**OSEN LLC**


By      /s/ Naomi Weinberg
        Naomi Weinberg (DC Bar No. NJ006)
        Aaron Schlanger (DC Bar No. NJ007)
        Ari Ungar (DC Bar No. NJ008)
        Gary M. Osen (DC Bar No. NJ009)
        Peter Raven-Hansen, Of Counsel
        (DC Bar No. 215897)
        2 University Plaza, Suite 402
        Hackensack, New Jersey
        (201) 265-6400


        **TURNER & ASSOCIATES, P.A.**
        C. Tab Turner
        4705 Somers Avenue, Suite 100
        North Little Rock, AR 72116
        (501) 791-2277

        Attorneys for Plaintiffs