## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**SHIRLEY STEARNS,** *et al.,*

     *Plaintiffs,*

v.

**THE ISLAMIC REPUBLIC OF IRAN**

     *Defendant.*

**Case No. 1:17-cv-131-RCL**
~~\* FILED UNDER SEAL \*~~
unsealed October 3, 2022
/s/ RCL

## MEMORANDUM OPINION

During the United States military's occupation of Iraq, insurgents attacked American troops and their allies with a variety of weapons including explosively formed penetrators ("EFPs"), a type of improvised explosive device ("IED") capable of exceptional destruction and lethality. Plaintiffs here are American servicemembers and a military contractor injured or killed by these devices while serving in Iraq between 2005 and 2011 and their family members. These individuals ask the Court to hold the Islamic Republic of Iran ("Iran") liable for materially supporting the EFP attacks that injured them. They also seek to hold Iran liable for several non-EFP attacks. Iran has not responded to this lawsuit, so plaintiffs have moved for default judgment.[1]

In this Memorandum Opinion, the Court will set forth its findings of fact and conclusions of law on plaintiffs' claims. Plaintiffs raise claims against Iran under the Foreign Sovereign

---

[1] Plaintiffs have not specifically filed a motion for default judgment. Under the Federal Rules of Civil Procedure, a party seeking a default judgment is simply required to "apply" to the Court. Fed. R. Civ. Pro. 55(b). A district court has discretion over how to interpret what is an "application" for default judgment. *See Mwani v. bin Laden*, 417 F.3d 1, 6 & n.3 (D.C. Cir. 2005) (citing CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, §§ 2682, 2685 (3d ed. 1998)). Therefore, this Court construes the plaintiffs' submission of Proposed Findings of Fact and Conclusions of Law, which was submitted "in support of their motion for default judgment," ECF No. 35, and the accompanying motion to seal, ECF No. 36, as a de facto motion for default judgment.

1

Immunities Act ("FSIA"), which guarantees a private cause of action for victims of state-sponsored terrorism. *See* 28 U.S.C. § 1605A(c).

After considering plaintiffs' motion and evidence, applying relevant case law, and taking judicial notice of related cases, the Court will **GRANT** plaintiffs' motion for default judgment against Iran and **GRANT** plaintiffs' motion for leave to file certain documents under seal.

## I.    LEGAL STANDARD

Plaintiffs moved for default judgment against Iran because Iran has not appeared or defended this lawsuit. *See* Pls.' Proposed Findings of Fact and Conclusions of Law ("Pls.' PFFCL"), ECF No. 35; Mot. to Seal, ECF No. 36. But even when a defendant fails to appear, "the entry of a default judgment is not automatic." *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). The FSIA expressly provides that "[n]o judgment by default shall be entered . . . against a foreign state . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e); *see Jerez v. Repub. of Cuba*, 775 F.3d 419, 423 (D.C. Cir. 2014). A district court retains discretion "to determine precisely how much and what kinds of evidence the plaintiff must provide" to establish her claim or right to relief. *See Han Kim v. Democratic People's Repub. of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014). "[I]ndeed, 'the quantum and quality of evidence that might satisfy a court can be less than that normally required.'" *Owens v. Repub. of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (quoting *Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980)), *vacated and remanded on other grounds sub nom. Opati v. Repub. of Sudan*, 140 S. Ct. 1601 (2020).

Additionally, a plaintiff moving for default judgment "must persuade the trial court" that it may exercise subject matter jurisdiction and personal jurisdiction over the defendant. *Karcher v. Islamic Repub. of Iran*, 396 F. Supp. 3d 12, 21 (D.D.C. 2019) (citing *Thuneibat v. Syrian Arab*

2

*Repub.*, 167 F. Supp. 3d 22, 33 (D.D.C. 2016)).  After all, a default judgment "rendered in excess of a court's jurisdiction is void." *Jerez*, 775 F.3d at 422.  And a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## II.    FINDINGS OF FACT

Before this Court can enter default judgment against Iran, it must "reach its own, independent findings of fact" notwithstanding prior cases implicating the same issues. *Rimkus v. Islamic Repub. of Iran*, 750 F. Supp. 2d 163, 172 (D.D.C. 2010).  "[N]umerous evidentiary sources" can support a default judgment. *Id.* at 171.  Additionally, "a court may take judicial notice of related proceedings and records in cases before the same court." *Id.* (internal quotations and citations omitted); Fed. R. Evid. 201(b).  Plaintiffs submitted over 6,000 pages of evidence supporting their allegations and expert reports analyzing the attacks.  The Court also takes judicial notice of *Fritz v. Islamic Repub. of Iran*, 320 F. Supp. 3d 48, 86–87 (D.D.C. 2018), *Karcher v. Islamic Repub. of Iran*, 396 F. Supp. 3d 12 (D.D.C. 2019) ("*Karcher I*"), *Karcher v. Islamic Repub. of Iran*, No. 16-cv-232 (CKK), 2021 WL 133507 (D.D.C. Jan. 14, 2021) ("*Karcher II*"), and *Lee v. Islamic Repub. of Iran*, 518 F. Supp. 3d 475 (D.D.C. 2021), and all of which involved similar EFP attacks.  With these principles in mind, the Court enters the following findings of fact.

### A.  Plaintiffs' Claims

Plaintiffs are more than 200[2] individuals—U.S. military servicemembers, their estates, and their family members—claiming injuries arising from 61[3] alleged EFP and Iran-linked explosive

---

[2] Plaintiffs' brief identifies the number of plaintiffs in this action as 387.  *See* Pls.' PFFCL, at 7; Am. Compl., ECF No. 14, at ¶¶ 89–1335.  By this Court's count, that figure is instead 229.  Whatever the reason for the discrepancy, the precise number is immaterial to deciding plaintiffs' motion for default judgment.  The special master shall make a report and recommendation of whomever is listed in the amended complaint and the Court will adjudicate the claims. *See Karcher I*, 396 F. Supp. 3d at 14 & n.1.

[3] Plaintiffs' amended complaint alleges that Iran is responsible for more than 30 attacks not included in the Pls.' PFFCL.  These attacks occurred on: Apr. 4, 2004; Apr. 9, 2004; June 29, 2004; Aug. 5, 2004; Sept. 6, 2005; Jan. 5, 2006; Apr. 28, 2006; May 2, 2006; May 3, 2006; June 10, 2006; July 11, 2006; Oct. 20, 2006; Nov. 9, 2006; Jan. 14, 2007; February 2, 2007; June 25, 2007; June 28, 2007; July 5, 2007; July 23, 2007; July 24, 2007; Sept. 2, 2007; Sept.

attacks between 2005 and 2011.  They sued Iran under the FSIA, 28 U.S.C. § 1605A(c), alleging

that Iran "develop[ed], fund[ed], train[ed], direct[ed], and arm[ed]" Iraqi insurgents to facilitate

"hundreds of attacks against U.S. forces" in Iraq.  Pls.' PFFCL, at 7.  The three-count Amended

Complaint in this action seeks relief for the personal injuries of the surviving victims, the personal

injuries and deaths of victims who were killed, and the intentional infliction of "severe" emotional

distress endured by families of those injured or killed.  *See* Am. Compl., ECF. No. 14, at ¶¶ 1342–

55.

### B.  Service of Process

Plaintiffs first attempted to serve process on Iran by requesting that the Clerk of the Court—

pursuant to 28 U.S.C. § 1608(a)(3)—mail Iran a summons, complaint, and notice of suit.  Aff.

Requesting Foreign Mailing, ECF No. 15.  That attempt at service failed because no company

would ship packages to Iran.  *See* 05/17/2018 Summons Return, ECF No. 17.  Plaintiffs then

attempted service via diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4).  Aff. Requesting

Foreign Mailing, ECF No. 18.  On August 12, 2018, plaintiffs successfully served Iran with a

summons, a complaint, a notice of suit, and translations of each under cover of diplomatic note.

Return of Service, ECF No. 21.  Iran failed to answer that complaint or appear in this litigation

within sixty days of service.  Accordingly, on October 15, 2018, the Clerk of the Court entered

default against Iran.  Entry of Default, ECF No. 23.

### C.  Iran's Connection to the Attacks

The Court will detail Iran's longstanding support of proxy militias in Iraq through a

condensed history.  The Court relies on the expert reports and transcripts of the bench trial in

---

4, 2007; Sept. 12, 2007; Sept. 29, 2007; Oct. 18, 2007; Oct. 21, 2007; Oct. 29, 2007; Jan. 26, 2008; June 7, 2008; March 10, 2011; and May 22, 2011.  *See* Am. Compl.  The Court does not make any findings regarding Iran's potential liability for these attacks.

*Karcher*. *See generally Karcher II*. In addition to these materials and the *Fritz*, *Karcher I*, *Karcher II*, and *Lee* decisions themselves, the Court refers to the expert reports and affidavits submitted by plaintiffs in this case.

### i. Expert Testimony

To begin, the Court qualifies six individuals as experts. Plaintiffs provided the Court with reports prepared by three experts—Michael Pregent, retired Colonel Kevin Lutz, and Russell L. McIntyre—and requested that the Court take judicial notice of the remaining experts' qualifications and their reports submitted in *Karcher I*. *See* Expert Report of Michael P. Pregent, ECF No. 36-7 [hereinafter Pregent Rep., PX-155]; Consolidated Expert Report of Col. (Ret.) Kevin Lutz for the 31 Non-Bellwether *Karcher* Attacks, ECF No. 35-2 [hereinafter Lutz Non-Bellwether *Karcher* Attacks Rep.]; Consolidated Expert Report of Col. (Ret.) Kevin Lutz for the 24 Additional Attacks, ECF No. 35-3 [hereinafter Lutz *Stearns* Add'l Attacks Rep.]; Expert Report of Russell L. McIntyre for the April 6, 2008 Rocket Attacks, ECF No. 35-4 [hereinafter McIntyre *Stearns* Apr. 6, 2008 Attacks Rep.]. After reviewing these materials, the Court will grant this request and take judicial notice of (1) the transcripts of the *Karcher I* bench trial and (2) the *Karcher I* expert reports. *See* Fed. R. Evid. 201(b); *Rimkus*, 750 F. Supp. 2d at 171. The Court therefore qualifies the following experts in this case:

- Michael P. Pregent. The court qualifies Mr. Pregent as an expert in "intelligence matters, including attribution of terror attacks and . . . evidence collection and analysis in the intelligence field." 12/06/2018 (AM) Tr. 173:3–7; *see* Pregent Rep., PX-155; *see also Lee*, 518 F. Supp. 3d at 782; *Karcher*, 396 F. Supp. 3d at 18–19.[4]

---

[4] In accordance with *Lee* and *Karcher I*, the Court uses a modified citation convention for evidence before the *Karcher I* court. Any references to transcripts refer to those for the bench trial in *Karcher I*. *See Lee*, 518 F. Supp. 3d at 481 & n.2. Exhibits submitted in *Karcher I* are indicated by their title, "PX," and the exhibit number assigned during the *Karcher* trial. *Id.*

- Captain (Ret.) Donald Wade Barker.  The Court qualifies Captain Barker[5] as an expert on "IEDs, EFPs, and counter-IED technology." 12/04/2018 (AM) Tr. 10:8–12; *see* Expert Report of Capt. (Ret.) Donald Wade Barker, PX-158 [hereinafter Barker Rep., PX-158]; *see also Lee*, 518 F. Supp. 3d at 482; *Karcher*, 396 F. Supp. 3d at 17.

- Lieutenant General (Ret.) Michael L. Oates.  The Court qualifies Lieutenant General Oates as an expert "on the tactical and strategic threats faced by the [U.S.] and Coalition Forces in Iraq [from] 2003 to 2008[,] . . . including the specific threat to US military forces from IEDs and other ordnance, including EFPs." 12/03/2018 (AM) Tr. 86:15–22; *see* Expert Report of Lieutenant Gen. (Ret.) Michael L. Oates, PX-153 [hereinafter Oates Rep., PX-153]; *see also Lee*, 518 F. Supp. 3d at 481; *Karcher*, 396 F. Supp. 3d at 18.

- Colonel (Ret.) Leo E. Bradley III.  The Court qualifies Colonel Bradley as an expert on the U.S. military's practices for explosive ordnance disposal—including "locat[ing], identify[ing], render[ing] safe . . . unexploded ordnance, [and] exploit[ing] and evaluat[ing] that ordnance." 12/03/2018 (PM) Tr. 7:23–25, 8:1–2, 12:9–13; *see* Expert Report of Colonel (Ret.) Leo E. Bradley III, PX-156 [hereinafter Bradley Rep., PX-156]; *see also Lee*, 518 F. Supp. 3d at 481–82; *Karcher*, 396 F. Supp. 3d at 17–18.

- Russell L. McIntyre.  The Court qualifies Mr. McIntyre as an expert "on IED threats to [U.S.] forces, specifically in Iraq between 2003 and 2011, . . . with an additional focus on [EFPs]." 12/06/2018 (AM) Tr. 64:16–22; *see* Expert Report of Russell L. McIntyre, PX-157 [hereinafter McIntyre Rep., PX-157]; *see also Lee*, 518 F. Supp. 3d at 482; *Karcher*, 396 F. Supp. 3d at 18.

- Colonel (Ret.) Kevin Lutz.  The Court qualifies Colonel Lutz as an expert "in the use of explosive devices, including IEDs and other ordnance, by transnational terrorist organizations" and "the tactics, techniques and procedures used by terrorist groups in Iraq between 2003 and 2011." 12/06/18 (AM) Tr. 15:4–11; *see* Expert Report of Colonel (Ret.) Kevin Lutz, PX-159 [hereinafter Lutz Rep., PX-159]; *see also Lee*, 518 F. Supp. 3d at 482; *Karcher*, 396 F. Supp. 3d at 18.

---

[5] For simplicity's sake, the Court omits the titles of plaintiffs' expert witnesses after the first reference.

*ii.  Iran's Support for Proxy Forces in Iraq*

Mere months after Shi'a cleric Ayatollah Ruhollah Khomeini came to power in the Iranian Revolution of 1979, he established the Islamic Revolutionary Guard Corps ("IRGC") to "ensure there would be no backsliding in implementing [his] vision for an Islamic theocratic government in Iran." McIntyre Rep., PX-157, at 4–5.  To carry out its charge to "export[] revolution abroad," the IRGC created an "external operations directorate" known as the Qods Force. Oates Rep., PX-156, at 11.  The Qods Force "trains, advises[,] and logistically supports terrorist and insurgent movements," including covert special operations activities. McIntyre Rep., PX-157, at 6.  The IRGC and Qods Force report directly to the Supreme Leader of Iran. *Id.* at 4.

Shortly after its founding, the Iranian government sent IRGC members "to assist the Lebanese Shi'a community to build a political movement and military" capable of resisting Israeli forces. McIntyre Rep., PX-157, at 7.  The IRGC settled on "newly-emerging Hezbollah" as its target. *Id.*  Hezbollah's leaders "swore an oath of fealty to Iran" and Ayatollah Khomeini as its Supreme Leader. *Id.*  "In exchange for Hezbollah's unwavering dedication to Iran and its revolutionary aims, Iran 'bankroll[ed], arm[ed,] and train[ed] Hezbollah." *Lee*, 518 F. Supp. 3d at 482 (quoting McIntyre Rep., PX-157, at 7).

In recognition of Iran's "support for acts of international terrorism" by using these forces, the United States designated Iran as a state sponsor of terrorism on January 23, 1984.  Statement of Secretary of State George P. Schultz, 49 Fed. Reg. 2836 (Jan. 23, 1984).  This designation arose "in partial response" to Hezbollah's 1984 bombing of a U.S. Marine barracks in Beirut, Lebanon that killed and injured hundreds of American troops. *Valore v. Islamic Repub. of Iran*, 700 F. Supp. 2d 52, 67 (D.D.C. 2010); *see also* McIntyre Rep., PX-156, at 6 (ascribing responsibility for this designation to "actions of the IRGC and the Qods Force").  Similar terrorism-related

designations followed for the IRGC and Qods Force. *See Karcher*, 396 F. Supp. 3d at 22 (listing designations).

Operation Iraqi Freedom and the U.S. military's occupation of Iraq gave Iran an opportunity to exploit the power vacuum left open by the downfall of Saddam Hussein's regime. *See* Oates Rep., PX-153, at 16. Iran quickly moved to develop Shi'a proxies in Iraq to promote its goals. *See id.* In 2003, Iran backed a "young and relatively low-ranking Shi'a cleric" named Muqtada al-Sadr and his Office of the Martyr Sadr ("OMS"), which purported to speak "for Iraq's disenfranchised Shi'a." *Id.* at 16–17. After a trip to Tehran, al-Sadr created an armed wing of the OMS called Jaysh al-Mahdi ("JAM"). 12/03/2018 (AM) Tr. 99:22–100:6; Oates Rep., PX-153, at 17. With financial support from the Qods Force and training from Hezbollah, JAM "rapidly expanded their territorial control" to encompass much of Baghdad. Oates Rep., PX-153, at 17; *see* 12/03/2018 (AM) Tr. 100:21–101:5.

From 2003 to 2006, the IRGC used JAM and smaller militias termed "Special Groups" as proxies to conduct terrorist operations against coalition forces in Iraq. McIntyre Rep., PX-157, at 16, 37–38. The Special Groups originally remained loyal to al-Sadr but received "training, weapons[,] and operational direction" directly from Hezbollah and the Qods Force. Oates Rep., PX-153, at 23. Iraqi recruits often "made multiple trips to Iran or to camps in Lebanon maintained by Hezbollah" to learn paramilitary and weapons skills. Pregent Rep., PX-155, at 12. Soon, the Special Groups splintered from al-Sadr and JAM. In 2006, Iran invited Qais al-Khazali and Layth al-Khazali, two of al-Sadr's subordinates, to Tehran. McIntyre Rep., PX-157, at 39. After Iran promised to aid their efforts, Qais al-Khazali formed a Special Group named Asayb Ahl al-Haq ("AAH"). *Id.* at 38–39. AAH received funding from the IRGC, training from Hezbollah, and weapons supplied by the Qods Force. 12/03/2018 (AM) Tr. 119:24–120:5. In this way, AAH was

not an "independent organization" but a "proxy of the Qods Force." *Id.* 120:19–22.  Another

Special Group was Kata'ib Hezbollah.[6]  12/03/2018 (AM) Tr. 123:22–25.  Kata'ib Hezbollah was

a "whole-cloth creation of the IRGC." *Id.*  According to Oates, the Qods Force was "the exclusive

director" of Kata'ib Hezbollah's operations and supplied the group with weapons.  *Id.* 124:7–8,

19–21.  These weapons included EFPs. *Id.* 124:5–8.  By 2007, the Special Groups "accounted for

almost half of the violence in Iraq" directed at coalition forces. Pregent Rep., PX-155, at 12.  And

at that time, "Iran, through [the] IRGC and the Qods Force, was estimated to be 'providing between

$750,000 and $3 million worth of equipment and funding to the Special Groups every month.'"

*Lee*, 518 F. Supp. 3d at 483 (quoting Pregent Rep., PX-155, at 12).

### iii.   EFPs in Iraq

Many of the attacks in this case involve a "uniquely lethal weapon" termed an "explosively

formed penetrator." *Lee*, 518 F. Supp. 3d at 475.  EFPs became insurgents' weapon of choice in

Iraq to respond to the "up-armoring" of U.S. military vehicles. Barker Rep., PX-158, at 12.  At

first, insurgents primarily attacked coalition forces with IEDs. *Id.* at 13.  In response, the U.S.

military developed "heavily-armored [Humvees]" that could withstand IED blasts. *Id.*  But EFPs

could still penetrate this armor, so EFP attacks soon became commonplace. *Id.* at 13–14; *see*

12/03/2018 (PM) Tr. 23:4–7 (explaining that insurgents used EFPs to respond to vehicles that

"could survive large underbody IEDs").  EFP attacks first occurred in July 2005 and persisted

through January 2011. Barker Rep., PX-158, at 14.

EFPs' strength lies in their design.  An EFP is built within a 3- to 12-inch diameter steel

pipe. Barker Rep., PX-156, at 6.  One end is welded shut with a steel plate. *Id.*  Inside this pipe,

---

[6] Kata'ib Hezbollah was an Iraq-based organization, unlike Lebanese Hezbollah.  The Court's references to
"Hezbollah" refer to Lebanese Hezbollah unless otherwise noted.

high-energy explosives are packed behind a "precision manufactured concave copper disk liner." *Id.* at 6. The resulting explosion generates enormous pressure, reshaping the copper liner into a metal slug traveling at "tremendous speed" with "significant[] . . . mechanical power." *Id.* at 6. Because copper has a high melting point, the copper liner is "just malleable enough that it will begin to shape" in midair, "but not so malleable that [it will] fly apart." 12/04/2018 (AM) Tr. 13:20–22, 17:6–8. A single copper slug can "pierce through several inches of military grade armor." Barker Rep., PX-158, at 7. Worse still, a copper slug can "shatter [a] vehicle's armor and materials inward, sending hundreds or even thousands of razor-sharp shards of Teflon and steel ripping through the interior department." *Id.* The resulting heat can "ignite engine fuel and set vehicles ablaze." *Id.*

EFPs detonate only after being armed and triggered. *Id.* at 10. In Iraq, insurgents usually armed EFPs by remote frequency or command wire. *Id.* Once armed, an EFP would be triggered by a passive infrared device. *Id.* These devices could "detect the heat signature of," for example, "a passing vehicle," then "send an electrical current that set off the explosion within the EFP's casing." *Id.* Passive infrared sensors were used "almost exclusively . . . with EFPs." 12/03/2018 (PM) Tr. 26:13–15. The remote-triggering mechanisms allowed insurgents to "selectively target U.S. [m]ilitary vehicles and thus avoid civilian casualties." Barker Rep., PX-158, at 12. And the infrared triggers enabled insurgents to camouflage EFPs within the environment—for example, in fake boulders or fake roadside curbs. *See id.* at 11.

The U.S. military responded to EFP attacks in several ways. First, the military added armor to the doors and windows of its armored vehicles and introduced "Mine-Resistant, Ambush Protected" ("MRAP") vehicles carrying more armor than a typical Humvee. *See id.* Second, the military created forensic units to analyze materials collected from EFP blasts and to develop

countermeasures against EFPs. *Id.* at 15–16. These countermeasures included (1) heated pieces of metal attached to poles held out in front of the vehicle, termed "Rhinos," and (2) radio jammers that prevented insurgents from arming the EFPs. *Id.* at 16.

None of these responses fully succeeded. "[N]o matter how much additional steel was welded onto U.S. [m]ilitary vehicles, EFPs could still penetrate them." *Id.* at 15. General David Petraeus even noted that MRAPs were susceptible to EFPs, explaining that a soldier died "in eastern Baghdad when an [EFP] pierced the passenger side door of the MRAP in which he was riding." *Id.* Insurgents also adapted to the U.S. military's countermeasures. After the military deployed Rhinos on the front of their vehicles, insurgents began "angling [EFPs] backward" to ensure their EFP charges still hit the targeted vehicles. *Id.* at 18. And soon after the military began using radio jammers, "local Shi'a terror cells deployed new technology . . . capable of defeating [the military's] most high-tech [radio-jamming] equipment." *Id.* at 16.

These sophisticated attacks and countermeasures were "beyond the capacity of individuals with basic training in IED construction." *Lee*, 518 F. Supp. 3d at 484 (citations omitted); *see* 12/03/2018 (PM) Tr. 26:19–27:21 (opining that the "level of engineering and trigonometry" required to conduct an EFP attack was not "within the abilities of an Iraqi insurgent without outside assistance"). Expert testimony connected these attacks to Iran. Barker opined that "the Special Groups and other Iranian-backed local Shi'a terror cells could not have deployed and implemented" EFP technology "without the active involvement, training, equipment[,] and support of the IRGC." Barker Rep., PX-158, at 16; *cf.* 12/06/2018 (AM) Tr. 29:14–17 (stating that the Special Groups "could not make these modifications as rapidly as they were doing" without Iranian assistance). Barker further stated that Iranian agents "would build [EFPs] complete, [and] bring them [into Iraq] as a complete total system, ready to go." 12/04/2018 (AM) Tr. 44:13–16.

11

Similarly, Oates believed that the Shi'a insurgents' "rapid capability development" in weapons training stemmed from "external assistance." 12/03/2018 (AM) Tr. 98:5–9.

The U.S. military's forensic analysis also pointed squarely at Iran. The IRGC and Qods Force "used long-established smuggling routes and trusted Iraqi operatives" to smuggle EFPs into Iraq and supply them to Special Groups. *Id.* And "[t]he U.S. military traced much of the machinery used to manufacture the EFPs, high explosives[,] and [infrared] devices deployed in Iraq to Iran and its illicit supply chain." Oates Rep., PX-153, at 25 (footnote omitted); *see* 12/06/18 (AM) Tr. 48:11–49:8 (highlighting steel shipments and passive infrared devices that Iran imported into Iraq). A task force investigating EFPs even traced the "principal source" of EFP materials, including precision-milled copper liners, to Iran. *See* 12/03/2018 (AM) Tr. 95:11–96:16.

### iv. *Mortar Rounds and Rockets in Iraq*

In addition to EFPs, Iran "supplied or bankrolled a number of types of weapons used by Shi'a militia groups in Iraq." *Karcher I*, 396 F. Supp. 3d at 25. Some of the most notable non-EFP weapons used by supported proxy forces in Iraq included 81mm mortar rounds, 107mm rockets, and 240mm rockets in Iraq.

Iran's connection to mortar rounds and smaller caliber rockets spans more than fifty years. After Hezbollah "battle-tested" 107mm rockets against the Israel Defense Forces in southern Lebanon in the 1980s, *see* 12/06/18 Tr. 15:25-16:5, 75:4-11; Lutz Rep., PX-157 at 59, "those same weapons appear[ed] in Iraq between 2003 and 2011," and were "supplied exclusively by the IRGC-Qods Force." *See* 12/06/18 Tr. 109:5-10. As plaintiffs' expert McIntyre explained in his report regarding the use of 107mm rockets and 81mm mortar rounds:

> The IRGC-QF and (Lebanese) Hezbollah trained their proxies on how to optimize their use against U.S. and Coalition Forces. In fact, Hezbollah significantly enhanced and was directly responsible for the accuracy and lethality of the Special Group 107mm rocket and mortar teams that conducted indirect fire attacks on U.S.

and Coalition Forward and Contingency Operating Bases in Iraq. Hezbollah developed and taught a special month-long training program in Iran for members of Iraqi Special Groups on tactics, techniques and procedures for the employment of 107mm rockets and mortars, drawing on its years of experience targeting Israeli security forces and population centers.

McIntyre *Stearns* Apr. 6, 2008 Attacks Rep. at 1.

Iran also has a history of supplying Improvised Rocket Assisted Munition-propelled 240mm rockets ("IRAMs") to proxy forces in Iraq. IRAMs "were a signature weapon of Kata'ib Hezbollah ('KH'), an Iranian-backed Shi'a militia Special Group that operated in southern Iraq." *See* Barker Rep., PX-158, at 51 & n.88. IRAMs were constructed using an empty propane gas tank filled with "C4" plastic explosives as well as nails and pieces of chain "for a shrapnel effect which would be truly horrific." *See* 12/06/18 Tr. 110:4-15. In this sense, "IRAMs were an airborne version of a roadside bomb, propelled by rockets – typically 107mm rockets provided by Iran – and lobbed over the barriers that protected Coalition bases." *See* Barker Rep., PX-158, at 51 & n.88. "IRAMs first appeared in Iraq in November 2007, and, like EFPs, were typically employed against Coalition Forces in the Shi'a dominated areas of southern Iraq." *Id.* IRAMs were supplied by the IRGC-Qods Force almost exclusively to Kata'ib Hezbollah. *See* 12/06/18 Tr. 110:17-22.

### D. Four Bellwether Attacks

Plaintiffs allege injuries traceable to four of the seven bellwether attacks adjudicated in *Karcher I*: 1) the January 20, 2007 attack in Karbala, *see* Am. Compl., ¶¶ 572–601; *Karcher I*, 396 F. Supp. 3d at 45–52;[7] 2) the March 23, 2008 attack in Baghdad, *see* Am. Compl., ¶¶ 1021– 62; *Karcher I*, 396 F. Supp. 3d at 38–40;[8] 3) the May 9, 2008 attack in Baghdad, *see* Am. Compl., ¶¶ 1119–34; *Karcher I*, 396 F. Supp. 3d at 40–42; and 4) the May 17, 2009 attack in

---

[7] Along with the *Karcher I* court, two other district courts have determined Iran to be responsible for this attack. *See Fritz*, 320 F. Supp. 3d at 64–75; *Lee*, 518 F. Supp. 3d at 488–90.

[8] The *Lee* court also found Iran responsible for this attack. 518 F. Supp. 3d at 486–87.

Baghdad, *see* Am. Compl., ¶¶ 1229–68; *Karcher I*, 396 F. Supp. 3d at 42–45.[9]  After taking

judicial notice of the decision and conducting its own factual findings, *Rimkus*, 750 F. Supp. 2d

at 172, the Court concludes that Iran was responsible for those attacks.

### *i.  January 20, 2007 Attack*

In 2007, Private First Class ("Priv. 1st Class") Shawn Falter was serving as a member of

the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., ECF No. 36-66, at 27–

28 (Falter Casualty Rep.). On January 20, 2007, Priv. 1st Class Falter was serving at the Provincial

Joint Coordination Center in Karbala ("Karbala PJCC"), when several vehicles, driven by

apparently friendly forces, entered the center. Pregent Rep., PX-155, at 17.   Shortly thereafter,

individuals exited the vehicles, and proceeded to shoot, beat, and execute Priv. 1st Class Shawn

Falter and other U.S. soldiers. *Id.* at 18–19.  Priv. 1st Class Falter's casualty report confirms that

he died during hostile action in Iraq on January 20, 2007 as a result of "[m]ultiple (2) gunshot

wounds of the head and neck." *See* Falter Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the January 20,

2007 attack at the Karbala PJCC was traceable to Iran and its proxies. AAH, an IRGC-supported

Special Group, boldly claimed responsibility for the attack via video recordings, *see* 12/06/18 Tr.

223:4-17; *id.* at 225:20-228:1; Pregent Rep. at 7 & n.7, and on a website dedicated to one of the

attack's perpetrators, Pregent Rep. at 33 (citing AAH Website Capture (Nov. 10, 2010), PX-118);

*see also* 12/06/18 Tr. 181:19-182:5.  Pregent, in his expert opinion, believes the claims of

responsibility to be credible. 12/06/18 Tr. 225:20-226:3.  Additionally, a U.S. satellite detected a

"training center in Iran that duplicate[d] the layout of the [] compound in Karbala, Iraq." Pregent

Rep., PX-155, at 27.  As Pregent noted, "[t]he mock-up's very existence is direct evidence of Iran's

---

[9] The *Lee* court also found Iran responsible for this attack.  518 F. Supp. 3d at 487–88.

involvement in planning, supplying and authorizing the [a]ttack, and training the men who carried

it out." *Id.* at 28.   Moreover, two months after the attack, U.S. forces raided the hideout of a senior

Hezbollah commander, who admitted to planning the attack.  *Id.* at 35; 12/06/18 Tr. 189:3-11,

222:2.   The confession was corroborated through evidence, including a copy of the commander's

journal, 12/06/18 Tr. 208:8-25, 232:4-22, and the wallet of a soldier killed in the attack, Pregent

Rep., PX-155, at 31–35, uncovered during the raid, as well as identification of the commander's

fingerprints on the vehicles driven by the assailants, *id.* at 33–34.   After reviewing the available

evidence of the attack, Pregent, in his expert opinion, "conclude[s] with a high degree of

probability that Iran's IRGC and Hezbollah planned and orchestrated the January 20, 2007 attack

on the Karbala Provincial Joint Coordination Center in Iraq, which was carried out at their direction

by AAH." *Id.* at 7.   Based on the representations of plaintiffs' expert and the Court's review of

the materials before and findings by the *Karcher I*, *Fritz*, and *Lee* courts, this Court finds Iran

responsible for the January 20, 2007 attack by supporting proxy forces who conducted the attack.

### ii.  *March 23, 2008 Attack*

In 2008, Sergeant ("Sgt.") Steve A. McCoy, Sgt. Matthew Fieser, Specialist ("Spc.")

Benjamin Carrington, and Sgt. Jonathan Heslop were serving as members of the United States

Army in Iraq.  *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 9 (McCoy Casualty Rep.); *id.* at 10–

12 (Fieser Aff.); *id.* at 13–18 (Carrington Aff.).[10]   On March 23, 2008, Sgt. McCoy, Sgt. Fieser,

Spc. Carrington, and Sgt. Heslop were participating in a multi-vehicle convoy with several Iraqi

National Police vehicles leaving Forward Operating Base ("FOB") Falcon outside of Baghdad.

Lutz *Karcher* Rep., PX-159, at 49.   The first and last vehicles in the convoy were armored M2

---

[10] It appears that the sworn statement provided by Spc. Carrington to the AR 15-6 Investigation team was included twice and Sgt. Heslop's sworn statement was inadvertently omitted from the plaintiffs' submission. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 8.

Bradleys. *Id.* Sgt. McCoy was seated in first vehicle; Sgt. Fieser, Spc. Carrington, and Sgt. Heslop were located in the last vehicle, along with First Lieutenant ("1st Lt.") Russell Mason. 12/04/2018 (PM) Tr. 61:23-62:1. During the *Karcher I* trial, 1st Lt. Mason testified that he heard a "loud pop[,]" *id.* at 62:7-63:6, and, upon inspection, he determined that the first Bradley had been struck by an explosive. *Id.* at 65:3–10. He also observed Sgt. McCoy "completely engulfed in flames" as he fled the vehicle. *Id.* at 65:15-66:9. Sgt. McCoy's casualty report listed his cause of death as "septicemia due to thermal burns" sustained during hostile action. *See* McCoy Casualty Rep Sgt. Fieser, Spc. Carrington, and Sgt. Heslop allegedly continue to suffer from physical and psychological injuries as a result of their experience. *See* Am. Compl., at ¶¶ 1034–62.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 23, 2008 attack in Baghdad was an EFP traceable to Iran and its proxies. Two experts testified during *Karcher I* that, in their expert opinion, an EFP was responsible for the attack. Barker testified that the explosive device that detonated "was a precision-made, very effective EFP" that "was powered on by the command wire and then detonated" when it sensed the Bradley. 12/04/2018 (AM) Tr. 60:23–61:6; Barker Rep., PX-158, at 43. Barker also concluded in his report that, based on the damage to the heavily armored Bradley, "the EFP was precision manufactured and copper-lined." Barker Rep., PX-158, at 43. Lutz similarly concluded that "the large penetration hole of the Bradley's armor is indicative of a well-manufactured EFP that was a signature of EFPs provided to Iranian-backed Special Groups by the IRGC and Iran's Hezbollah proxy." Lutz *Karcher* Rep., PX-159, at 56. Based on the representations of plaintiffs' experts, the Court's review of the materials before the *Karcher I* court, and the findings made by the *Karcher I* and *Lee* courts, this Court finds Iran responsible for the March 23, 2008 EFP attack by supporting proxy forces who conducted the attack.

### iii.  May 9, 2008 Attack

In 2008, Priv. 1st Class Wesley Williamson[11] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 20–21 (Williamson Extended Casualty Rep.). On May 9, 2008, Priv. 1st Class Williamson was serving as the gunner in the second vehicle of a multi-vehicle convoy traveling in Baghdad when an explosive struck his vehicle. *See* Barker Rep., PX-158, at 47. The blast caused Priv. 1st Class Williamson both physical and psychological injury. See *Karcher I*, 396 F. Supp. at 40–41.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 9, 2008 in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Barker, confirmed that the explosive device left holes in Priv. 1st Class Wesley Williamson's vehicle in the same shape and size so as to be consistent with EFPs, *see* Barker Rep., PX-158, at 47, that command wire was discovered at the scene, *id.* at 46, and there had been a record of EFP attacks in the same area in the weeks before the attack, *id.* at 48. After reviewing the available evidence and information, Barker concludes, in his expert opinion, that the attack resulted from "a concealed, copper-lined EFP that was likely command wire-armed and triggered. The copper slug from the weapon, moving in an upward trajectory, defeated the vehicle's RHA, penetrated and destroyed the vehicle frame and struck [Priv. 1st Class] Williamson." *Id.* at 49–50. In his own expert report, Lutz determined that the attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah, that was conducted by one of the IRGC's Special Group proxies." Lutz *Karcher* Rep., PX-159, at 63. Based on the representations of plaintiffs' experts as well as the Court's review of the materials before and

---

[11] A plaintiff related to Priv. 1st Class Williamson brings a claim stemming from this attack. *See* Am. Compl., at ¶¶ 1133–34. Priv. 1st Class Williamson previously brought a claim stemming from the same attack in the *Karcher I* case. *See* Am. Compl., *Karcher*, ECF No. 8, at ¶¶ 949–63.

findings by the *Karcher I* court, this Court finds Iran responsible for the May 9, 2008 EFP attack

by supporting proxy forces who conducted the attack.

     *iv.  May 17, 2009 Attack*

  In 2009, Staff Sergeant ("Staff Sgt.") Robert Canine, Spc. Rhett Murphy, Spc. Roady

Landtiser,[12] and Spc. Nathan Richards[13] were serving as members of the United States Army in

Iraq.  *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 23 (Canine Purple Heart Award); *id.* at 24

(Murphy Purple Heart Perm. Order); *id.* at 25 (Landtiser Combat Infantryman Badge Perm. Order);

*id.* at 26 (Richards Purple Heart Award).  On May 17, 2009, Staff Sgt. Canine, Spc. Murphy, Spc.

Landtiser, and Spc. Richards were riding in the lead vehicle of a four-vehicle convoy conducting

a patrol near Baghdad, 12/04/2018 (PM) Tr. 107:23–24, 109:1–7, when their vehicle was struck

by an explosive device that was hidden next to a light pole. Barker Rep., PX-158, at 50–51. As a

result of the blast, Staff Sgt. Canine suffered a double leg amputation.  12/04/2018 (PM) Tr. at

121:15–122:1, 124:9–11.  Staff Sgt. Canine, Spc. Murphy, Spc. Landtiser, and Spc. Richards

allegedly continue to suffer from physical and psychological injuries as a result of their experience.

*See* Am. Compl., at ¶¶ 1229–68.

  The Court finds satisfactory evidence in the record to demonstrate that the explosive

responsible for the May 17, 2009 attack in Baghdad was an EFP traceable to Iran and its proxies.

Barker identified the explosion as an EFP array that was "precision manufactured and copper-

lined."  Barker Rep., PX-158, at 56.  He noted that the attacked "unit was operating in territory

---

[12] The Amended Complaint uses the spelling "Landtiser" while a previous opinion used the spelling "Lanteizer." *Compare* Am. Compl., at ¶ 1251 ("Plaintiff Roady Lantiser") *with Lee*, 518 F. Supp. 3d at 487 ("servicemember[] … Roady Lanteizer.").  This Court will use the spelling as provided by the plaintiffs in this case.

[13] Plaintiffs related to Staff Sgt. Canine and Spc. Richards bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 1229–42; 1260–68.  Different plaintiffs related to Staff Sgt. Canine and Spc. Richards previously brought claims stemming from the same attack in the *Karcher* and *Lee* cases. *See* Am. Compl., *Karcher*, at ¶¶ 949–63; Am. Compl., *Lee*, ECF No. 12, at ¶¶ 1133–42.

that previously experienced kinetic events directed by Iranian-backed Special Groups," *id.*, which is supported by the fact that there had been "three previous EFP attacks within 3 miles and 25 days of this event," Task Force Troy, IED Event Storyboard (May 17, 2009), PX-133, at 20.   Lutz likewise concluded that "[t]he attack involved the use of a concealed, copper-lined EFP that was likely remotely armed and [passive infra-red] triggered." Lutz *Karcher* Rep., PX-159, at 71.   After examining on the damage to the vehicle, Lutz opined that the EFP was "precision manufactured" and was likely "of original Hezbollah and IRGC design that was supplied by the IRGC." *Id.* at 70–71.   Based on the representations of plaintiffs' experts, the Court's review of the materials before the *Karcher* court, and the findings made by the *Karcher* and *Lee* courts, this Court finds Iran responsible for the May 17, 2009 EFP attack by supporting proxy forces who conducted the attack.

### E. Non-Bellwether Attacks

Plaintiffs allege injuries traceable to 31 of the 73 non-bellwether attacks adjudicated in *Karcher II*:

1. October 6, 2005 Attack in Baghdad, *see* Am. Compl., at ¶¶ 193–230; *Karcher II*, 2021 WL 133507, at *15;
2. April 12, 2006 Attack in Misiab, *see* Am. Compl., at ¶¶ 284–92; *Karcher II*, 2021 WL 133507, at *18–19;
3. April 25, 2006 Attack in Baghdad, *see* Am. Compl., at ¶¶ 293–303; *Karcher II*, 2021 WL 133507, at *19;
4. May 5, 2006 Attack in Mahawil, *see* Am. Compl., at ¶¶ 363–77; *Karcher II*, 2021 WL 133507, at *19–20;
5. June 5, 2006 Attack in Baghdad, *see* Am. Compl., at ¶¶ 378–428; *Karcher II*, 2021 WL 133507, at *21;
6. June 8, 2006 Attack in Al Kut, *see* Am. Compl., at ¶¶ 429–36; *Karcher II*, 2021 WL 133507, at *22;
7. October 17, 2006 Attack in Baqubah, *see* Am. Compl., at ¶¶ 468–74; *Karcher II*, 2021 WL 133507, at *23;
8. November 2, 2006 Attack in Baghdad, *see* Am. Compl., at ¶¶ 497–514; *Karcher II*, 2021 WL 133507, at *24–25;
9. December 3, 2006 Attack in Baghdad, *see* Am. Compl., at ¶¶ 531–36; *Karcher II*, 2021 WL 133507, at *27;

10. January 22, 2007 Attack in Baghdad, *see* Am. Compl., at ¶¶ 602–07; *Karcher II*, 2021 WL 133507, at *31;

11. January 25, 2007 Attack in Baghdad, *see* Am. Compl., at ¶¶ 608–15; *Karcher II*, 2021 WL 133507, at *32;

12. March 20, 2007 Attack in Baghdad, *see* Am. Compl., at ¶¶ 641–48; *Karcher II*, 2021 WL 133507, at *32–33;

13. April 29, 2007 Attack in Baghdad, *see* Am. Compl., at ¶¶ 657–66; *Karcher II*, 2021 WL 133507, at *37- 38;

14. May 3, 2007 Attack in Musayyib, *see* Am. Compl., at ¶¶ 667–72; *Karcher II*, 2021 WL 133507, at *38;

15. May 6, 2007 Attack in Baghdad, *see* Am. Compl., at ¶¶ 673–78; *Karcher II*, 2021 WL 133507, at *40–41;

16. May 6, 2007 Attack in Baghdad, *see* Am. Compl., at ¶¶ 679–90; *Karcher II*, 2021 WL 133507, at *39–40;

17. May 8, 2007 Attack in Salman Pak, *see* Am. Compl., at ¶¶ 691–700; *Karcher II*, 2021 WL 133507, at *41–42;

18. June 14, 2007 Attack in Scania, *see* Am. Compl., at ¶¶ 752–58; *Karcher II*, 2021 WL 133507, at *45;

19. July 6, 2007 Attack in Sadr City, *see* Am. Compl., at ¶¶ 806–13; *Karcher II*, 2021 WL 133507, at *47

20. July 17, 2007 Attack in Baghdad, *see* Am. Compl., at ¶¶ 822–27; *Karcher II*, 2021 WL 133507, at *48;

21. December 1, 2007 Attack in Baghdad, *see* Am. Compl., at ¶¶ 937–43; *Karcher II*, 2021 WL 133507, at *48–49;

22. January 6, 2008 Attack in Baghdad, *see* Am. Compl., at ¶¶ 944–80; *Karcher II*, 2021 WL 133507, at *49–50;

23. March 17, 2008 Attack in Baghdad, *see* Am. Compl., at ¶¶ 1015–20; *Karcher II*, 2021 WL 133507, at *50;

24. March 31, 2008 Attack in Baghdad, *see* Am. Compl., at ¶¶ 1063–68; *Karcher II*, 2021 WL 133507, at *52;

25. April 7, 2008 Attack in Sadr City, *see* Am. Compl., at ¶¶ 1091–96; *Karcher II*, 2021 WL 133507, at *52–53;

26. August 4, 2008 Attack in Baghdad, *see* Am. Compl., at ¶¶ 1167–72; *Karcher II*, 2021 WL 133507, at *54–55;

27. August 26, 2008 Attack in Sadr City, *see* Am. Compl., at ¶¶ 1183–92; *Karcher II*, 2021 WL 133507, at *55;

28. January 10, 2009 Attack in Baghdad, *see* Am. Compl., at ¶¶ 1198–1217; *Karcher II*, 2021 WL 133507, at *57–58;

29. January 18, 2009 Attack in Baghdad, *see* Am. Compl., at ¶¶ 1218–28; *Karcher II*, 2021 WL 133507, at *58;

30. September 8, 2009 Attack in Tikrit, *see* Am. Compl., at ¶¶ 1278–83; *Karcher II*, 2021 WL 133507, at *61; and

31. April 27, 2010 Attack in Khalis, *see* Am. Compl., at ¶¶ 1284–96; *Karcher II*, 2021 WL 133507, at *61–62.

After taking judicial notice of the decision and conducting its own factual findings,

*Rimkus*, 750 F. Supp. 2d at 172, the Court concludes that Iran was responsible for those attacks.

### i. October 6, 2005 Attack

On October 6, 2005, Sgt. Steven Vernier, Jr., Sgt. Alvis Burns, and Spc. Brian Radke were

serving as members of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App.,

at 30 (Radke Purple Heart Award); *id.* at 31–32 (Vernier Extended Casualty Rep.); Oct. 6, 2005

Attack – Baghdad Rep., ECF No. 36-8, at 71–72 (Burns Casualty Rep.). Sgt. Vernier, Sgt. Burns,

and Spc. Radke were passengers in the lead vehicle of a three-vehicle convoy traveling along the

Vernon main supply route in western Baghdad when their vehicle was struck by a multi-array

explosive. Lutz Non-Bellwether *Karcher* Attacks Rep. at 6. The explosion cast shrapnel

throughout the vehicle, hitting Sgt. Vernier, Jr., *see* Vernier Extended Casualty Rep., and hitting

Sgt. Burns in the head and legs, *see* Burns Casualty Rep. Sgt. Vernier, Sgt. Burns, and Spc. Radke

allegedly continue to suffer from physical and psychological injuries as a result of their experience.

*See* Am. Compl., at ¶¶ 193–230.

The Court finds satisfactory evidence in the record to demonstrate that the explosive

responsible for the October 6, 2005 attack in Baghdad was an EFP traceable to Iran and its proxies.

Reports prepared by the U.S. military after the blast, reviewed by Lutz, "believed" the responsible

device "to be an EFP[,]" Lutz Non-Bellwether *Karcher* Attacks Rep. at 6, and that the "main

charge configuration" of the weapon at issue was an "EFP." *Id.* Furthermore, investigators on the

ground reported that "3-4 EFPs were probably used with approx[imately] 1LB of explosives per

EFP" in the attack, and that the "damage to the vehicle had copper and silver colored scarring"

indicative of EFP damage. *Id.* at 7. Finally, the record includes photographic evidence of the

damage caused by the blast, including photographs of the defeated armor on the passenger door of

the up-armored HMMWV [hereinafter "Humvee"]. *Id.* at 7–8. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, that the attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 8.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the October 6, 2005 EFP attack by supporting proxy forces who conducted the attack.

### ii.  April 12, 2006 Attack

In 2006, Spc. Scott Bandhold[14] was serving as a member of the United States Army in Iraq. Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 34 (Bandhold Casualty Rep.). On April 12, 2006, Spc. Bandhold was traveling in the second vehicle of a four-vehicle military convoy in Misiab when a multi-array explosive detonated and struck Spc. Bandhold's vehicle, killing him. Lutz Non-Bellwether *Karcher* Attacks Rep. at 10. Spc. Bandhold's casualty report confirms that he died during hostile action in Misiab, Iraq on April 12, 2006 as a result of "[b]last and shrapnel injuries." *See* Bandhold Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 12, 2006 attack in Misiab was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, record the "Modes of Attack" as a "Directional IED," and note that Spc. Bandhold's vehicle was struck with "an EFP." Lutz Non-Bellwether *Karcher* Attacks Rep. at 11. Furthermore, investigators on the scene

---

[14] Plaintiffs related to Spc. Bandhold bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 288–92. Different plaintiffs related to Spc. Bandhold previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 249–51.

recovered copper fragmentation from the attack site and expressly concluded that "[t]he second vehicle . . . was hit by an EFP array consisting of at least 5 EFPs." *Id.* Finally, the photographic evidence in the record shows severe damage inflicted upon Spc. Bandhold's vehicle, an up-armored Humvee. *Id.* at 13–15. Lutz's expert evaluation is that the attack "involved the use of a multi-array copper-lined EFP" and that "the attack that killed [Spc.] Bandhold was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 16.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the April 12, 2006 EFP attack by supporting proxy forces who conducted the attack.

### iii.  April 25, 2006 Attack

In 2006, Staff Sgt. Luke Murphy was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 36 (Murphy Purple Heart Award). On April 25, 2006, Staff Sgt. Murphy was traveling in a vehicle in Baghdad as part of a convoy when an explosive struck his vehicle, setting the vehicle on fire. *See id.* at 18. The explosive charge amputated Staff Sgt. Murphy's right leg. *See* Apr. 25, 2006 Attack – Baghdad Rep., ECF No. 36-10, at 10–11. He also suffered shrapnel to back and fractures to his left leg. *Id.*

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 25, 2006 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, state that "P[ost] B[last] A[nalysis] determined the IED strike to be a multiple array EFP, initiation system unknown." *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 19. Moreover, photographic evidence from the

23

blast shows a clear "exit wound" hole in the rear passenger door of the armored vehicle as well as near-total incineration of the up-armored Humvee. *See id.* at 20; Apr. 25, 2006 Attack – Baghdad Rep., at 58–100. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that injured . . . [Staff Sgt.] Murphy . . . was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." Lutz Non-Bellwether *Karcher* Attacks Rep. at 22.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the April 25, 2006 EFP attack by supporting proxy forces who conducted the attack.

     *iv.  May 5, 2006 Attack*

In 2006, First Sergeant ("1st Sgt.") Carlos Saenz and Sgt. Nathan Vacho[15] were serving as members of the United States Army in Baghdad, Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 66 (Saenz Casualty Rep.); *id.* at 67 (Vacho Casualty Rep.). On May 5, 2006, Sgt. Vacho and 1st Sgt. Saenz were traveling in the lead vehicle of a four-vehicle convoy returning from a combat patrol mission in Mahawil when their vehicle was struck by a multi-array explosive, causing their vehicle to career into an oncoming dump truck. *See* Lutz Non-Bellwether *Karcher* Attacks Rep., at 23–24. The collision instantly killed Sgt. Vacho. *Id.* at 57. The blast also seriously wounded 1st Sgt. Saenz, who later died from those injuries during his medevac flight to the hospital. *Id.* Sgt. Vacho's casualty report confirms that he died during hostile action on May 5, 2006 as a result of "[b]last and blunt force injuries." *See* Vacho Casualty Rep. 1st Sgt. Saenz's casualty report

---

[15] Plaintiffs related to 1st Sgt. Saenz and Sgt. Vacho bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 367–71; 376–77. Different plaintiffs related to 1st Sgt. Saenz and Sgt. Vacho previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 269–72; 277–82.

confirms that he died during hostile action on May 5, 2006 as a result of "[b]last injuries of the pelvis and lower extremities." *See* Saenz Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 5, 2006 attack in Mahawil was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, state that the IED that struck Sgt. Vacho and 1st Sgt. Saenz's vehicle "was a[n] EFP 5 to 8 array, [long range cordless telephone armed] with a PIR trigger," and that the "Main Charge Configuration" from the blast was an "EFP." Lutz Non-Bellwether *Karcher* Attacks Rep. at 27. Additionally, the record contains extensive photographic evidence demonstrating the damage inflicted upon Sgt. Vacho and 1st Sgt. Saenz's vehicle, an up-armored Humvee, by the blast, including "distinct holes in armor of the driver's side rear door made by the EFP array." *Id.* at 30–31. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, that "the attack that killed [1st Sgt.] Saenz and [Sgt.] Vacho was part of the EFP campaign orchestrated by the IRGC and Hezbollah, that was conducted by one of the IRGC's Special Group proxies." *Id.* at 32.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the May 6, 2005 EFP attack by supporting proxy forces who conducted the attack.

### v.  June 5, 2006 Attack

In 2006, Staff Sgt. Arne Eastlund, Corporal ("Cpl.") James Shepard, Sgt. John P. Sklaney, III, and Spc. Matthew Adamson were serving as members of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 41–42 (Eastlund Aff.); *id.* at 44–45 (Shepard Aff.); *id.* at 47–50 (Sklaney Aff.); *id.* at 43 (Adamson Combat Action Badge Perm. Order). On June 5, 2006,

SSG Eastlund, Spc. Adamson, Cpl. Shepard, and Sgt. Sklaney were traveling south along New Five Road in Baghdad with a four-vehicle convoy. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 33. Cpl. Shepard, Sgt. Sklaney, and Spc. Adamson were traveling together in the first vehicle. *See* June 5, 2006 Attack – Baghdad Rep., ECF No. 36-12, at 71. Staff Sgt. Eastlund was driving the third vehicle within the military convoy, *id.* at 82, when an explosive device struck the right side of his armored vehicle, injuring him and killing his passenger, Sgt. Isaac Lawson. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 33. While attempting to respond to the explosion, Staff Sgt. Eastlund, Cpl. Shepard, Sgt. Sklaney, and Spc. Adamson observed and handled Sgt. Lawson's mutilated body. *See* June 5, 2006 Attack – Baghdad Rep. at 74. Additionally, Staff Sgt. Eastlund sustained "cuts [to his face], a broken right index finger, lower back pain, right hip pain, loss of hearing in [his] right ear, smoke inhalation, and superficial burns on [his] right thigh." *Id.* at 83. Staff Sgt. Eastlund, Cpl. Shepard, Sgt. Sklaney, and Spc. Adamson allegedly continue to suffer from physical and psychological injuries as a result of their experience. *See* Am. Compl., at ¶¶ 378–428.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 5, 2006 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, determined that "an EFP detonated in proximity to the third vehicle in the four-vehicle convoy, resulting in 1X [ ] KIA ["killed in action"] and 1X driver WIA ["wounded in action"][,]" that the "blast penetrated the level 1 armor on the front passenger[']s side, and caused damage to the inside of the vehicle[,]" and that the "Main Charge Configuration" of the explosive device was determined to be an "EFP." Lutz Non-Bellwether *Karcher* Attacks Rep. at 34. Investigators also recovered "one copper slug and a number of copper fragments" from the blast site. *Id.* The record contains photographic

evidence demonstrating the extensive damage inflicted upon the up-armored Humvee by the blast. *Id.* at 38–39, 41–43. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, that the attack "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 43.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the June 5, 2006 EFP attack by supporting proxy forces who conducted the attack.

### vi.  June 8, 2006 Attack

In 2006, Sergeant First Class ("Sgt. 1st Class") Daniel Crabtree[16] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 52 (Crabtree Casualty Rep.). On June 8, 2006, Sgt. 1st Class Crabtree was traveling along Alternate Supply Route Roswell in Al Kut with a military convoy consisting of a U.S. Army Special Forces Operational Detachment team. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 45. At the time, Sgt. 1st Class Crabtree was the vehicle commander of an up-armored Humvee. *See* June 8, 2006 Attack – Al Kut Rep., ECF No. 36-13, at 11. An explosive device struck Sgt. 1st Class Crabtree's armored vehicle, killing him and the local Iraqi interpreter in the vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 45. Sgt. 1st Class Crabtree's casualty report confirms that he was killed in hostile action on June 8, 2006, in Al Kut, Iraq. *See* Crabtree Casualty Rep.

---

[16] Plaintiffs related to Sgt. 1st Class Crabtree bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 433–36. Different plaintiffs related to Sgt. 1st Class Crabtree previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 310–14.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 8, 2006 in Al Kut attack was an EFP traceable to Iran and its proxies. As Lutz explains in his expert report, "[s]ince this is one of the earlier . . . attacks on record and involved an attack on a Special Forces unit, the record . . . is somewhat spar[s]e." Lutz Non-Bellwether *Karcher* Attacks Rep. at 46. Nonetheless, the Significant Activities ("SIGACT") report from the attack affirmatively indicates that Sgt. 1st Class Crabtree's team "was attacked with [ ] an EFP IED on ASR Roswell," and that "2X [Humvees] were . . . damaged in the attack." *Id.* at 45. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, that the June 8, 2006 attack "involved the use of an EFP" and "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 46.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the June 8, 2006 EFP attack by supporting proxy forces who conducted the attack.

### vii.   October 17, 2006 Attack

In 2006, Staff Sgt. Ryan Haupt[17] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 54 (Haupt Casualty Rep.). On October 17, 2006, Staff Sgt. Haupt was driving the second vehicle of a four-vehicle convoy near Baqubah when a multi-array explosive device struck Staff Sgt. Haupt's vehicle, killing him almost instantaneously. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 47. Staff Sgt. Haupt's casualty

---

[17] Plaintiffs related to Staff Sgt. Haupt bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 472–74. Different plaintiffs related to Staff Sgt. Haupt previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 336–41.

report confirms that he was killed in hostile action on October 17, 2006, in Baqubah, Iraq. *See* Haupt Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the October 17, 2006 attack in Baqubah was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, identify the main charge configuration of the explosive device as "EFP," Lutz Non-Bellwether *Karcher* Attacks Rep. at 49, note that the attack involved "an array of at least 8 EFPs due to the amount of large points of penetration[,]" *id.*, and state that "the scene [of the blast] indicated that the vehicle was struck by an EFP due to the copper residue evident at the spots where the armor was penetrated." *Id.* at 48–49. The record also includes photographic evidence of the damage inflicted upon Staff Sgt. Haupt's vehicle, an up-armored Humvee, as well as copper residue and copper fragmentation left at the scene. *See id.* at 50–51. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Staff Sgt.] Haupt . . . was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 52.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the October 17, 2006 EFP attack by supporting proxy forces who conducted the attack.

> viii.   *November 2, 2006*

In 2006, Lieutenant Colonel ("Lt. Col.") Paul Finken was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 56 (Finken Casualty Rep.). On November 2, 2006, Lt. Col. Finken was traveling in the lead vehicle of a four-vehicle

convoy in Baghdad when a multi-array explosive struck his vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 53. The slug from the explosion "penetrated the crew compartment between the passenger side front and rear doors, traveling up and back through the crew compartment, and exiting the vehicle above the left rear seat." *Id.* The attack killed Lt. Col. Finken. *Id.* at 53 & n.2. Lt. Col. Finken's casualty report confirms that he died during hostile action in Baghdad, Iraq on November 2, 2006 as a result of "[b]last and shrapnel injuries." *See* Finken Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the November 2, 2006 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, state that Lt. Col. Finken's armored vehicle "was struck by a large copper EFP," Lutz Non-Bellwether *Karcher* Attacks Rep. at 55, that the vehicle "was hit on the [front passenger] door by a large copper EFP . . . resulting in one six-inch round penetration," *id.*, and that the explosive device was "angled to compensate for the presence of" an anti-IED device on the vehicle, *id.* at 54. The record also contains photographic evidence from the attack site depicting the damage inflicted by the blast, including the complete penetration holes on Lt. Col. Finken's armored vehicle, an up-armored Humvee, *id.* at 56–58, and documenting the recovery of multiple copper slugs. *See id.* at 58. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, that the attack that killed Lt. Col. Finken "was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the

findings made by the *Karcher II* court, the Court finds Iran responsible for the November 2, 2006

EFP attack by supporting proxy forces who conducted the attack.

ix. *December 3, 2006 Attack*

In 2006, Sgt. Joshua Starkey was serving as a member of the United States Army in Iraq.

Dec. 3, 2006 Attack – Baghdad Rep., ECF. No. 36-16, at 11–14 (Starkey AR 15-6 Invest. Rep.).

On December 3, 2006, Sgt. Starkey was driving the lead vehicle of a multi-vehicle combat patrol

traveling in Baghdad when an explosive device struck his vehicle. *See* Lutz Non-Bellwether

*Karcher* Attacks Rep. at 60. Sgt. Starkey sustained injuries to his head and shoulder as a result of

the blast. *See* Dec. 3, 2006 Attack – Baghdad Rep., at 23 (Starkey Aff.). Sgt. Starkey allegedly

continues to suffer from physical and psychological injuries as a result of his experience. *See* Am.

Compl., at ¶ 535.

The Court finds satisfactory evidence in the record to demonstrate that the explosive

responsible for the December 3, 2006 attack in Baghdad was an EFP traceable to Iran and its

proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, indicate that the

"[d]amage to [Sgt. Starkey's] vehicle is consistent with a multiple array, copper-lined EFP," that

the main charge configuration of the explosive device was an "EFP," and that the explosive device

responsible for the blast "was an EFP based on fragmentation and penetration patterns." Lutz

Non-Bellwether *Karcher* Attacks Rep. at 62. The record also contains photographic evidence

depicting the penetration points in the armor on Sgt. Starkey's vehicle, an up-armored Humvee,

*see id.* at 63, including the presence of copper residue left around the penetration holes of the

vehicles, which "is a typical trademark of a copper-lined EFP." *Id.* Lutz identifies in his expert

report a video from Kata'ib Hezbollah displaying the December 3, 2006 attack and claiming

responsibility        for        that        attack.        *See*        *id.*        at        64.        (citing

31

https//archive.org/details/KataibHezbollahhezballahBrigades-Efp3122006).   After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that [injured Sgt. Starkey] was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the fact that a known Iran-supported proxy force claimed credit for the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the December 3, 2006 EFP attack by supporting proxy forces who conducted the attack.

### x.   *January 22, 2007 Attack*

In 2007, Spc. Brandon Stout[18] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 65 (Stout Casualty Rep.).   On January 22, 2007, Spc. Stout was driving the fourth vehicle of a five-vehicle convoy traveling south on Route Pluto towards FOB Rustamiyah in Baghdad when a multi-array explosive emplaced on the side of the road struck the right side of Spc. Stout's vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 65. The blast blew open the driver's side door of Spc. Stout's vehicle and caused the vehicle to swerve into a nearby tree and fence. *See id.*   The impact caused Spc. Stout and a local Iraqi interpreter to be ejected from the vehicle. *Id.* at 66.   Spc. Stout was found dead "approximately 20 meters behind the site the M1114 Humvee stopped." *Id.*   Spc. Stout's casualty report confirms that he died during hostile action in Baghdad, Iraq on January 22, 2007 as a result of "[b]last and ballistic fragment injuries." *See* Stout Casualty Rep.

---

[18] A plaintiff related to deceased Spc. Stout brings a claim stemming from this attack. *See* Am. Compl., at ¶¶ 606–07. Different plaintiffs related to Spc. Stout previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 529–31.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 22, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, note that Spc. Stout's vehicle "was struck on the right side by a multiple-array EFP," Lutz Non-Bellwether *Karcher* Attacks Rep. at 66, that the "multiple array of entry points in the vehicle and the location of the detonation indicate that this was most likely a command detonated EFP," *id.* at 69–70, and that the attack site had been "a hotspot for EFP activity." *Id.* at 67. Additionally, the record contains photographic evidence depicting this penetration damage inflicted upon Spc. Stout's vehicle, an up-armored Humvee, from the blast. *See id.* at 68–69. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Spc.] Brandon L. Stout was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 71.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the January 22, 2007 EFP attack by supporting proxy forces who conducted the attack.

### xi.  January 25, 2007 Attack

In 2007, Sgt. Michael C. Balsley was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 67 (Balsley Death Cert.). On January 25, 2007, Sgt. Balsley was driving the lead vehicle of a four-vehicle patrol traveling east on an unnamed route in New Baghdad when a multi-array explosive emplaced on the side of the road struck the driver's side of Sgt. Balsley's vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 74. The blast penetrated the vehicle and killed Sgt. Balsley. *See id.* Sgt. Balsley's death certificate lists

his cause of death as "blast injuries" and the interval between onset and death as "instantaneous." *See* Balsley Death Cert.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 25, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies.  Reports prepared by the U.S. military after the blast, reviewed by Lutz, note "that the device used in the attack was a 4 array EFP," Lutz Non-Bellwether *Karcher* Attacks Rep. at 74, that the main charge configuration from the blast was "EFP," *id.*, and that the attack demonstrated the continued targeting of Coalition Forces in the East Baghdad Area, *id.*  The record also contains photographic evidence depicting the penetration points on Sgt. Balsley's vehicle, an up-armored Humvee, inflicted by an EFP array. *See id.* at 76.  After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed . . . [Sgt.] Balsley was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 78.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the January 25, 2007 EFP attack by supporting proxy forces who conducted the attack.

   *xii.  March 20, 2007 Attack[19]*

In 2007, Spc. Curtis Glawson, Jr.[20] was serving as a member of the United States Army in Iraq.  *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 69 (Glawson Casualty Rep.).  On March 20,

---

[19] Pls.' PFFCL corrected the date of the attack to be March 20, 2007, instead of March 30, 2007, as indicated in the amended complaint. Pls.' PFFCL, at 11.

[20] Plaintiffs related to Spc. Glawson bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 645–48. Different plaintiffs related to Spc. Glawson previously brought claims in the *Karcher II* case.  *See* Am. Compl., *Karcher*, at ¶¶ 551–56.

2007, Spc. Glawson was departing from FOB Falcon on a combat patrol mission near Baghdad with a convoy consisting of three Humvees and a 10-ton M984/A1 up-armored Heavy Expanded Mobility Tactical Truck ("HEMTT") wrecker. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 79. Spc. Glawson was riding in the HEMTT wrecker, acting as the vehicle's commander, when a multi-array explosive struck the vehicle's right side, destroying it and killing Spc. Glawson. *See id*. Spc. Glawson's casualty report confirms that he was killed in hostile action on March 20, 2007, in Baghdad, Iraq. *See* Glawson Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 20, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirm that a "multi-array EFP strike on the HEMTT wrecker pierced the passenger door and the passenger side cab, killing SPC Glawson," Lutz Non-Bellwether *Karcher* Attacks Rep. at 80, and that the attack was "complex" because it specifically targeted Spc. Glawson's HEMTT wrecker and was sufficiently "powerful" to blow the driver of the HEMTT wrecker out of the left side of the vehicle's cab. *Id*. Furthermore, investigators observed copper transfer appeared on the armor of the HEMTT wrecker and around the penetration points from the blast. *See id.* at 81. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Spc.] Glawson was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 84.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the March 20, 2007 EFP attack by supporting proxy forces who conducted the attack.

xiii.  *April 29, 2007 Attack*

In 2007, Staff Sgt. Jay Martin was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 71 (Martin Casualty Rep.).  On April 29, 2007, Staff Sgt. Martin was riding in the lead vehicle of a four-vehicle patrol traveling north on Route Pluto from FOB Rustamiyah in Baghdad when a multi-array explosive struck the driver's side of Staff Sgt. Martin's vehicle, killing him. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 86–87.  Staff Sgt. Martin's casualty report confirms that he was killed in action in Baghdad on April 29, 2007, as a result of a "[b]last fragment injuries." *See* Martin Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 29, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, indicate that the damage inflicted upon Staff Sgt. Martin's armored vehicle "was consistent with a multiple array EFP," and that the main charge configuration was "EFP." *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 87.  Investigators detected copper residue located on one of the exit holes left on Staff Sgt. Martin's vehicle from the blast's penetration and recovered "[a] metal fragment that appeared to be copper" inside the vehicle. *Id.* at 87–88.  The record also contains photographic evidence depicting the damage inflicted to Staff Sgt. Martin's vehicle, an up-armored Humvee. *See id.* at 90.  After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed Staff Sgt. Martin . . . was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 91.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack,  the representations of plaintiffs' expert, and the

findings made by the *Karcher II* court, the Court finds Iran responsible for the April 29, 2007 EFP

attack by supporting proxy forces who conducted the attack.

> xiv.   *May 3, 2007 Attack*

In 2007, 1st Lt. Colby James Umbrell[21] was serving as a member of the United States Army

in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 73 (Umbrell Death Cert.).   On May 3, 2007,

1st Lt. Umbrell was traveling in the second vehicle of a four-vehicle military patrol unit returning

to FOB Iskandariyah on Route Michelle in Musayyib when a multi-array explosive struck his

vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 92.   1st Lt. Umbrell died on the scene

from traumatic penetrating brain injuries. *See id.* at 92–93.   1st Lt. Umbrell's certificate of death

confirms that he was killed in action on May 3, 2007 from "blast injuries" suffered in Musayyib,

Iraq, which caused an "immediate" death. *See* Umbrell Death Cert.

The Court finds satisfactory evidence in the record to demonstrate that the explosive

responsible for the May 3, 2007 attack in Musayyib was an EFP traceable to Iran and its proxies.

Reports prepared by the U.S. military after the blast, reviewed by Lutz, indicate that the attack site

had been the location of numerous EFP attacks against Coalition Forces attributed to a Iran-backed

proxy Jaysh al-Mahdi ("JAM"), *see* Lutz Non-Bellwether *Karcher* Attacks Rep. at 93–96, that the

strike was particularly accurate, *id.* at 95, that a "multi-array EFP," consisting of "two large steel

EFPs and one small copper EFP," was responsible for the damage to 1st Lt. Umbrell's up-armored

Humvee, *id.* at 96, and that the "main charge configuration" and the "device description" was an

EFP.   *Id.*   After reviewing the available evidence of the attack, Lutz concludes, in his expert

opinion, "that the attack that killed [1st Lt.] Umbrell was part of the EFP campaign orchestrated

---

[21] A plaintiff related to 1st Lt. Umbrell brings a claim stemming from this attack. *See* Am. Compl., at ¶¶ 671–72. Different plaintiffs related to 1st Lt. Umbrell previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 646–49.

by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 97.

Based on the evidence provided by plaintiffs showing the location—an area known to experience JAM activity—sophistication, lethality, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the May 3, 2007 EFP attack by supporting proxy forces who conducted the attack.

### xv.   May 6, 2007 Attack ("First May 6, 2007 Attack")

In 2007, Staff Sgt. Virgil Martinez[22] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 76 (Martinez Casualty Rep.). Early in the morning on May 6, 2007, Staff Sgt. Martinez was riding in the passenger seat of the lead vehicle in multi-vehicle convoy in Baghdad traveling south on Route Cubs to FOB Liberty when a multi-array explosive struck his vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 99–100. The blast shattered glass on all of the windows of Staff Sgt. Martinez's vehicle and left a round hole in the armor on the vehicle's door, causing "lacerations on the back of [Staff Sgt. Martinez's] neck and large amounts of blood on his body armor." *See id.* at 100. Staff Sgt. Martinez's casualty report confirms that he was killed in action on May 6, 2007 in Iraq as a result of hostile "[b]last and shrapnel injuries." *See* Martinez Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the First May 6, 2007 Attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, indicate that the

---

[22] A plaintiff related to Staff Sgt. Martinez brings a claim stemming from this attack. *See* Am. Compl., at ¶¶ 677–78. Different plaintiffs related to Staff Sgt. Martinez previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 663–65.

EFP attack produced "molten copper slugs" that "ripped through all three soldiers in the vehicle, killing [Staff Sgt.] Martinez instantly." Lutz Non-Bellwether *Karcher* Attacks Rep. at 101.  The reports also opine that the attack was "likely a retaliation attack against C[oalition] F[orces] as a result of [an] engagement . . . [with] JAM," and indicate that "JAM has been known to initiate [such] retaliatory attacks." *Id.* at 103–04.  The record also contains photographic evidence depicting the multiple penetration holes inflicted to Staff Sgt. Martinez's vehicle, an up-armored Humvee, as a result of the blast. *See id.* at 102.  After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, that the attack "that killed [Staff Sgt.] Martinez was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 107.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the First May 6, 2007 EFP attack by supporting proxy forces who conducted the attack.

xvi.   *May 6, 2007 Attack ("Second May 6, 2007 Attack")*

In 2007, Spc. Robert Dixon[23] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 78 (Dixon Casualty Rep.).  On May 6, 2007, Spc. Dixon was occupying the gunner position in the lead vehicle of a five-vehicle patrol traveling north along Route Jackson in Baghdad when a multi-array explosive struck the right side of Spc. Dixon's armored vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 108.  Spc. Dixon suffered a severe abdominal wound and was later pronounced dead. *See id.*  Spc. Dixon's casualty report

---

[23] Plaintiffs related to Spc. Dixon bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 684–90.  Different plaintiffs related to Spc. Dixon previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 654–58.

confirms that he died of wounds sustained in Baghdad, Iraq during hostile action on May 6, 2007. *See* Dixon Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the Second Attack on May 6, 2007 Attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, state that an IED "consist[ing] of a multi-array EFP" was "taped to a telephone pole" near the blast site, that the "EFP struck [Spc. Dixon's] vehicle's right side at a 90 angle," and that copper slugs were recovered from the vehicle after the attack. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 109–10. Additionally, the "event storyboards" opine that this EFP attack "was most likely in retaliation for the capture of [an] immediate superior within a major Jaysh al-Madhi IED/EFP organization." *Id.* at 111. Moreover, a chemical analysis showed that metal fragments from the blast trace tested positive for "explosive residue consistent with a Cyclotrimethylenetrinitramine based explosive," which is a common component of Iranian-manufactured C-4. *Id.* at 116. Finally, the record contains photographic evidence depicting the penetration holes on Spc. Dixon's up-armored vehicle from the ERP array. *See id.* After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Spc.] Dixon was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 117.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the Second May 6, 2007 EFP attack by supporting proxy forces who conducted the attack.

xvii.   *May 8, 2007 Attack*

In 2007, Spc. Kyle Little[24] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 80 (Little Casualty Rep.). On May 8, 2007, Spc. Little was driving the lead vehicle in a four-vehicle convoy departing from FOB Hammer, located in Salman Pak, when a multi-array explosive struck his vehicle, blowing "two holes each in both the front and rear passenger doors of the [Humvee], catastrophically damaging the vehicle." *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 119–21. The blast ejected Spc. Little from the vehicle. *Id.* at 121. Spc. Little died as a result of his injuries, which included "massive chest trauma [ ], . . . lacerations of the heart, lungs, aorta, liver, and spleen and multiple fractures of the ribs and spine[,] . . . severe head trauma, with skull fractures and a penetrating shrapnel wound to his brain." *Id.* Spc. Little's casualty report confirms that he was killed during hostile action in Iraq on May 8, 2007. *See* Little Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 8, 2007 attack in Salman Pak was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, note that the primary explosive device from the blast as a "multiple array (3-4) EFP," Lutz Non-Bellwether *Karcher* Attacks Rep. at 123, "penetration holes in the door [of the Humvee] are in line with EFP target effects," *id.*, and that the EFP had been emplaced in such a fashion as to defeat the 'Rhino' countermeasure installed on the [vehicle,]" *id.* at 122. Furthermore, the record contains photographic evidence depicting copper fragmentation from the blast, *see id.*, and the substantial damage inflicted to Spc. Little's vehicle, an up-armored Humvee, from the attack, *see id.* at 121.

---

[24] Plaintiffs related to Spc. Little bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 695–700. A different plaintiff related to Spc. Little previously brought a claim in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 670–71.

Finally, investigators detected the presence of a second IED device at the site of the May 8, 2007 attack, specifically left to target soldiers "responding to the EFP attack," *id.* at 122, and that this secondary explosive device used "male and female connectors" tying together the device's arming and initiation components, which is a strong indicator of Lebanese Hezbollah manufacturing, *id.* at 128. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Spc.] Little was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the May 8, 2007 EFP attack by supporting proxy forces who conducted the attack.

####    *xviii.   June 14, 2007 Attack*

In 2007, Sgt. Andrew Moores was serving as a member of the United States Army in Iraq. *See* June 14, 2007 Attack – Scania Rep., ECF. No. 36-25, at 44 (Moores Aff.). On June 14, 2007, Sgt. Moores was traveling in a thirty-eight-vehicle convoy heading north on Main Supply Route Tampa towards Scania, Iraq. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 130. Sgt. Moores was riding in the convoy's second vehicle, which was an up-armored Humvee, along with Sgt. Richard Parker, when a multi-array explosive struck Sgt. Moore's vehicle. *See* Moores Aff. Shrapnel from the blast killed Sgt. Parker instantly and set the Humvee ablaze. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 130. Sgt. Moores sought medical treatment after the blast, *see* Moores Aff., and allegedly continues to suffer from physical and psychological injuries as a result of his experience, *see* Am. Compl, at ¶¶ 755–58.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 14, 2007 attack in Scania was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, indicate that the explosive device involved was "consistent with an EFP array due to the presence of copper residue," Lutz Non-Bellwether *Karcher* Attacks Rep. at 131, that "the EFP was command wire armed and PIR initiated," *id.*, that "command wire was used to arm the EFP and that the initiation system was a passive infrared device," *id.*, and that the explosive device at issue "was consistent with an EFP because of the presence of copper residue and that it was command wire armed and PIR initiated," *id.* at 133. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Sgt.] Parker [and injured Sgt. Moores] was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 134.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, the Court finds Iran responsible for the June 14, 2007 EFP attack by supporting proxy forces who conducted the attack.

### xix.  July 6, 2007 Attack

In 2007, Petty Officer First Class ("Petty Off. 1st Class") Robert McRill[25] was serving as a member of the United States Navy in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 84 (McRill Casualty Rep.). On July 6, 2007, Petty Off. 1st Class McRill was riding in the rear vehicle of a five-vehicle convoy during a clandestine mission in Sadr City, within Baghdad, when he was

---

[25] Plaintiffs related to Petty Off. 1st Class McRill bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 810–13. Different plaintiffs related to Petty Off. 1st Class McRill previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 758–61.

killed by multi-array explosive struck his vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 135. Petty Off. 1st Class McRill's casualty report confirms that he died during hostile action in Sadr City, Iraq on July 6, 2007 as result of "massive trauma received from an EFP . . . blast while in a [Humvee]." *See* McRill Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the July 6, 2007 attack in Sadr City was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirm that Petty Off. 1st Class McRill's vehicle "was struck by an EFP," and that Petty Off. 1st Class McRill died as a result of the blast. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 136. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed . . . [Petty Off. 1st Class] McRill was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 136.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the July 6, 2007 EFP attack by supporting proxy forces who conducted the attack.

    *xx.  July 17, 2007*

In 2007, Private First Class ("Priv. 1st Class") Ron J. Joshua, Jr.[26] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 86 (Joshua Casualty Rep.). On July 17, 2007, Priv. 1st Class Joshua was traveling south on Ghazaliyah Main

---

[26] A plaintiff related to Priv. 1st Class Joshua brings a claim stemming from this attack. *See* Am. Compl., at ¶¶ 826–27. A different plaintiff related to Priv. 1st Class Joshua previously brought a claim in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 776–77.

in Baghdad in the lead vehicle of a convoy when a multi-array explosive struck the passenger side of his vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 137. The blast ejected Priv. 1st Class Joshua from the vehicle, instantly killing him. *See id.* Priv. 1st Class Joshua's casualty report confirms that he died during hostile action in Baghdad, Iraq on July 17, 2007 as result of "[b]last injuries." *See* Joshua Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the July 17, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirm that "the blast seat and damage to the vehicle was consistent with one large EFP approximately 12 round, and surrounded by smaller EFPs" and that "the incident was consistent with an EFP array." Lutz Non-Bellwether *Karcher* Attacks Rep. at 138–39. The record also contains photographic evidence depicting the significant damage inflicted upon Priv. 1st Class Joshua's vehicle, an up-armored Humvee, from the blast. *See id.* at 143. Moreover, the "event storyboard" from the attack, reviewed by Lutz, also indicates that "[r]ecent raids and detentions of JAM H[igh] V[alue] I[ndividuals] throughout the battle space have further motivated JAM Special Groups to take action against C[oalition] F[orces] as retaliation for disrupting their operations." *Id.* at 143. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed . . . [Priv. 1st Class] Joshua was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 144.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the

findings made by the *Karcher II* court, this Court finds Iran responsible for the July 17, 2007 EFP attack by supporting proxy forces who conducted the attack.

      *xxi.   December 1, 2007*

In 2007, Spc. Matthew K. Reece[27] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 88 (Reece Casualty Rep.).  On December 1, 2007, Spc. Reece was conducting a patrol in the Rusafa neighborhood of Baghdad with a six-vehicle convoy when an explosive struck the right side of his vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 146.  The blast caused Spc. Reece to suffer fatal wounds to his head and back. *Id.*  Spc. Reece's casualty report confirms that he died during hostile action in Baghdad, Iraq on December 1, 2007 as result of "[b]last injuries." *See* Reece Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 1, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies.  Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirm that the blast "involved 2 EFPs," Lutz Non-Bellwether *Karcher* Attacks Rep. at 147, that the "main charge configuration" from the blast as an EFP, *id.*, and that investigators concluded that the blast concludes that a steel-lined EFP was responsible for the attack, *see id.* at 149.  The record also contains photographic evidence depicting the significant damage inflicted upon Spc. Reece's vehicle, an up-armored Humvee, from the blast. *See id.* at 152.  After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed . . . [Spc.] Reece was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 153.

---

[27] Plaintiffs related to Spc. Reece bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 941–43.  Different plaintiffs related to Spc. Reece previously brought claims in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 782–84.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the December 1, 2007 EFP attack by supporting proxy forces who conducted the attack.

xxii.   *January 6, 2008 Attack*

In 2008, Cpl. James D. Gudridge,[28] Priv. 1st Class Joshua Schichtl, and Staff Sgt. Steve Wadleigh were serving as members of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 90 (Gudridge Casualty Rep.); *id.* at 91–93 (Schichtl Casualty Rep.); *id.* at 94–95 (Wadleigh Casualty Rep.). On January 6, 2008, Cpl. Gudridge, Priv. 1st Class Schichtl, and Staff Sgt. Wadleigh were riding in the lead vehicle of a seven-vehicle convoy during a mounted patrol of the West Rashid neighborhood of Baghdad when a multi-array explosive struck the passenger door of their vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 155. The blast sent multiple slugs through the vehicle, killing Cpl. Gudridge and wounding Priv. 1st Class Schichtl. *Id.* at 155–56. Cpl. Gudridge's casualty report confirms that he died during hostile action in Baghdad, Iraq on January 6, 2008 as result of "[b]last injuries." *See* Gudridge Casualty Rep. Priv. 1st Class Schichtl and Staff Sgt. Steve Wadleigh allegedly continue to suffer from physical and psychological injuries as a result of their experience. *See* Am. Compl, at ¶¶ 954–60; 972– 77.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 6, 2008 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirm that the blast

---

[28] A plaintiff related to Cpl. Gudridge brings a claim stemming from this attack. *See* Am. Compl., at ¶¶ 948–49. A different plaintiff related to Cpl. Gudridge previously brought a claim stemming from the same attack in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 789–90.

involved a "multi-array EFP struck the driver's side front window, driver's door, driver's side passenger door, and turret" of the vehicle containing Cpl. Gudridge, Priv. 1st Class Schichtl and Staff Sgt. Wadleigh, that the "main charge configuration" from the blast was an EFP, and that the device responsible for the blast was "a single array of 3-4 copper-lined EFPs." Lutz Non-Bellwether *Karcher* Attacks Rep. at 156. The record also contains photographic evidence depicting the significant damage inflicted upon the vehicle, an up-armored Humvee, from the blast, *see id.* at 159–62, and copper residue left after the blast. *See id.* at 159. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Cpl.] Gudridge and injured [Priv. 1st Class] Schichtl [and Staff Sgt. Wadleigh] was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 153.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the January 6, 2008 EFP attack by supporting proxy forces who conducted the attack.

### *xxiii.   March 17, 2008 Attack*

In 2008, Sgt. Christopher Simpson was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 97 (Simpson Casualty Rep.). On March 17, 2008, Sgt. Simpson was riding in the third vehicle of a five-vehicle convoy during a patrol traveling east on Route Pluto to Combat Outpost ("COP") Ford from Camp Taji, in Baghdad, when a multi-array explosive struck the passenger door of his vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 164. The blast sent multiple slugs through the vehicle, immediately killing Sgt.

Simpson. *Id.* at 164–65. Sgt. Simpson's casualty report confirms that he died during hostile action in Baghdad, Iraq on March 17, 2008 as result of "[b]last injuries." *See* Simpson Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 17, 2008 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirmed that Sgt. Simpson's vehicle was "hit in 3 locations, from a 3 array copper EFP." Lutz Non-Bellwether *Karcher* Attacks Rep. at 165, that the "main charge configuration" from the blast was an EFP, *id.*, and that chemical analysis of items recovered at the scene indicated the presence of high-energy explosives, *id.* at 172. The record also contains photographic evidence depicting the significant damage inflicted upon Sgt. Simpson's vehicle, an up-armored Humvee, from the blast. *See id.* at 171. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed . . . [Sgt.] Simpson was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 173.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the March 17, 2008 EFP attack by supporting proxy forces who conducted the attack.

xxiv. *March 31, 2008 Attack*

In 2008, Sgt. Dayne Dhanoolal[29] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 99 (Dhanoolal Casualty Rep.). On March 31,

---

[29] A plaintiff related to Sgt. Dhanoolal brings a claim stemming from this attack. *See* Am. Compl., at ¶¶ 1067–68. A different plaintiff related to Sgt. Dhanoolal previously brought a claim stemming from the same attack in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 875–76.

2008, Sgt. Dhanoolal was operating the lead vehicle of an eight-vehicle convoy during a patrol traveling north on Route Predators from FOB Rustimayah, in Baghdad when a multi-array explosive struck the right side of his vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 174. The blast sent multiple slugs through the vehicle, one of which struck Sgt. Dhanoolal and immediately killed him. *See id.* at 175. Sgt. Dhanoolal's casualty report confirms that he died during hostile action in Baghdad, Iraq on March 31, 2008 as result of "[b]last injuries." *See* Dhanoolal Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 31, 2008 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirmed that Sgt. Dhanoolal's vehicle "was struck with an array of 2 EFPs with steel liners," Lutz Non-Bellwether *Karcher* Attacks Rep. at 176, that he was killed by an EFP slug, *id.* at 175, and that "[t]he EFP was most likely emplaced and detonated by the Oubadi/Riassa S[pecial] G[roup]," *id.* at 176. The record also contains photographic evidence depicting the significant damage inflicted upon Sgt. Dhanoolal's vehicle, an armored Husky mine-detection vehicle, from the blast. *See id.* at 178. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Sgt.] Dhanoolal was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 179.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the March 31, 2008 EFP attack by supporting proxy forces who conducted the attack.

xxv.   *April 7, 2008 Attack*

In 2008, Sgt. Timothy Smith[30] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 101 (Smith Casualty Rep.).  On March 31, 2008, Sgt. Smith was operating a vehicle as part of a seven-vehicle convoy during a patrol traveling in Sadr City when a multi-array explosive struck his vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 181. The blast sent multiple slugs through the vehicle.  *Id.*  Sgt. Smith's casualty report confirms that he died during hostile action in Baghdad, Iraq on April 7, 2008 as result of "[b]last and blast fragmentation injuries." *See* Smith Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 7, 2008 attack in Sadr City was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirmed that the slugs that entered Sgt. Smith's vehicle "were consistent with 8-10" copper lined EFPs, *see* Lutz Non-Bellwether *Karcher* Attacks Rep. at 182, and that the blast involved "copper lined EFPs," which caused a "catastrophic hit" to Sgt. Smith's vehicle, leaving "copper residue . . . on each of the impact areas," *id.*  A report noted similar attacks in the vicinity of the blast during the weeks before the April 7, 2008 and that "[t]hese attacks [were] S[pecial] G[roup] cells that are being commanded to conduct attacks on C[oalition] F[orces] out of Sadr City." *Id.* at 183.  The record also contains photographic evidence depicting the significant damage inflicted upon Sgt. Smith's vehicle, an armored Husky mine-detection vehicle, from the blast. *See id.* at 186.  After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed

---

[30] A plaintiff related to Sgt. Smith brings a claim stemming from this attack. *See* Am. Compl., at ¶¶ 1095–96. Different plaintiffs related to Sgt. Smith previously brought claims stemming from the same attack in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 902–05.

[Sgt.] Smith was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 179.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, location, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the March 31, 2008 EFP attack by supporting proxy forces who conducted the attack.

### xxvi. *August 4, 2008 Attack*

In 2008, Spc. Jonathan Menke[31] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 103 (Menke Casualty Rep.). On August 4, 2008, Spc. Menke was driving the lead vehicle of a four-vehicle convoy during a patrol traveling west on Route Airport Road in Baghdad when a multi-array explosive struck Spc. Menke's vehicle, killing him. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 189–90. Sgt. Menke's casualty report confirms that he died during hostile action in Baghdad, Iraq on August 4, 2008 as result of "[p]enetrating blast injury of the chest." *See* Menke Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the August 4, 2008 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirmed that "Spc. Menke was killed instantly by [an] EFP strike," Lutz Non-Bellwether *Karcher* Attacks Rep. at 190, "that the device used in the attack comprised two 8-inch EFPs," *id.* at 191, and that "copper fragments" were recovered from the blast site, *id.* at 192. The record also contains photographic evidence depicting the significant damage inflicted upon Sgt. Menke's vehicle, an up-armored

---

[31] A plaintiff related to Spc. Menke brings a claim stemming from this attack. *See* Am. Compl., at ¶ 1172. Different plaintiffs related to Sgt. Smith previously brought claims stemming from the same attack in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 968–72.

Humvee, from the blast. *See id.* at 194. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Spc.] Menke was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 196.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the August 4, 2008 EFP attack by supporting proxy forces who conducted the attack.

> xxvii.  *August 26, 2008 Attack*

In 2008, Spc. Tyler Latham was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 105–07 (Latham Extended Casualty Rep.). On August 6, 2008, Spc. Latham was traveling in the third vehicle of a multi-vehicle convoy heading northeast on Route Grizzlies in the Sadr City area of Baghdad when an explosive struck Spc. Latham's vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 198. Spec. Latham suffered injuries to his left arm as a result of the blast and was evacuated to a combat hospital. *See* Latham Extended Casualty Rep. Spc. Latham allegedly continues to suffer from physical and psychological injuries as a result of his experience. *See* Am. Compl, at ¶¶ 1186–91.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the August 26, 2008 attack in Sadr City was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirmed that explosive device causing the blast "consisted of a [redacted] EFP w/ approximately 20 lbs of unk[nown] bulk explosives," Lutz Non-Bellwether *Karcher* Attacks Rep. at 199, that the EFP was concealed inside a shack and "a stand was specifically constructed inside the shack to achieve its intended point of

impact[,]" *id.*, and that the EFP was comprised of "a copper cone and metal body[,]" *id.* at 201. The record also contains photographic evidence depicting the significant damage inflicted upon Sgt. Latham's vehicle, an MRAP, from the blast. *See id.* at 200–01. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that . . . injured . . . [Spc.] Latham was part of the EFP campaign orchestrated by the IRGC and Hezbollah, and that the attack was likely conducted by one of the IRGC's Special Group proxies." *Id.* at 202.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the August 26, 2008 EFP attack by supporting proxy forces who conducted the attack.

> xxviii. *January 10, 2009 Attack*

In 2009, Staff Sgt. Justin Bauer[32] and Spc. Andrew Bradley were serving as members of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 109 (Bauer Casualty Rep.); *id.* at 110 (Bradley Purple Heart Perm. Order). On January 10, 2009, Staff Sgt. Bauer and Spc. Bradley were traveling in the lead vehicle of a four-vehicle convoy headed south on Haab Road near Route Florida in Baghdad when a multi-array explosive struck their vehicle. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 203–04. Staff Sgt. Bauer, who was the vehicle's commander, was killed in the blast. *Id.* at 204. Spc. Bradley, the driver of the vehicle, was injured in the blast. *Id.* Staff Sgt. Bauer's casualty report confirms that he died during hostile action in Baghdad, Iraq on January 10, 2009 as result of "[b]last injuries." Bauer Casualty Rep. On January 11, 2009, the day after the attack, Spc. Bradley received the Purple Heart award "for wounds

---

[32] A plaintiff related to Staff Sgt. Bauer brings a claim stemming from this attack. *See* Am. Compl., at ¶ 1203. Different plaintiffs related to Staff Sgt. Bauer previously brought claims stemming from the same attack in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 1039–41.

received as a result of hostile enemy action." *See* Bradley Purple Heart Perm. Order. Spc. Bradley allegedly continues to suffer from physical and psychological injuries as a result of his experience. *See* Am. Compl, at ¶¶ 1206–14.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 10, 2009 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirmed that explosive device causing the blast was "a copper lined, multiple array, command fired EFP." Lutz Non-Bellwether *Karcher* Attacks Rep. at 204–06. The record also contains photographic evidence depicting the significant damage inflicted upon Staff Sgt. Bauer and Spec. Bradley's vehicle, an MRAP, from the blast. *See id.* at 208–09. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack on a convoy that included [Staff Sgt.] Bauer . . . [and Spc.] Bradley . . . was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 212.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the January 10, 2009 EFP attack by supporting proxy forces who conducted the attack.

### xxix. *January 18, 2009 Attack*

In 2009, Staff Sgt. Roberto Andrade, Jr.[33] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 112 (Andrade Casualty Rep.). On January 18, 2009, Staff Sgt. Andrade was commanding the lead vehicle of four-vehicle convoy

---

[33] Plaintiff related to Staff Sgt. Andrade bring claims stemming from this attack. *See* Am. Compl., at ¶¶ 1222–28. A different plaintiff related to Staff Sgt. Andrade previously brought a claim stemming from the same attack in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 1046–47.

traveling from FOB Rustamiyah in Baghdad when a multi-array explosive struck Staff Sgt. Andrade's vehicle, killing him. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 213. Staff Sgt. Andrade's casualty report confirms that he died during hostile action in Baghdad, Iraq on January 18, 2009 as result of "[b]last injuries." *See* Andrade Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 18, 2009 attack in Baghdad was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirmed that the explosive device causing the blast was "consistent with a dual [redacted] copper lined EFP array, each containing approximately 15lbs U[nidentified] B[ulk] E[xplosives][,]" Lutz Non-Bellwether *Karcher* Attacks Rep. at 214–15, that the EFP "was placed on top of or behind the wall that was to the immediate right of [Staff Sgt. Andrade's] vehicle[,]" *id.* at 214, and that the EFP was "elevated for a direct attack against an MRAP vehicle," such as the one containing Staff Sgt. Andrade, *id.* The record also contains photographic evidence depicting the significant damage inflicted upon Staff Sgt. Andrade's vehicle, penetrating the transparent and steel armor of the MRAP. *See id.* at 215. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Staff Sgt.] Andrade was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 216.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the January 18, 2009 EFP attack by supporting proxy forces who conducted the attack.

xxx.   *September 8, 2009 Attack*

In 2009, Staff Sgt. Shannon M. Smith[34] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 114 (Smith Casualty Rep.). On September 8, 2009, Staff Sgt. Smith was riding in the last vehicle of a four-vehicle convoy traveling east on Salah Ad Din Street in Tikrit when an explosive struck Staff Sgt. Smith's vehicle, killing him. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 218–19. Staff Sgt. Smith's casualty report confirms that he was killed during hostile action in Tikrit, Iraq on September 8, 2009. *See* Smith Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the September 8, 2009 attack in Tikrit was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirmed that explosive device causing the blast was "Shaped Charge/EFP," Lutz Non-Bellwether *Karcher* Attacks Rep. at 219, that command wire was recovered from the blast site, *id.*, and that command wire "allows for target discrimination and provides more assurance that the device will be used as designed," *id.* The record also contains photographic evidence depicting the significant damage inflicted upon Staff Sgt. Smith's vehicle, an MRAP, including total destruction of the vehicle's turret. *Id.* at 221–22. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Staff Sgt.] Smith . . . was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 223.

---

[34] A plaintiff related to Staff Sgt. Smith brings a claim stemming from this attack. *See* Am. Compl., at ¶ 1283. Different plaintiffs related to Staff Sgt. Smith previously brought claims stemming from the same attack in the *Karcher II* case. *See* Am. Compl., *Karcher*, at ¶¶ 1107–12.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the September 8, 2009 EFP attack by supporting proxy forces who conducted the attack.

### xxxi.   April 27, 2010

In 2010, Sgt. Keith Coe was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 116 (Coe Casualty Rep.). On April 27, 2010, Sgt. Coe was riding in the last vehicle of a three-vehicle convoy as part of a patrol travelling south on Route Cheyenne from FOB Grizzly in Khalis to FOB Warhorse when an explosive struck Sgt. Coe's vehicle, killing him. *See* Lutz Non-Bellwether *Karcher* Attacks Rep. at 224–25. Sgt. Coe's casualty report confirms that he died during hostile action in Khalis, Iraq on April 27, 2010 as a result of "[b]last and [b]allistic [i]njuries." *See* Coe Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 27, 2010 in Khalis was an EFP traceable to Iran and its proxies. Reports prepared by the U.S. military after the blast, reviewed by Lutz, confirmed that the explosive device causing the blast "was determined to be an explosively formed penetrator (EFP)," Lutz Non-Bellwether *Karcher* Attacks Rep. at 225, which had "struck the vehicle crew cabin . . . indicat[ing] that the EFP was angled up," *id.* at 226. The record also contains photographic evidence depicting the significant damage inflicted upon Sgt. Coe's vehicle, an MRAP, including the extensive damage to the crew compartment. *Id.* at 230–31. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Sgt.] Coe . . . was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 234.

Based on the evidence provided by plaintiffs showing the lethality, sophistication, and unique physical characteristics of the attack, the representations of plaintiffs' expert, and the findings made by the *Karcher II* court, this Court finds Iran responsible for the April 27, 2010 EFP attack by supporting proxy forces who conducted the attack.

### F. Additional EFP Attacks Not Previously Adjudicated

Plaintiffs allege injuries traceable to 23 additional attacks not previously adjudicated allegedly involved Iran-linked EFPs:

1. December 8, 2005 Attack in Baghdad, *see* Am. Compl., at ¶¶ 231–40;
2. December 25, 2005 Attack in Baghdad, *see id.*, at ¶¶ 241–47;
3. September 3, 2006 Attack in Baghdad, *see id.*, at ¶¶ 451–57;
4. October 22, 2006 Attack in Baghdad, *see id.*, at ¶¶ 482–89;
5. December 20, 2006 Attack in Baghdad, *see id.*, at ¶¶ 537–55;
6. January 27, 2007 Attack in Taji, *see id.*, at ¶¶ 616–26;
7. April 9, 2007 Attack in Baghdad, *see id.*, at ¶¶ 649–56;
8. May 14, 2007 Attack in Baghdad, *see id.*, at ¶¶ 707–17;
9. May 18, 2007 Attack in Baghdad, *see id.*, at ¶¶ 718–24;
10. June 10, 2007 Attack in Baghdad, *see id.*, at ¶¶ 725–51;
11. June 17, 2007 Attack in Baghdad, *see id.*, at ¶¶ 759–84;
12. July 9, 2007 Attack in Baghdad, *see id.*, at ¶¶ 814–21;20
13. July 31, 2007 Attack in Baghdad, *see id.*, at ¶¶ 843–60;
14. February 19, 2008 Attack in Baghdad, *see id.*, at ¶¶ 988–1007;
15. March 14, 2008 Attack in Musayyib, *see id.*, at ¶¶ 1008–14;
16. April 8, 2008 Attack in Kharguliah, *see id.*, at ¶¶ 1097–1104;
17. April 12, 2008 Attack in Baghdad, *see id.*, at ¶¶ 1105–11;
18. May 25, 2008 Attack in Najaf, *see id.*, at ¶¶ 1149–56;
19. August 13, 2008 Attack in Baghdad, *see id.*, at ¶¶ 1173–82;
20. October 5, 2008 Attack in Musayyib, *see id.*, at ¶¶ 1193–97;
21. September 8, 2009 Attack in Baghdad, *see id.*, at ¶¶ 1269–77;
22. April 22, 2011 Attack in Al Kut, *see id.*, at ¶¶ 1303–11; and
23. July 15, 2011 Attack in Basra, *see id.*, at ¶¶ 1336–41.

After reviewing the materials submitted by the plaintiffs, the Court finds satisfactory evidence in the record to demonstrate that the attacks are traceable to Iran and its proxies.

#### i.  December 8, 2005 Attack

In 2005, 1st Lt. Kevin Smith was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 118 (Smith Casualty Rep.).  On December 8, 2005,

1st Lt. Smith was conducting a combat patrol in Baghdad in the second vehicle of a five-vehicle convoy from 1st Battalion, 76th Field Artillery Regiment, 4th Brigade Combat Team, 3rd Infantry Division. Lutz *Stearns* Add'l Attacks Rep. at 4.   At approximately 10:05 AM local time, 1st Lt. Smith's vehicle was struck by a multi-array EFP, which had been concealed in a dirt mound on the side of the road.   *Id.*   1st Lt. Smith was killed as a result of the blast.   *Id.*   1st Lt. Smith's casualty report confirms that he died during hostile action in Baghdad, Iraq on December 8, 2005 as a result of "[b]last and shrapnel injuries."   *See* Smith Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 8, 2005 attack in Baghdad was an EFP traceable to Iran and its proxies. First, the SIGACT Report from the blast confirms that the explosive that caused the attack "was composed of a 5 EFP array." Lutz *Stearns* Add'l Attacks Rep. at 5.   Similarly, the IED Report lists the "main charge configuration" as "EFP[.]"   *Id.*   The WIT 3 Report assessed that a "five-to-eight EFP array used in the attack" and that the dirt mound had been utilized to aim the EFP.   *Id.*   The record also contains photographic evidence depicting the significant damage inflicted upon 1st Lt. Smith's vehicle, an up-armored Humvee, including the extensive damage to the crew compartment.   *Id.* at 7–9.   After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [1st Lt.] Smith . . . was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 9.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court

finds Iran responsible for the December 8, 2005 EFP attack by supporting proxy forces who conducted the attack.

### ii. December 25, 2005 Attack

In 2005, Spc. Anthony Cardinal was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 120–21 (Cardinal Extended Casualty Rep.). On December 25, 2005, Spc. Cardinal driving the lead vehicle of a three-vehicle convoy from B Company, 3rd Squadron, 7th Cavalry Regiment leaving FOB Rustamiyah. Lutz *Stearns* Add'l Attacks Rep. at 10. At approximately 11:27 AM local time, as the convoy was turning south on Route Pluto in Baghdad, Spc. Cardinal's vehicle was struck by a multi-array EFP, which had been emplaced in a nearby concrete barrier. *Id.* The blast struck the vehicle on the left side, penetrating the driver's door. *Id.* Spc. Cardinal was injured in the blast and later died of his wounds. *Id.* Spc. Cardinal's extended casualty report confirms that he was injured during hostile action in Baghdad, Iraq on December 25, 2005 "when an IED detonated" later died as a result of "blood loss from pelvic fracture." *See* Cardinal Extended Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 25, 2005 attack in Baghdad was an EFP traceable to Iran and its proxies. First, the SIGACT Report from the blast confirms that the explosive that caused the attack consisted of an "unk[nown] number of EFPs." Lutz *Stearns* Add'l Attacks Rep. at 11. Similarly, the IED Report lists the "main charge configuration" as "EFP[.]" *Id.* Investigators described the device that killed Spc. Cardinal as an "approximately 2 – 5 EFP array[.]" *Id.* Lutz noted in his expert report that the location of the attack, Route Pluto South, was "a stretch of road notorious for IRGC-sponsored EFP attacks." *Id.* at 14. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Spc.] Cardinal was part of the

EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Additionally, the attack occurred in an area known for EFP attacks ultimately sponsored by Iran. Therefore, this Court finds Iran responsible for the December 25, 2005 EFP attack by supporting proxy forces who conducted the attack.

### iii.   September 3, 2006

In 2006, Priv. 1st Class Edwin Andino, Jr. was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 123 (Andino Casualty Rep.)  On September 3, 2006, Priv. 1st Class Andino occupied the gunner position of the lead vehicle of a four-vehicle convoy from A Company, 1st Battalion, 26th Infantry Regiment traveling south on Route Wildcat in Baghdad. Lutz *Stearns* Add'l Attacks Rep. at 15. At approximately 6:20 AM local time, Priv. 1st Class Andino's vehicle was struck by a multi-array EFP, which had been emplaced inside a nearby fence. *See id.* The blast struck the vehicle on the driver's side, killing Priv. 1st Class Andino. *Id.* Priv. 1st Class Andino's casualty report confirms that he was killed during hostile action in Baghdad, Iraq on September 3, 2006. *See* Andino Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the September 3, 2006 attack in Baghdad was an EFP traceable to Iran and its proxies. First, the SIGACT Report from the blast confirms that Priv. 1st Class Andino's vehicle was hit by a three-array EFP." Lutz *Stearns* Add'l Attacks Rep. at 16. Similarly, the IED Report lists the "Main Charge Configuration" as "EFP," *id.* and determined the explosive to be "a steel-

lined EFP array that was placed roadside, 1m in from a fence," *id.* Investigators described the device that killed Priv. 1st Class Andino as "consist[ing] of three EFPs set to detonate simultaneously." *Id.* at 16–17.   After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Priv. 1st Class] Andino was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 18.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks.   Therefore, this Court finds Iran responsible for the September 3, 2006 EFP attack by supporting proxy forces who conducted the attack.

### iv. October 22, 2006[35]

In 2006, Sgt. Willsun Mock was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 125 (Mock Casualty Rep.).   On October 22, 2006, Sgt. Mock was serving as the truck commander for the lead vehicle of a four-vehicle convoy from the 1st Battalion, 26th Infantry Regiment, 2nd Battalion, 1st Infantry Division traveling west on Route Florida in Baghdad. *See* Lutz *Stearns* Add'l Attacks Rep. at 19.   At approximately 9:10 AM local time, Sgt. Mock's vehicle was struck by a multi-array explosive, which was placed on the right side of the road. *Id.*   The blast killed Sgt. Mock. *Id.* at 20.   Sgt. Mock's casualty report

---

[35] The October 22, 2006 attack discussed here appears to be a different attack than the October 22, 2006 attack discussed in *Karcher*, 396 F. Supp. 3d at 33–35 and in *Lee*, 518 F. Supp. 3d at 485–86.

confirms that he died during hostile action in Baghdad, Iraq on October 22, 2006 as a result of "[b]last and ballistic fragment injuries." *See* Mock Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the October 22, 2006 attack in Baghdad was an EFP traceable to Iran and its proxies. Both the SIGACT and IED Report from the blast confirm that Sgt. Mock's vehicle was hit by a multi-array EFP. *See* Lutz *Stearns* Add'l Attacks Rep. at 20–21. The reports also note that the location of the EFP, near two manned United Nations towers "allow[ed] A[nti] I[raqi] F[orces] to emplace the device undetected." *Id.* at 21. Similarly, the IED Report lists the main charge configuration as "EFP." *Id.* The record also contains photographic evidence depicting the significant damage inflicted upon Sgt. Mock's vehicle, an up-armored Humvee. *Id.* at 24. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that . . . killed [Sgt.] Mock[] was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the October 22, 2006 EFP attack by supporting proxy forces who conducted the attack.

### v. December 20, 2006

In 2006, Staff Sgt. Joshua Denman was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 129–30 (Denman Casualty Rep.). In 2006, William Ronald Little was serving was serving as a civilian contractor for DynCorp International

in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 127–28 (DynCorp Serious Incident Rep.). On December 20, 2006, Staff Sgt. Denman and Mr. Little were riding in the fourth vehicle of a six-vehicle convoy with the 118 Military Police Company, 759 Military Police Battalion and two Iraqi Police vehicles traveling southeast on Route Vernon in Baghdad. Lutz *Stearns* Add'l Attacks Rep. at 26. At approximately 5:10 AM local time, their vehicle was struck by an EFP, which penetrated the vehicle's interior. *Id.* at 26–27. Both Staff Sgt. Denman and Mr. Little were injured as a result of the blast. *Id.* at 27. Staff Sgt. Denman's casualty report confirms that he was injured during hostile action in Baghdad, Iraq on December 20, 2006. *See* Denman Casualty Rep. DynaCorp's Serious Incident Report noted that Mr. Little "sustained injuries to his face and shoulder" during an "EFP attack" on December 20, 2006. DynCorp Serious Incident Rep. Staff Sgt. Denman and Mr. Little allegedly continue to suffer from physical and psychological injuries as a result of their experience. *See* Am. Compl, at ¶¶ 541–44; 554–55.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the December 20, 2006 attack in Baghdad was an EFP traceable to Iran and its proxies. The SIGACT Report from the blast confirms that the explosive breached the interior of Staff Sgt. Denman and Mr. Little's vehicle. Lutz *Stearns* Add'l Attacks Rep. at 27. The report also notes that copper residue was found at the scene. *Id.* An incident report prepared by DynCorp International similarly found that an "EFP exploded impacting the vehicle carrying [Staff Sgt. Denman and Mr.] Little." *Id.* at 28. The record further contains photographic evidence depicting the significant damage inflicted upon Staff Sgt. Denman and Mr. Litte's vehicle, an up-armored Humvee, including the extensive damage to the crew compartment. *Id.* at 29–32. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that injured [Staff Sgt.] Denman and civilian contractor William Little was part of the EFP campaign

65

orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 32.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the December 20, 2006 EFP attack by supporting proxy forces who conducted the attack.

*vi.   January 27, 2007 Attack*

In 2007, Sgt. Mickel Garrigus was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 132 (Garrigus Casualty Rep.). On January 27, 2007, Sgt. Garrigus was riding in the last vehicle of a four-vehicle convoy with the 543rd Military Police Company, 91st Police Battalion, 10th Sustainment Brigade, 10th Mountain Division traveling south on Route Dover in Taji. Lutz *Stearns* Add'l Attacks Rep. at 34. At approximately 7:50 PM local time, Sgt. Garrigus' vehicle was struck by an EFP, which was placed on the right side of the road. *Id.* at 34–35. Sgt. Garrigus was killed in the attack. *Id.* at 35. Sgt. Garrigus' casualty report confirms that he died during hostile action in Taji, Iraq on January 27, 2007 as a result of "[b]last fragment injuries of the torso." *See* Garrigus Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the January 27, 2007 attack in Taji was an EFP traceable to Iran and its proxies. Lutz's expert report contains reproductions of the AR-15 report, where an investigator attested that, as a result of the blast, the damage to "passenger door was so severe that it prevented team members from extracting [Sgt.] Garrigus from the vehicle in a timely manner and that [Sgt. Garrigus'] IBA vest was destroyed with his side SAPPI plate shattered into pieces." Lutz *Stearns*

66

Add'l Attacks Rep. at 36.  Such extensive damage occurred despite the fact that Sgt. Garrigus' vehicle was an up-armored Humvee.  *Id.*  The CJTF-Troy Report determined that the device used in the attack was "consistent with shaped charge with 8-10 lb[s.] N[et] E[xplosive] W[eight] of unknown H[igh] E[xplosive]." *Id.*  Similarly, the SIGACT Report from the blast confirms that the device involved was a "shape charge (EFP)." *Id.* at 38.  After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Sgt.] Garrigus was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 40.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks.  Therefore, this Court finds Iran responsible for the January 27, 2007 EFP attack by supporting proxy forces who conducted the attack.

### vii.  *April 9, 2007 Attack*

In 2007, Priv. Brett Walton was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 134 (Walton Casualty Rep.).  On April 9, 2007, Priv. Walton was riding in the lead vehicle of a four-vehicle convoy from A Company, 2nd Battalion, 17th Field Artillery Regiment traveling south on Route Wild in southeastern Baghdad.  Lutz *Stearns* Add'l Attacks Rep. at 41.  At approximately 3:15 PM local time, Priv. Walton's vehicle was struck by a dual-array explosive that had been hidden in dirt, cement blocks, and concertina wire on the side of the road. *Id.*  Priv. Walton was killed in the attack. *Id.* at 42. Priv. Walton's

casualty report confirms that he was killed during hostile action in Baghdad, Iraq on April 9, 2007. *See* Walton Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 9, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. The SIGACT Report from the blast confirms that device used in the attack was an EFP. Lutz *Stearns* Add'l Attacks Rep. at 42. The IED Report lists the "Main Charge Configuration" as an EFP and notes that the device involved "was a dual array EFP." *Id.* The CJTP Troy Report further describes the device as a dual-array, copper-lined EFP[.] *Id.* at 43. The record also contains photographic evidence depicting the significant damage inflicted upon Priv. Walton's vehicle, an up-armored Humvee. *Id.* at 44–45. Moreover, the "event storyboard" reviewed by Lutz relayed that "sources indicate the Furniture Road cell [of JAM] as responsible for this attack" and explains the strategy involved in the timing of the attack: "Due to the curfew implemented for the 9th of April, JAM planned for only I[raqi] S[ecurity] F[orces] and C[oalition] F[orces] vehicles to be on the roads." *Id.* at 48. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Pvt.] Walton . . . was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 49.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the April 9, 2007 EFP attack by supporting proxy forces who conducted the attack.

*viii. May 14, 2007 Attack*

In 2007, Senior Airman ("Sr. Airman") Joshua Brooks was serving as a member of the United States Air Force in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 136–37 (Brooks Casualty Rep.).  On May 14, 2007, Sr. Airman Brooks was riding in the last vehicle of a three-vehicle convoy from Detachment 3, 732 Expeditionary Forces, 92nd Military Police Battalion, 89th Military Police Brigade traveling on Route Vernon in Baghdad.  Lutz *Stearns* Add'l Attacks Rep. at 41.  At approximately 3:55 PM local time, Sr. Airman Brooks' vehicle was struck by a multi-array explosive that was placed on the side of the road.  *Id*.  Sr. Airman Brooks was injured in the attack.  *Id*. at 50.  Sr. Airman Brooks' casualty report confirms that he sustained "[l]acerations to [his] lower right leg" during hostile action in Baghdad, Iraq on May 14, 2007. *See* Brooks Casualty Rep.  Sr. Airman Brooks allegedly continues to suffer from physical and psychological injuries as a result of his experience. *See* Am. Compl, at ¶¶ 709–13.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 14, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. The SIGACT Report from the blast confirms determined that Sr. Airman Brooks' "convoy was struck by an EFP" and that his "vehicle received catastrophic damage."  Lutz *Stearns* Add'l Attacks Rep. at 51.  The IED Report lists the "Main Charge Configuration" as "EFP" and confirms that "[t]he device consisted of a 6 EFP array." *Id*.  The record also contains photographic evidence depicting the significant damage inflicted upon Sr. Airman Brooks' vehicle, an up-armored Humvee. *Id*. at 55, 57–58.  After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that injured [Sr. Airman] Brooks was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id*. at 59.

69

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the May 14, 2007 EFP attack by supporting proxy forces who conducted the attack.

### ix.  May 18, 2007 Attack

In 2007, Sergeant First Class ("Sgt. 1st Class") Scott J. Brown was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 143 (Brown Death Cert.). On May 18, 2007, Sgt. 1st Class Brown was riding in the last vehicle of a convoy from 1st Battalion, 325th Airborne Infantry Regiment, 2nd Brigade Combat Team, 82nd Airborne Division traveling on Bravo Road toward FOB Liberty in Baghdad. Lutz *Stearns* Add'l Attacks Rep. at 60. At approximately 12:15 PM local time, Sgt. 1st Class Brown's vehicle was struck by a multi-array explosive. *Id.* Sgt. 1st Class Brown was killed in the attack. *Id.* Sgt. 1st Class Brown's death certificate confirms that he died during hostile action in Baghdad, Iraq on May 18, 2007 as a result of "[b]last injuries." *See* Brown Death Cert.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the May 18, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. The IED Report lists the main charge configuration from the blast as "EFP" and notes that the array "most likely consist[ed] of one large EFP and five smaller EFPs." Lutz *Stearns* Add'l Attacks Rep. at 61. The "event storyboard" reviewed by Lutz emphasized that "EFP strike was obvious to unit based on site S[ensitive] S[ite] E[xploitation] and copper residue." *Id.* A human intelligence source, a "Shi'a Iraqi local national with direct access to the reported information as a result of observation and social contacts[,]" reported that a JAM operative was responsible for

70

placing the explosive. *Id.* at 63. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Sgt. 1st Class] Brown was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the May 14, 2007 EFP attack by supporting proxy forces who conducted the attack.

### x. *June 10, 2007 Attack*

In 2007, Staff Sgt. Matthew Lammers and Priv. 1st Class Angel Gomez were serving as members of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 145–47 (Lammers Extended Casualty Rep.); *id.* at 148 (Gomez Purple Heart Perm. Order). On June 10, 2007, Staff Sgt. Lammers and Priv. 1st Class Gomez were riding in the lead vehicle of a four-vehicle convoy from D Company, 1st Battalion, 28th Infantry Regiment was traveling on Route Jackson in the Saydiyah neighborhood of the West Rasheed district in southern Baghdad. Lutz *Stearns* Add'l Attacks Rep. at 64. At approximately 8:56 AM local time, their vehicle was struck by a multi-array explosive. *Id.* As a result of the attack, Staff Sgt. Lammers suffered partial leg amputations. *Id.* at 64–65. Staff Sgt. Lammers' extended casualty report confirms that he was seriously injured by hostile action in Baghdad on June 10, 2007 and that he was transported to a U.S. army hospital in Germany, where he was placed on life support. *See* Lammers Extended Casualty Rep. Priv. 1st Class Gomez was also injured in the attack. Lutz *Stearns* Add'l Attacks Rep. at 64. On August 24, 2007, Priv. 1st Class Gomez received the Purple Heart award "for

wounds received as a result of hostile enemy action" on June 10, 2007. *See* Gomez Purple Heart Perm. Order. Staff Sgt. Lammers and Priv. 1st Class Gomez allegedly continue to suffer from physical and psychological injuries as a result of their experience. *See* Am. Compl, at ¶¶ 729–40; 746–51.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 10, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. The SIGACT Report notes that the injuries suffered by Staff Sgt. Lammers were consistent with an EFP attack, Lutz *Stearns* Add'l Attacks Rep. at 64–65, and the "event storyboard" reviewed by Lutz also stated that aerial views of the attack showed that the "the strike is consistent with an EFP." *Id.* The Case File Report created by CEXC specifically lists the "Incident Type" as "Explosively Formed Penetrator." *Id.* at 69. The record also contains photographic evidence depicting the significant damage inflicted upon Staff Sgt. Lammers and Priv. 1st Class Gomez's vehicle, an up-armored Humvee. *Id.* at 67–68. Lutz's expert assessment of the photographs is that "[t]he focused blast penetration hole in the armored passenger door is a distinct signature of a precision manufactured and copper-lined EFP." *Id.* at 66. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that injured [Staff Sgt.] Lammers and [Priv. 1st Class] Gomez was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 70.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court

finds Iran responsible for the June 10, 2007 EFP attack by supporting proxy forces who conducted the attack.

### xi.   June 17, 2007 Attack

In 2007, Staff Sgt. Matthew Benson and Priv. 1st Class Jacob Tracy were serving as members of the United States Army in Iraq.  *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 150 (Benson Purple Heart Perm. Order); *id.* at 148 (Tracy Casualty Rep.).  On June 10, 2007, Staff Sgt. Benson and Priv. 1st Class Tracy were riding in the fourth vehicle of a five-vehicle convoy from C Company, 1st Battalion, 8th Cavalry Regiment traveling west on Route Porter toward FOB Rustamiyah in Baghdad.  Lutz *Stearns* Add'l Attacks Rep. at 71.  Staff Sgt. Benson was seated in the truck commander's seat and Priv. 1st Class Tracy was seated in the back of the vehicle.  *Id.*  At approximately 6:22 PM local time, their vehicle was struck by a multi-array explosive.  *Id.*  Priv. 1st Class Tracy was killed and Staff Sgt. Benson was injured in the attack.  *Id.*  Priv. 1st Class Tracy's casualty report confirms that he died on June 18, 2007 as a result of "[b]last injuries" sustained during hostile action.  *See* Tracy Casualty Rep.  On June 18, 2007, the day after the attack, Priv Staff Sgt. Benson received the Purple Heart award "for wounds received as a result of hostile enemy action."  *See* Benson Purple Heart Perm. Order.  Staff Sgt. Benson allegedly continues to suffer from physical and psychological injuries as a result of their experience.  *See* Am. Compl, at ¶¶ 772–77.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the June 17, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. The AR 15-6 Investigation Report from the attack explained that "[t]he multi array EFP penetrated the door and engine compartment on the driver side of the vehicle, the impact of the EFP caused 5 [wounded in action] and the crash into the sewage ditch resulted in one KIA (PFC Tracy)."  Lutz

*Stearns* Add'l Attacks Rep. at 72. The report also describes the findings from the IED Storyboard, which determined that the explosive was a "multiple EFP array consisting of both copper and steel shape charges." *Id.* The record further contains photographic evidence depicting the significant damage inflicted upon Staff Sgt. Benson and Priv. 1st Class Tracy's vehicle, an up-armored Humvee. *Id.* at 74. Lutz's expert assessment of the photographs is that "[t]he focused blast penetration hole in the armored driver's door is a distinct signature of a precision manufactured EFP." *Id.* After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Priv. 1st Class] Tracy and injured [Staff Sgt.] Benson was part of the EFP campaign orchestrated by the IRGC and Hezbollah that was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 75.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the June 17, 2007 EFP attack by supporting proxy forces who conducted the attack.

### xii.  *July 9, 2007 Attack*[36]

In 2007, Spc.[37] Mikeal Miller was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 153–62 (Miller Autopsy Rep.). On July 9, 2007, Spc. Miller was riding in the second vehicle of a five-vehicle convoy from 3rd Squadron, 61st Cavalry Regiment, 2nd Brigade Combat Team, 2nd Infantry Division traveling northwest on Route Pluto

---

[36] The Amended Complaint noted the date of the attack as July 7, 2007. *See* Am. Compl., at ¶ 815. Pls.' PFFCL notes that the correct of the attack is actually July 9, 2007. Pls.' PFFCL, at 13.

[37] Lutz's expert report lists the rank as "Sgt." but the autopsy report and extended casualty report list the rank as "Spc." *Compare* Lutz *Stearns* Add'l Attacks Rep. at 76 *with* Miller Autopsy Rep. *and* July 9, 2007 Attack – Baghdad, ECF No. 36-50, at 15–19. The Court will use the rank "Spc." in accordance with the autopsy and casualty reports.

in Baghdad.  Lutz *Stearns* Add'l Attacks Rep. at 76.  At approximately 9:00 AM local time, Spc. Miller's vehicle was struck by a multi-array explosive.  *Id.*  Spc. Miller was injured in the attack and later died of his injuries.  *Id.*  Spc. Miller's autopsy report confirms that he died of "[b]last injuries of the [h]ead" approximately six months after experiencing hostile action in Baghdad.  *See* Miller Autopsy Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the July 9, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. The SIGACT Report described the explosive responsible for the attack as a "3X Array EFP (Steel & Copper)."  Lutz *Stearns* Add'l Attacks Rep. at 76.  Additionally, Spc. Miller's vehicle had IED defeat equipment that was in the on position at the time of the attack.  *Id.* at 77.  The "event storyboard" from the attack noted that "the damage is consistent with a three array EFP (steel and copper). P[assive] I[nfrared] initiation suspected due to strike points and position of [redacted]." *Id.*  The "event storyboard" also reported that the attack was "just outside of IED hot spo[]t 'Vermont'" and that the "attack also hit the second vehicle which may suggest command wire." *Id.*  After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that caused the death of [Spc.] Miller involved a precision manufactured EFP that was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was emplaced by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.* at 78.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks.  Therefore, this Court finds Iran responsible for the July 9, 2007 EFP attack by supporting proxy forces who conducted the attack.

### xiii.  July 31, 2007 Attack

In 2007, Spc. Charles T. Heinlein, Jr. and Spc. Alfed H. Jairala were serving as members of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 164–65 (Heinlein Casualty Rep.); *id.* at 166 (Jairala Casualty Rep.). On July 31, 2007, Spc. Heinlein and Spc. Jairala were riding in the lead vehicle of a four-vehicle convoy from B Company, 2nd Battalion, 3rd Infantry Regiment, 3rd Stryker Brigade Combat Team, 2nd Infantry Division traveling north on Route Pluto heading to COP Callahan in Baghdad. Lutz *Stearns* Add'l Attacks Rep. at 79.  Spc. Heinlein and Spc. Jairala's vehicle was a M1126 Stryker. *Id.*  A "Route Clearance Team" had reportedly removed improvised explosive devices from that route just hours earlier. *Id.* At approximately 9:30 AM local time, Spc. Heinlein and Spc. Jairala's vehicle was struck by a multi-array explosive that had been hidden by a concrete block on the right side of the road. *Id.*  Spc. Heinlein and Spc. Jairala were both killed in the attack. *Id.* at 80. Spc. Heinlein's casualty report confirms that he was killed during hostile action in Baghdad on July 31, 2007. *See* Heinlein Casualty Rep. Spc. Jairala's casualty report confirms that he died during hostile action in Baghdad on July 31, 2007 as a result of "[b]last injuries of the head." *See* Jairala Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the July 9, 2007 attack in Baghdad was an EFP traceable to Iran and its proxies. The AR-15 Investigation Report confirmed that the explosive responsible for the blast was an EFP, that Spc. Jairala "suffered a severe head wound," and SPC Heinlein suffered "severe abdominal wounds" as a result of the EFP strike. Lutz *Stearns* Add'l Attacks Rep. at 80. The SIGACT Report relayed that the "assessment is the EFP was 3 array with approximately 25lbs of explosive. 2 large breaches were visible to the main troop compartment. Copper fragments were found on the opposite wall inside the main compartment." *Id.* at 81.  The IED Report lists the main charge

configuration as "EFP." *Id.* at 82. Additionally, the report noted that "the IED maker was experienced and the EFP was well constructed for an attack against a Stryker." *Id.* Moreover, the report noted that "[t]his was a well-planned attack. the location was ideal for a command initiated attack; ... WIT assesses this block was deliberately positioned to prevent visual observation of the device." *Id.* The record also contains descriptions of redacted photographs of the blast, which show the "catastrophic point of entry into troop compartment between 2nd and 3rd wheel[]" and "copper residue above catastrophic point of entry." *Id.* After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Spc.] Heinlein and [Spc.] Jairala was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 87.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the July 31, 2007 EFP attack by supporting proxy forces who conducted the attack.

### xiv.   *February 19, 2008 Attack*

In 2008, Sgt. Conrad Alvarez and Spc. Jason Whitehorse were serving as members of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 168–70 (Alvarez Extended Casualty Rep.); *id.* at 171–75 (Whitehorse Decl.). On February 19, 2008, Sgt. Alvarez and Spc. Whitehorse were riding in the last vehicle of a four-vehicle convoy from A Company, 1st Battalion, 502nd Infantry Regiment, 101st Airborne Division traveling east on Route Rangers in Baghdad. Lutz *Stearns* Add'l Attacks Rep. at 88. Spc. Whitehorse was driving the vehicle and

Sgt. Alvarez was serving as the vehicle's truck commander. *Id.* at 89. At approximately 10:20 PM local time, their vehicle was attacked by a multi-array explosive emplaced in the sewer drain in the road's median. *Id.* at 88–89. Sgt. Alvarez was killed in the attack. *Id.* at 89. Spc. Whitehorse was injured in the attack, "suffer[ing] small fragmentary wounds to his back and back of his right arm, 2nd degree burns to the back of his right thigh, both ear drums were perforated, and small lacerations to his right hand." *Id.* Sgt. Alvarez's extended casualty report confirms that he died during hostile action in Baghdad on February 19, 2008 as a result of "Massive Trauma." *See* Alvarez Extended Casualty Rep. Spc. Whitehorse continues to suffer from physical and psychological injuries as a result of his experience. *See* Whitehorse Decl.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the February 19, 2008 attack in Baghdad was an EFP traceable to Iran and its proxies. The AR-15 Investigation Report confirmed that the explosive responsible for the blast was "an IED containing 4-5 EFP's" and "[t]he IED was emplaced in the sewer drain in the median[,] which prevented the patrol from being able to visually recognize the IED with either white lights or their thermal sights." Lutz *Stearns* Add'l Attacks Rep. at 89. The SIGACT Report further explained that the "vehicle damage was consistent with 4-5 EFP array. Only one entry point left copper residue leading the team to believe that both copper and steel liners were used." *Id.* at 90. The IED Report lists the "Main Charge Configuration" as "EFP." *Id.* at 91. The IED Report also noted that the attack was one of two on the same day involving an EFP with steel liner placed near a sewer, leading investigators to believe that "the same cell is responsible for both attacks[.]" *Id.* at 92. The "event storyboard" reviewed by Lutz put a finer point on attribution by saying "[i]t is likely that noncompliant JAM S[pecial] G[roups] conducted this attack[.] . . . This attack is probably a target of opportunity, taking advantage of limited visibility of C[oalition]

F[orces]/I[raqi] S[ecurity] F[orces] patrols." *Id.* Lutz also reviewed photographs of the blast showing damage to Sgt. Alvarez and Spc. Whitehorse's vehicle, an up-armored Humvee. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Sgt.] Alvarez and injured [Spc.] Whitehorse was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 99.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the February 19, 2008 EFP attack by supporting proxy forces who conducted the attack.

*xv.   March 14, 2008 Attack*

In 2008, Spc. Austin Bewley was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 177–78 (Bewley Extended Casualty Rep.). On March 14, 2008, Spc. Bewley were riding in the lead vehicle of a four-vehicle convoy from 230th Military Police Company and 4th Brigade, 3rd Infantry Division traveling east on Route Christy headed toward the Baghdad International Airport. Lutz *Stearns* Add'l Attacks Rep. at 100. At approximately 4:00 PM local time, Spc. Bewley's vehicle was attacked by a multi-array explosive emplaced just off of the road. *Id.* at 100–01. Spc. Bewley was injured in the attack. *Id.* at 101. Spc. Bewley's extended casualty report confirms that he was injured by hostile activity on March 14, 2008 in Musayyib. *See* Bewley Extended Casualty Rep. Spc. Bewley allegedly continues to suffer from physical and psychological injuries as a result of their experience. *See* Am. Compl, at ¶¶ 1011–14.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the March 14, 2008 attack in Musayyib was an EFP traceable to Iran and its proxies. The SIGACT Report determined that the device used in the attack was a "4-6 array EFP." Lutz *Stearns* Add'l Attacks Rep. at 101. The IED Report also notes that the explosion was caused by an "EFP array consisted of 4-6 EFPs with one and a half to two pounds of explosives per EFP . . . WIT recovered fragmentation from the blast seat and remnants of copper slugs from inside the vehicle." *Id.* The IED Report lists the main charge configuration as "EFP." *Id.* at 101. The IED Report also noted that the device was a "4-6 EFP array, copper cone, body construction unknown." *Id.* Lutz reviewed photographs of the blast showing damage to Spc. Bewley's vehicle, an up-armored Humvee. *Id.* at 106. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that injured [Spc.] Bewley was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 107.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the March 14, 2008 EFP attack by supporting proxy forces who conducted the attack.

### xvi.  *April 8, 2008 Attack*

In 2008, Staff Sgt. Jeffery Hartley was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 180 (Hartley Casualty Rep.). On April 8, 2008, Staff Sgt. Hartley were riding in the lead vehicle of a four-vehicle convoy traveling east in Kharguliah from FOB Rustamiyah headed toward FOB Hammer. Lutz *Stearns* Add'l Attacks

Rep. at 109.   At approximately 8:30 PM local time, Staff Sgt. Hartley's vehicle was struck by a multi-array explosive disguised within a burlap sack and placed just off the side of the road. *Id.* Spc. Hartley was instantly killed. *Id.* at 110.   Staff Sgt. Hartley's casualty report confirms that he died during hostile action on April 8, 2008 in Kharguliah as a result of "[b]last injuries." *See* Hartley Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 8, 2008 attack in Kharguliah was an EFP traceable to Iran and its proxies. The AR-15 Investigation Report reviewed by Lutz notes that "EFP entered the vehicle from right to left, hitting [Staff Sgt.] Hartley first and resulting in him being KIA," that witnesses had seen Staff Sgt. Hartley's vehicle catch fire after the EFP strike, and that Staff Sgt. Hartley's vehicle had countermeasures to combat IEDs. Lutz *Stearns* Add'l Attacks Rep. at 110.   The IED Report lists the main charge configuration as "EFP" and describes the device as "2 ea[ch] copper EFP Array concealed in a yellow burlap sack." *Id.* at 110.   The "event storyboard" created after the blast notes that, in the thirty days before the attack, multiple EFPs had been located in the area near the blast site during clearing operations. *Id.* at 112.   Additionally, the "event storyboard" opines that "[t]his attack was likely conducted by [IRGC's Hezbollah-trained Special Group proxies] in an attempt to limit C[oalition] F[orces] presence in the area. Attacks against C[oalition] F[orces] patrols have risen, and will likely remain high, as a result of [ ]detentions and deaths [of IRGC's Hezbollah-trained Special Group proxies]." *Id.*   After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Staff Sgt.] Hartley was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 113.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, location, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks.  Therefore, this Court finds Iran responsible for the April 8, 2008 EFP attack by supporting proxy forces who conducted the attack.

*xvii.  April 12, 2008 Attack*

In 2008, Sgt. William E. Allmon was serving as a member of the United States Army in Iraq.  *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 182 (Allmon Casualty Rep.).  On April 12, 2008, Sgt. Allmon was driving one of the vehicles in a twelve-vehicle convoy from 1st Battalion, 64th Armor Regiment and 1st Battalion, 502nd Infantry Regiment conducting a route clearance patrol headed eastbound along Route Illinois in Baghdad.  Lutz *Stearns* Add'l Attacks Rep. at 114.  While the convoy was traveling, the lead vehicle was struck by an IED.  *Id.*  As a result of the explosion, the lead vehicle needed to be towed.  *Id.* at 115.  Consequently, Sgt. Allmon's vehicle, previously been the third vehicle in the convoy, became the new lead vehicle.  *Id.*  At approximately 10:51 AM local time, Sgt. Allmon's vehicle was struck by a multi-array explosive buried near a wall along the side of the road.  *Id.*  Sgt. Allmon sustained massive head trauma as a result of the blast and later died at a combat hospital.  *Id.*  Sgt. Allmon's casualty report confirms that he died as a result of "[b]last and fragmentation injuries" incurred during hostile action on April 12, 2008 in Baghdad.  *See* Allmon Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 12, 2008 attack in Baghdad was an EFP traceable to Iran and its proxies. The AR-15 Investigation Report reviewed by Lutz noted that the "EFP was buried approximately 10 meters south of a 2 1/2 ft wall that separates the sidewalk from a dirt field. The impact of the

82

EFP showed that it was placed at an upward angle (targeting higher sitting vehicles), and . . . that the damage was consistent with a 2-4 array copper EFP." Lutz *Stearns* Add'l Attacks Rep. at 116. The SIGACT Report notes the device was a "3 array EFP." *Id.* at 117. The SIGACT Report also notes that Sgt. Allmon's vehicle, a Buffalo Mine Protected Clearance Vehicle, had electronic IED countermeasures. *Id.* The IED Report lists the "Main Charge Configuration" as "EFP" and describes the device as a "a 2-4 copper EFP array." *Id.* The JTF Troy Report similarly notes that the damage caused by the EFP to the Buffalo was consistent with a 2-4 array copper EFP. *Id.* at 119. Additionally, the "event storyboard" opines that this attack was the eighth similar attack during a period of two weeks and that "[t]hese attacks are likely being emplaced by [IRGC's Hezbollah-trained Special Group proxies] in effort to limit C[oalition] F[orces] and I[raqi] S[ecurity] F[orces] movement in the area. This attack coincided with S[mall] A[rms] F[ire] indicating that SGC is maintaining over watch of emplaced IED's and a defensive posture throughout the area." *Id.* at 118. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Sgt.] Allmon was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 121.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the April 12, 2008 EFP attack by supporting proxy forces who conducted the attack.

xviii.    *May 25, 2008 Attack*

In 2008, Staff Sgt. Frank J. Gasper was serving as a member of the United States Army in

Iraq.  *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App., at 184 (Gasper Casualty Rep.).  On May 25, 2008,

Staff Sgt. Gasper was riding in a vehicle as part of a convoy from 3rd Battalion, 10th Special

Forces Group conducting a resupply mission and traveling west along Route Madrid near Najaf.

Lutz *Stearns* Add'l Attacks Rep. at 123.   At approximately 2:50 PM local time, Staff Sgt. Gasper's

vehicle was struck in five places by a multi-array explosive emplaced in the median of the road.

*Id.*  Staff Sgt. Gasper was killed as a result of the blast.  *Id.*  Staff Sgt. Gasper's casualty report

confirms that he was killed during hostile action on May 25, 2008 in Najaf.  *See* Gasper Casualty

Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive

responsible for the May 25, 2008 attack in Najaf was an EFP traceable to Iran and its proxies.  The

CJTF Troy Report noted that main charge used in the attack was "a 5-EFP array (all steel cones)"

and that "fragmentation pattern on nearby metal pole ... [indicates] that a secondary frag-

producing charge was placed under EFP array." Lutz *Stearns* Add'l Attacks Rep. at 125.  A human

intelligence report opined that "[a] member of an insurgent group in Ash Sittnafiya, Iraq,

conducted an explosively formed penetrator attack on US Forces in Al Qadisiyah Province, Iraq"

and that "Al-Alamia IED group . . . was responsible for the 25 May 08 EFP attack on a U.S.

C[ombined] J[oint] S[pecial] O[operations] T[ask] F[orce] patrol."  *Id.* at 126.  After reviewing

the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that

killed [Staff Sgt.] Gasper was part of the EFP campaign orchestrated by the IRGC and Hezbollah

and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies."  *Id.*

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks.[38]   Therefore, this Court finds Iran responsible for the May 25, 2008 EFP attack by supporting proxy forces who conducted the attack.

### xix.   *August 13, 2008 Attack*

In 2008, Cpl.[39] James Hale was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App. at 186 (Hale Casualty Rep.).   On August 13, 2008, Cpl. Hale was riding in the lead vehicle of a four-vehicle convoy from 978th Military Police Company, 716th Military Police Battalion, 18th Military Police Brigade traveling west in Baghdad on Route Cubs North. *See* Lutz *Stearns* Add'l Attacks Rep. at 127–28.   At approximately 10:10 AM local time, Cpl. Hale's vehicle was struck by a multi-array explosive emplaced on the right side of the road. *Id.*   Cpl. Hale was killed as a result of the blast. *Id.*   Cpl. Hale's casualty report confirms that he died during hostile action on August 13, 2008 in Baghdad as a result of "[b]last and shrapnel injuries." *See* Hale Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the August 13, 2008 attack in Baghdad was an EFP traceable to Iran and its proxies. The AR 15-6 Report described how an investigation after the blast determined that "the IED was a 3-array EFP (3 separate explosively formed penetrators)" and that an eyewitness reported that Cpl. Hale's "door had been opened from the blast and had three holes from the EFP in it. . . . Hale

---

[38] This finding is not defeated even though the record of evidence surrounding the blast is relatively sparse. *See Karcher* II, 2021 WL 133507, at *22 (noting that less information is available when the blast concerns a Special Forces movement).

[39] Lutz's expert report lists the rank as "Spc." but the casualty report lists the rank as "Cpl." *Compare* Lutz *Stearns* Add'l Attacks Rep. at 127 *with* Hale Casualty Rep.   The Court will use the rank "Cpl." in accordance with the casualty report.

had [the] [sic] EFP go directly through his mid section almost ripping him in half." Lutz *Stearns* Add'l Attacks Rep. at 128. The investigation also uncovered "small fragments of copper found just below the radio" in Spc. Hale's vehicle. *Id.* at 128–29. The SIGACT Report lists the device responsible for the blast as a 3-array EFP and that "the EFP array appeared to be angled slightly up and toward the oncoming traffic." *Id.* at 129. The IED Report described the device as a "3 copper EFP array with approx. 15lbs [U]nknown [B]ulk [E]xplosives." *Id.* at 130. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Cpl.] Hale was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 138.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the August 13, 2008 EFP attack by supporting proxy forces who conducted the attack.

### xx.   October 5, 2008 Attack

In 2008, Spc.[40] Bryant Bearfield was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App. at 188 (Bearfield Purple Heart Award). On October 5, 2008, Spc. Bearfield was occupying the gunner position in the lead vehicle of a four-vehicle convoy from 2nd Battalion, 502nd Infantry Regiment traveling south in Musayyib on Alternate Supply Route Jackson from FOB Iskandariyah. *See* Lutz *Stearns* Add'l Attacks Rep. at 140. At approximately 11:23 AM local time, Spc. Bearfield's vehicle, an MRAP, was struck by a multi-

---

[40] Lutz's expert report lists the rank as "Staff Sgt." but the copy of the Purple Heart Award lists the rank as "Spc." *Compare* Lutz *Stearns* Add'l Attacks Rep. at 140 *with* Bearfield Purple Heart Award. The Court will use the rank "Spc." in accordance with the award.

array explosive concealed beneath rubble on the side of the road. *Id.* Spc. Bearfield was injured as a result of the blast. *Id.* On October 17, 2008, Priv. Spc. Bearfield received the Purple Heart award "for wounds received in action." *See* Bearfield Purple Heart Award. Spc. Bearfield allegedly continues to suffer from psychological injuries as a result of their experience. *See* Am. Compl, at ¶¶ 1196–97.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the October 5, 2008 attack in Musayyib was an EFP traceable to Iran and its proxies. The SIGACT Report lists the device responsible for the blast as a "3-5 array EFP" and that "samples of copper slugs were retrieved from" Spc. Bearfield's vehicle. Lutz *Stearns* Add'l Attacks Rep. at 141. The CJTF-Troy Report noted that "[t]here was significant damage to the MRAP consistent with a 3-5 EFP array." *Id.* The CJTF-Troy Report also noted that the "EFP array was aimed high on the MRAP with all slug impact points above the MRAP windows. Intent seems to have been to target the gunner due to the exposed nature of the turret." *Id.* The record also contains photographic evidence of the significant damage to Spc. Bearfield's vehicle. *Id.* at 146. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the weapon that injured [Spc.] Bearfield was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 146.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the October 5, 2008 EFP attack by supporting proxy forces who conducted the attack.

xxi.  *September 8, 2009 Attack*

In 2009, 1st Lt. Joseph D. Helton was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App. at 190 (Helton Casualty Rep.). On September 8, 2009, 1st Lt. Helton was riding in the third vehicle of a four-vehicle convoy from Detachment 2, 732nd Expeditionary Security Forces Squadron, 93d Military Police Battalion traveling north on Route Jackson near FOB Falcon in southern Baghdad. Lutz *Stearns* Add'l Attacks Rep. at 148. At approximately 10:00 AM local time, 1st Lt. Helton's vehicle, a Humvee, was struck by a multi-array explosive hidden between a wall and the road. *Id.* at 148–49. 1st Lt. Helton was killed as a result of the blast. *Id.* at 149. 1st Lt. Helton's casualty report confirms that he was killed during hostile action on September 8, 2009 in Baghdad. *See* Helton Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the September 8, 2009 attack in Baghdad was an EFP traceable to Iran and its proxies. The AR 15-6 Report reviewed by Lutz detailed sworn statements from twelve members of the patrol who observed, among other things, that the EFP created a "6 or 8 inch hole" in the door of 1st Lt. Helton's vehicle. Lutz *Stearns* Add'l Attacks Rep. at 149–50. The SIGACT Report lists the device responsible for the blast as a "single EFP with a copper cone." *Id.* at 150. The IED Report lists the "Main Charge Configuration" as a "Directional-EFP" and describes the device as an "EFP with copper cone approximately 10 inches in diameter and a thin steel case." *Id.* Additionally, the report determined that "it appears that [1st Lt. Helton's vehicle] was specifically targeted due to the angle of the EFP." *Id.* at 150–51. The CJTF-Troy Report noted that the device was "a single copper plate EFP with thin steel casing, consisting of 35-45 lbs of U[nkown] B[ulk] E[xplosives], and targeting [U.S. Humvees]." *Id.* at 151. The report further stated "F[ormer] S[pecial] G[roups] as the responsible group for the attack, due to their previous activity within the

area." *Id.*  The JTF Troy Report explained that "the strike appeared to be from a single EFP approximately 10 inches in diameter, with a copper cone and light steel case[, and that] the main charge consisted of approximately 50lbs of U[nkown] B[ulk] E[plosive]." *Id.* at 154.  The CEXC Report described the results of a chemical analysis of the metal fragments recovered from the blast site, finding "trace explosive residue consistent with a Cyclotrimethylenetrinitramine (RDX) based explosive." *Id.*  Lutz notes in his expert report that RDX is a common component in high-energy explosives, including Iranian manufactured C-4. *Id.*  After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, that the "attack that . . . killed [1st Lt.] Helton was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 158.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks.  Therefore, this Court finds Iran responsible for the September 8, 2009 EFP attack by supporting proxy forces who conducted the attack.

### xxii.   April 22, 2011 Attack

In 2011, Priv. 1st Class Antonio Stiggins was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App. at 192 (Stiggins Casualty Rep.).  On April 22, 2011, Priv. 1st Class Stiggins was occupying the gunner position in the second vehicle of a multi-vehicle convoy from F Troop, 2d Squadron, 3rd Armored Cavalry Regiment traveling west on Alternate Supply Route Bismark, west of Al Kut, Numaniyah, from Contingency Operating Base Delta.  Lutz *Stearns* Add'l Attacks Rep. at 160.  At approximately 2:18 PM local time, Priv. 1st Class Stiggins' vehicle, an MRAP, was struck by a multi-array explosive emplaced on the right

side of the road. *Id.* Priv. 1st Class Stiggins was killed as a result of the blast. *Id.* at 161. Priv. 1st Class Stiggins' casualty report confirms that he died during hostile action on April 22, 2011 in Al Kut as a result of "[b]last injuries." *See* Stiggins Casualty Rep.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the April 22, 2011 attack in Al Kut was an EFP traceable to Iran and its proxies. The AR 15-6 Report reviewed by Lutz noted that the "EFP penetrated behind the vehicle commander's door and hit . . . [Priv. 1st Class] Stiggins." Lutz *Stearns* Add'l Attacks Rep. at 161. The report also contained an exhibit showing that Kata'ib Hezbollah had claimed responsibility for the attack. *Id.* at 161–62. The SIGACT Report states that "the main charge of the EFP is estimated to be 40-50 lbs of U[nkown] B[ulk] E[xplosives]." *Id.* at 162. The IED Report lists the main charge configuration as an "EFP" and describes the device as a "[m]ultiple copper lined EFP array, with an unknown arming/initiation system." *Id.* After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the weapon that killed [Priv. 1st Class] Stiggins was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.* at 166.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP attack, which are consistent with Iran's facilitation of other EFP attacks. Additionally, a known Iran-affiliated group claimed responsibility for the attack. Therefore, this Court finds Iran responsible for the April 22, 2011 EFP attack by supporting proxy forces who conducted the attack.

### xxiii. *July 15, 2011 Attack*

In 2011, Spec. Daniel Elliott was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App. at 194–95 (Elliott Death Cert.). On July 15, 2011, Spec.

Elliott was occupying the gunner position in the lead vehicle of a four-vehicle convoy from 805th Military Police Company traveling west on Route Detroit conducting a counter indirect fire patrol in northern Basra. Lutz *Stearns* Add'l Attacks Rep. at 175. At approximately 6:40 AM local time, Spec. Elliott's vehicle, a Caiman, was struck by a multi-array explosive emplaced on the right side of the road. *Id.* Spec. Elliott was killed as a result of the blast. *Id.* Spec. Elliott's death certificate confirms that he died during hostile action on July 15, 2011 in Basra as a result of "[b]last injuries." *See* Elliott Death Cert.

The Court finds satisfactory evidence in the record to demonstrate that the explosive responsible for the July 15, 2011 attack in Basra was an EFP traceable to Iran and its proxies. The SIGACT Report states that the device responsible for the blast was an "EFP and the Caiman was destroyed." Lutz *Stearns* Add'l Attacks Rep. at 175. The IED Report lists the "Main Charge Configuration" as "Directional-EFP." *Id.* at 176. The report further notes "that the device was an EFP and was copper-lined and consisted of approximately 15lbs of U[nkown] B[ulk] E[xplosive]." *Id.* The JTF Troy Report reported "significant copper residue" left on the armor of Spec. Elliott's vehicle. *Id.* at 177. The record also contains photographs of the extensive damage to the vehicle. *Id.* at 179–81. Lutz reviewed the autopsy report for Spec. Elliott and remarked that the injuries that led to his death "are entirely consistent with injuries commonly sustained as a result of an EFP strike." *Id.* at 182. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "that the attack that killed [Spec.] Elliott was part of the EFP campaign orchestrated by the IRGC and Hezbollah and was conducted by one of the IRGC's Hezbollah-trained Special Group proxies." *Id.*

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the EFP

attack, which are consistent with Iran's facilitation of other EFP attacks. Therefore, this Court finds Iran responsible for the July 15, 2011 EFP attack by supporting proxy forces who conducted the attack.

### E. Additional Non-EFP Attacks Not Previously Adjudicated

Finally, plaintiffs allege injuries traceable to three additional attacks not previously adjudicated allegedly involving Iranian-supplied rockets and mortar rounds:

1. April 6, 2008 Attack in Baghdad, *see* Am. Compl., at ¶¶ 1069–79;
2. April 6, 2008 Attack in Baghdad, *see id.*, ¶¶ 1080–90; and
3. June 29, 2011 Attack in Wasit Province, *see id.*, ¶¶ 1320–35.

After reviewing the materials submitted by the plaintiffs, the Court finds satisfactory evidence in the record to demonstrate that the attacks are traceable to Iran and its proxies.

#### i. April 6, 2008 Attack ("First April 6, 2008 Attack")

In 2008, Staff Sgt. Emanuel Pickett was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App. at 194–95 (Pickett Death Cert.). On April 6, 2008, Staff Sgt. Pickett was serving as the squad leader for the 1st Squad, 2nd Platoon, 1132nd Military Police Company at FOB Rustamiyah. McIntyre *Stearns* Apr. 6, 2008 Attacks Rep. at 4. At approximately 3:00 PM local time, a concrete pad at FOB Rustamiyah experienced a single round of indirect fire. *Id.* As a result, the soldiers at FOB Rustamiyah, including Staff Sgt. Pickett, proceeded to the nearest bunker for protection. At approximately 3:08 PM local, FOB Rustamiyah received three rounds of indirect fire, one of which struck the front of the bunker where Staff Sgt. Pickett was located. *Id.* Staff Sgt. Pickett was mortally wounded in the attack and later died at the 86th Combat Hospital. *Id.* Staff Sgt. Pickett's death certificate confirms that he died during hostile action on April 6, 2008 in Baghdad as a result of "[b]last injuries." *See* Pickett Death Cert.

The Court finds satisfactory evidence in the record to demonstrate that the munitions responsible for the First April 6, 2008 Attack in Baghdad were 81mm mortars and 107mm rockets

traceable to Iran and its proxies. The AR 15-6 Investigation report, reviewed by McIntyre, notes that, at the time of the attack, "[a]n unknown mix of (8-10) 81mm mortars and 107mm rockets impacted on the F[orward] O[perating] B[ase] within the 95th M[ilitary] P[olice] B[attalion] footprint." McIntyre *Stearns* Apr. 6, 2008 Attacks Rep. at 4. The SIGACT Report the lists the "Modes of Attack" as "Rocket" and "Mortar." *Id.* at 5. The "event storyboard" concludes that the attack "consisted of 1x 107 mm rockets and 2x 81 mm mortar rounds." *Id.* Additionally, the SIGACT Report notes that, "ended 30-45 min[utes] prior to the attack," Coalition Forces had completed a "cordon and search of Tai Pink[,] . . . indicat[ing] that JAM elements had op[erative]s watching the search of this location and moved to attack only after C[oalition] F[orces] had left the obj[ective]." *Id.* In his expert report, McIntyre sheds further light on the overall conflict landscape at the time of the attack, explaining that "[t]he attack took place during a period of increased operational tempo by IRGC-directed Special Groups directed against Coalition Forces." *Id.* at 6. For example, between March 23, 2008 and March 28, 2008, just days before the attack, IRGC-sponsored proxy groups "launched 91 separate barrages that dropped a total of 344 rockets and mortar rounds on the Green Zone in Baghdad. These indirect-fire attacks coincided with coordinated JAM Special Groups assaults against all 11 Iraqi Security Forces checkpoints around Sadr City." *Id.* at 6-7. After reviewing the available evidence of the attack, McIntyre concludes, in his expert opinion, "it is highly probable that the April 6, 2008 attack on FOB Rustamiyah that killed [Staff Sgt.] Pickett was consistent with the types of attacks orchestrated by the IRGC and Hezbollah against U.S. and Coalition Forces operating in Iraq and was committed at the general direction of the IRGC by one of its Special Groups proxies using weapons provided by the IRGC and training provided by the IRGC and Hezbollah." *Id.* at 7.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the attack, which are consistent with Iran's facilitation of other attacks involving mortars and rockets. Additionally, the attack occurred in the context of escalating tensions between coalition forces and proxy forces. Therefore, this Court finds Iran responsible for the First April 6, 2008 Attack by supporting proxy forces who conducted the attack.

### ii.  April 6, 2008 Attack ("Second April 6, 2008 Attack")

In 2008, Major ("Maj.") Stuart A. Wolfer[41] was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App. at 200–01 (Wolfer Death Cert.). On April 6, 2008, Maj. Wolfer was located at the Phoenix Base within Baghdad's International Zone. McIntyre *Stearns* Apr. 6, 2008 Attacks Rep. at 9. At approximately 3:28 PM local time, a 107mm rocket crashed into the roof of the gymnasium facility on base. *Id.* The explosion propelled shrapnel into the interior of the gym. Maj. Wolfer, who was located directly underneath the impact point, sustained traumatic injuries and was later pronounced dead at the 86th Combat Support Hospital. *Id.* Maj. Wolfer's death certificate confirms that he died during hostile action on April 6, 2008 in Baghdad as a result of "[b]last injuries." *See* Wolfer Death Cert.

The Court finds satisfactory evidence in the record to demonstrate that the munitions responsible for the Second April 6, 2008 Attack in Baghdad were 107mm rockets traceable to Iran and its proxies. The AR 15-6 Investigation report, reviewed by McIntyre, noted that, "EOD determined the IDF consisted of one Iranian made 107mm rocket." *Id.* at 10. The SIGACT Report the lists the "Modes of Attack" as "Rocket," and specifically a 107mm Iranian rocket. *Id.* at 10.

---

[41] The amended complaint lists claims by several plaintiffs related to "Scott Wolfer." *See* Am. Compl., at ¶¶ 1084–87. According to the official casualty report, the servicemember killed in the Second April 6, 2008 was "Stuart Wolfer." *See* Wolfer Death Cert. Therefore, this Court determines the name "Scott Wolfer" to be in error and the correct name to be "Stuart Wolfer."

The JTF Troy Report observed that the "[b]last seat, rocket motor, and fragmentation are consistent with one 107mm Iranian rocket dated 2006" and concludes that "P[oint] O[f] I[mpact] was impacted by one Iranian 107mm H[igh] E[xplosive] Rocket." *Id.* The "event storyboard" concludes that the attack consisted of "3x 107 mm Iranian rockets on the I[nternational] Z[one]." *Id.* at 11. Additionally, the "event storyboard" notes that "[t]his is the 4th IDF attack against the international zone since the beginning of April. . . . Special Group Criminal (SGC) elements within the Sadr City security district continue to attack C[oalition] F[orces] fixed points in response to the perception that an incursion further into Sadr City is imminent." *Id.* After reviewing the available evidence of the attack, McIntyre concludes, in his expert opinion, "it is highly probable that the April 6, 2008 attack on Phoenix Base that killed . . . [Maj.] Wolfer was consistent with the types of attacks orchestrated by the IRGC and Hezbollah against U.S. and Coalition Forces operating in Iraq and was committed at the general direction of the IRGC by one of its Special Groups proxies using weapons provided by the IRGC and training provided by the IRGC and Hezbollah." *Id.* at 13.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the attack, which are consistent with Iran's facilitation of other attacks involving rockets. Additionally, the attack occurred in an area with a pattern of previous attacks facilitated by Iran-supported proxy groups. Therefore, this Court finds Iran responsible for the Second April 6, 2008 Attack by supporting proxy forces who conducted the attack.

### *iii. June 29, 2011 Attack*

In 2011, 1st Sgt. Donald Field was serving as a member of the United States Army in Iraq. *See* 28 U.S.C. § 1605A(a)(2)(A)(ii) App. at 203 (Field Purple Heart Award). On June 29, 2011,

1st Sgt. Field was located at the COB Shocker, in Wasit Province, Iraq. Lutz *Stearns* Add'l Attacks Rep. at 168. At approximately 4:20 PM local time, four Improvised Rocket Assisted Munition-propelled 240mm rockets ("IRAMs") were launched from a dump truck located near COB Shocker. *Id.* Three of the IRAMs detonated over COB Shocker's tactical operations center and gym. *Id.* 1st Sgt. Field was injured in the explosion. *Id.* 1st Sgt. Field received the Purple Heart award "for wounds received in action." *See* Field Purple Heart Award. 1st Sgt. Field allegedly continues to suffer from psychological injuries as a result of his experience. *See* Am. Compl, at ¶¶ 1322–31.

The Court finds satisfactory evidence in the record to demonstrate that the munitions responsible for the June 29, 2011 attack in Wasit Province were IRAMs traceable to Iran and its proxies. The IED Report describes the device used in the attack as "4x IRAMs w/ 240mm rocket motor" and that "[e]ach IRAM has approximately 300lbs of U[nkown] B[ulk] E[xplosive]." Lutz *Stearns* Add'l Attacks Rep. at 172. The SIGACT Report attributed the attack to Iran noting: "Single source reporting indicates that three IRCG-QF members were I[n] V[icinity] O[f] Shocker during the attack. ... [Additionally,] a [Kata'ib Hezbollah] affiliated TV station began reporting on the attack shortly after it was conducted. Of note, there are definite similarities between this attack and the IRAM attack conducted against J[oint] S[ecurity] S[tation] Sifer by A[sa'b] A[hl] [al-]H[aq]." *Id.* at 171. In his expert report, Lutz opined that Kata'ib Hezbollah posted a video to its website showing multiple IRAMs being fired at COB Shocker followed by several explosions, which was "consistent with [Kata'ib Hezbollah]'s prior TTP and the evidence collected by EOD/Task Force Troy." *Id.* at 174. After reviewing the available evidence of the attack, Lutz concludes, in his expert opinion, "the attack that injured [1st Sgt.] Field . . . involved the use of multiple IRAMs, a signature weapon used by Kata'ib Hezbollah, and it is highly probable that the

240mm rockets used to perpetrate the attack were supplied by the IRGC. I further conclude that the attack itself was likely committed by Kata'ib Hezbollah at the direction of the IRGC and (Lebanese) Hezbollah." *Id.* at 174.

The representations of plaintiffs' expert and the Court's own review of the materials submitted underscore the lethality, sophistication, and unique physical characteristics of the attack, which are consistent with Iran's facilitation of other attacks involving mortars and rounds. Additionally, a known Iran-affiliated group claimed responsibility for the attack. Therefore, this Court finds Iran responsible for the June 29, 2011 attack by supporting proxy forces who conducted the attack.

### III.   CONCLUSIONS OF LAW

This Court's conclusions of law will proceed in several parts. First, the Court will address why it has subject matter jurisdiction under the FSIA's terrorism exception. Second, the Court will explain why it may validly exercise personal jurisdiction over Iran in this case. Third and fourth, the Court will discuss potential issues of timeliness and venue. Finally, the Court will assess whether plaintiffs have stated cognizable claims for relief under § 1605A(c) of the FSIA. As the Court will explain, the plaintiffs have validly stated claims for relief, meaning that the Court can grant default judgment on these claims.

### A.  Subject Matter Jurisdiction

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Repub. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, federal district courts have original subject matter jurisdiction over (1) nonjury civil actions (2) for claims seeking relief *in personam* (3) against a foreign state (4) when the foreign state is not entitled to immunity under the FSIA. *See* 28 U.S.C. § 1330(a). Plaintiffs meet the first three

requirements here. They do not demand a jury trial, they claim civil causes of action, and they

assert a right to *in personam* relief against a foreign state—the Islamic Republic of Iran.

That leaves the question of Iran's sovereign immunity. Foreign states are presumptively

immune from jurisdiction subject to several enumerated exceptions. *See* 28 U.S.C. § 1604. A

district court "has subject matter jurisdiction over a suit against a foreign state if—and only if—

[a] plaintiff's claim falls within" one of these exceptions. *Odhiambo v. Repub. of Kenya*, 764 F.3d

31, 34 (D.C. Cir. 2014). "[I]f no exception applies, the district court has no jurisdiction." *Id.*

Since federal courts must consider issues of subject matter jurisdiction *sua sponte*, *Gonzalez v.

Thaler*, 565 U.S. 134, 141 (2012), a district court adjudicating FSIA claims must decide whether

an exception to immunity applies "even if the foreign state does not enter an appearance,"

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 & n.20 (1983).

Plaintiffs argue that Iran's conduct falls within the FSIA's terrorism exception. That

provision of the FSIA states that a foreign state has no immunity:

> in any case . . . in which [1] money damages are sought [2] against
> a foreign state [3] for personal injury or death [4] that was caused
> by [5] an act of torture, extrajudicial killing, aircraft sabotage,
> hostage taking, or the provision of material support or resources for
> such an act if such act or provision of material support or resources
> is engaged in by an official, employee, or agent of such foreign state
> while acting in the scope of his or her office, employment, or
> agency.

28 U.S.C. § 1605A(a)(1). This exception applies only if plaintiffs meet three additional

requirements. First, the foreign state must have been designated a state sponsor of terrorism when

the underlying attack occurred or designated as a result of the attack. *Id.* § 1605A(a)(2)(A)(i)(I).

Second, at the time of the underlying attack, the "claimant or victim" must have been a "national

of the United States," a "member of the armed forces," or an employee or contractor of the United

States Government acting within the scope of her employment. *Id.* § 1605A(a)(2)(A)(ii). Third,

if "the act occurred in the foreign state against which the claim has been brought," the claimant must have "afforded the foreign state a reasonable opportunity to arbitrate" the claim. *Id.* § 1605A(a)(2)(A)(iii).

Plaintiffs undoubtedly meet these elements. They seek money damages against Iran, a foreign state. *See* Am. Compl., at ¶¶ 1342–55. Plaintiffs allege personal injuries—both physical and emotional—arising out of the attacks.[42] *See id.* at 89–1341. Iran has been designated a state sponsor of terrorism since 1984, including at the time of the attacks. *See* Determination Pursuant to Section 6(i) of the Export Administration Act of 1979—Iran, 49 Fed. Reg. 2836 (Jan. 23, 1984). And the attacks took place in Iraq—not Iran—meaning that plaintiffs need not afford Iran an opportunity to arbitrate these claims.

Plaintiffs are also "claimant[s] or victim[s]" within the meaning of the FSIA. *See* 28 U.S.C. § 1605A(a)(2). Courts in this District have interpreted this statutory provision to allow for claims of "(1) [the] U.S. soldiers and civilians injured in Iraq by terrorist acts that Iran materially supported; (2) the estates of U.S. soldiers and civilians killed in Iraq as a result of such acts; and (3) the immediate family members (or the estates of now-deceased immediate family members) of the injured and deceased U.S. soldiers and civilians." *Karcher*, 2021 WL 133507, at *68 (citing *Rezaian v. Islamic Repub. of Iran*, 422 F. Supp. 3d 164, 179 (D.D.C. 2019)). Plaintiffs are all allegedly U.S. citizens and fall within the three categories of "claimant[s] or victim[s]" as defined by this District. *See generally* Am. Compl.

---

[42] The FSIA does not restrict the "personal injury or death" requirement to injury or death suffered *directly* by a claimant. *Valore*, 700 F. Supp. 2d at 66. Rather, the injury or death "must merely be the basis of a claim for which money damages are sought." *Id.* (citing 28 U.S.C. § 1605A(a)(1)).

Three elements remain. The Court may properly exercise subject matter jurisdiction if Iran (1) provided "material support or resources" for (2) acts of "extrajudicial killing" that (3) caused plaintiffs' injuries. *See* 28 U.S.C. § 1605A(a)(1). The Court will address each element in turn.

### i.   *Material Support or Resources*

First, plaintiffs must show that Iran provided "material support or resources" for the EFP attacks that resulted in their injuries. *See id.* The FSIA defines "material support or resources" as:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, *training, expert advice or assistance*, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, *explosives*, personnel . . . , and transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b)(1) (emphases added); *see* 28 U.S.C. § 1605A(h)(3) (adopting definition of "material support or resources" found in 18 U.S.C. § 2339A). The material support or resources must have been provided "by an official, employee, or agent of [the] foreign state" acting in the scope of her "office, employment, or agency." 28 U.S.C. § 1605A(a)(1).

Plaintiffs satisfy this element. Multiple experts have testified that the Special Groups could not have conducted the attacks—both EFP and non-EFP—without the support of the IRGC and Qods Force. *See supra* Section II.C. This support included "millions of dollars of funding, training, and advanced weaponry." *Lee*, 518 F. Supp. 3d at 493; *see, e.g.*, Pregent Rep., PX-155, at 12 (detailing the training programs and funding Iran provided to Special Groups); Oates Rep., PX-153, at 24–25 (explaining that coalition forces discovered caches of EFP materials traceable to Iranian manufacturers). And, as other courts in this District have held, the Qods Force is "at least an agent of Iran," if not a governmental entity "such that individuals working for it would be officials or employees of Iran." *Karcher*, 396 F. Supp. 3d at 55; *see Blais v. Islamic Repub. of Iran*, 459 F. Supp. 2d 40, 60–61 (D.D.C. 2006) (finding the IRGC to be a governmental entity).

Plaintiffs have therefore proven that that Iran—acting through the IRGC and Qods Force—materially supported the EFP and non-EFP attacks that resulted in their injuries.

    ii.   *Extrajudicial Killings*

Second, plaintiffs must demonstrate that the underlying terrorist attacks are "act[s] of . . . extrajudicial killing" under the FSIA. *See* 28 U.S.C. § 1605A(a)(1). The FSIA defines an "extrajudicial killing" by reference to the Torture Victim Protection Act of 1991 ("TVPA"). *See* 28 U.S.C. § 1605A(h)(7). An "extrajudicial killing"—as defined by the TVPA—is "a deliberated killing not authorized by a previous judgment" of a "regularly constituted court" that "afford[s] all the judicial guarantees . . . recognized as indispensable by civilized peoples." Terrorist Victim Protection Act, Pub. L. No. 102-256, 106 Stat. 73, § 3(a) (1992). Thus, an "extrajudicial killing" contains three elements: "(1) a killing; (2) that is deliberated; and (3) is not authorized by a previous judgment pronounced by a regularly constituted court." *Owens*, 864 F.3d at 770. The EFP and non-EFP attacks meet all three requirements of an extrajudicial killing.

Plaintiffs allege injury traceable to attacks resulting in completed and attempted extrajudicial killings. As mentioned above, extrajudicial killings clearly satisfy the statutory requirement in 28 U.S.C. § 1605A(a)(1). Additionally, attempted extrajudicial killings may still constitute "act[s] of . . . extrajudicial killing" under § 1605A(a)(1). The text of § 1605A(a)(1) reads as follows:

> A foreign state shall not be immune . . . in any case . . . in which money damages are sought against a foreign state for personal injury *or* death that was caused by *an act of* . . . extrajudicial killing . . . or the provision of material support or resources *for such an act*.

28 U.S.C. § 1605A(a)(1) (emphasis added). The FSIA does not waive immunity when a foreign state supports an extrajudicial killing, but rather an "act of" extrajudicial killing. *Id.* That term could be read multiple ways. An "act" could refer to "a thing done" or a specific "deed." Act,

*New Oxford English Dictionary* (2d ed. 2005).   But an "act" might also refer to "[t]he process of

doing" something.   Act, *Oxford English Dictionary* (2d ed. 1989); *accord* Act, *Merriam-Webster's*

*Collegiate Dictionary* (10th ed. 2005) (defining "act" as both "the doing of a thing" and "the

process of doing").   Plausibly read, § 1605A(a)(1) could encompass (1) the specific deed of an

extrajudicial killing or (2) the process of committing an extrajudicial killing.[43]   But the process of

committing an extrajudicial killing does not imply that death results—meaning that an *attempted*

extrajudicial killing could constitute an "act of extrajudicial killing."

In light of this ambiguity, the Court will interpret § 1605A(a)(1) broadly.   The D.C. Circuit

has held that courts should "interpret [the FSIA's] ambiguities flexibly and capaciously" because

of Congress's intent to "lighten the jurisdictional burdens borne by victims of terrorism seeking

judicial redress" by passing § 1605A.   *Van Beneden v. Al-Sanusi*, 709 F.3d 1165, 1167 & n.4 (D.C.

Cir. 2013).   And courts in this District have consistently held that attempted extrajudicial killings

fall within the meaning of § 1605A(a)(1)'s text.   *See, e.g.*, *Lee*, 518 F. Supp. 3d at 491 (concluding

that § 1605A(a)(1)'s text and "the court's mandate to construe ambiguities in the FSIA broadly"

permitted jurisdiction for attempts to commit extrajudicial killings); *Karcher I*, 396 F. Supp. 3d at

58 (interpreting § 1605A(a)(1) broadly since its text "does not expressly address attempts to

commit acts").   The Court concludes likewise.   Attempted extrajudicial killings are "acts

of extrajudicial killing" within the meaning of § 1605A(a)(1).   *See Lee*, 518 F. Supp. 3d at 491;

*Karcher I*, 396 F. Supp. 3d at 58.   And attacks with EFPs—which wrought death upon many

victims in Iraq—are, at the least, attempted extrajudicial killings.

---

[43] This reading finds support in the TVPA, which the FSIA incorporates by reference.  The TVPA establishes liability
for "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an
individual to extrajudicial killing."  TVPA § 2(a)(2).  It is a "cardinal principle" of interpretation that "courts 'must
give effect, if possible, to every clause and word of a statute,'" *Loughrin v. United States*, 573 U.S. 351, 358 (2014)
(quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)), suggesting that the "act of" language inserted in § 1605A(a)(1)
carries independent meaning.

The EFP and non-EFP attacks at issue in this case were also "deliberated." A deliberated killing is "one undertaken with careful consideration, not on a sudden impulse." *Lee*, 518 F. Supp. 3d at 491 (quoting *Salzman v. Islamic Repub. of Iran*, 2019 WL 4673761, at *13 (D.D.C. Sept. 25, 2019); *cf. Owens*, 864 F.3d at 770 (finding a killing "deliberated" when it involved "substantial preparation, meticulous timing, and coordination across multiple countries in the region"); *Mamani v. Berzain*, 654 F.3d 1148, 1155 (11th Cir. 2011) (interpreting "deliberated" under the TVPA as "being undertaken with studied consideration and purpose"). Expert testimony demonstrates that an EFP attack requires significant planning, coordination, and timing. *See supra* Section II.C. A perpetrator must place the explosive device (often hiding it within boulders, debris, or roadside curbs), keep a sharp lookout for the target, and arm the device remotely as the target approaches. *See id.* The thought and consideration required to conduct an EFP attack are hallmarks of deliberation. Furthermore, McIntyre's expert report details the decades-long history of Iran providing both mortar rounds and rockets, with accompanying training, to proxy groups. *See* McIntyre *Stearns* Apr. 6, 2008 Attacks Rep. at 1. This pattern and practice is consistent with deliberation.

Additionally, no evidence on the record suggests that the EFP and non-EFP attacks in this case were authorized by a judgment pronounced by a court of law. The Court therefore concludes that Iran's material support for EFP attacks qualify as material support for acts of extrajudicial killing.

### iii.   Causation

To prove causation under the FSIA's terrorism exception, a plaintiff must show that the foreign state's actions proximately caused the alleged injuries. *Owens*, 864 F.3d at 794. Proximate causation requires "some reasonable connection between the act or omission of the defendant and

the damage which the plaintiff has suffered." *Id.* (quoting *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004)). This inquiry contains two elements: (1) the defendant's actions "must be a 'substantial factor' in the sequence of events" leading to the injury; and (2) the injury must have been "'reasonably foreseeable or anticipated as a natural consequence' of the defendant's conduct." *Id.* (quoting *Rothstein v. UBS*, 708 F.3d 82, 91 (2d Cir. 2013)).

Plaintiffs have shown that Iran proximately caused their injuries stemming from the EFP attacks. First, Iran's material support for Iraqi insurgents was a substantial factor in the chain of events leading to plaintiffs' injuries. As the *Lee* court explained:

> Iran provided the funding, training, and weaponry that was used to injure [p]laintiffs. This support was particularly crucial: as the U.S. military developed countermeasures to make EFP attacks less lethal, Iran's training, technology, and provision of resources equipped insurgents with EFPs that could respond to U.S. countermeasures and inflict maximum damage.

*Lee*, 518 F. Supp. 3d at 493 (citations omitted); *see* Pregent Rep., PX-155, at 12; Oates Rep., PX-153, at 24–25; 12/03/2018 (AM) Tr. 98:5–9. Second, plaintiffs' injuries were reasonably foreseeable consequences of Iran's proliferation of EFP and non-EFP materials in Iraq. Iran not only distributed the necessary materials to create EFPs to Iraqi insurgents, but also assisted those insurgents with circumventing the U.S. military's later-developed countermeasures. *See* 12/06/2018 (AM) Tr. 48:21–49:12 (explaining that the U.S. military traced devices that "wreaked havoc" on EFP countermeasures to Iran). Iran also "supplied or bankrolled a number of" non-EFP weapons "used by Shi'a militia groups in Iraq." *Karcher I*, 396 F. Supp. 3d at 25. By providing financial support, training, and weapons to Iraqi insurgents, Iran must have reasonably anticipated that its actions would lead to serious injuries or deaths among coalition forces. *See Lee*, 518 F. Supp. 3d at 494 (concluding that Iran "reasonably anticipated" serious injuries and deaths to U.S.

troops based on its "financial support" and "provision of evolving and ever-more lethal weaponry" to Iraqi insurgents); *Karcher I*, 396 F. Supp. 3d at 56–57 (holding that plaintiffs' harms were reasonably foreseeable when Iran intended "to kill people, not just disable vehicles"). In the same vein, the Family Member Plaintiffs' emotional harms, discussed *infra* Section III.E.ii, were a reasonably foreseeable consequence of Iran's material support for potentially lethal EFP and non-EFP attacks in Iraq. *See Lee*, 518 F. Supp. 3d at 494 (citing *Salzman*, 2019 WL 4673761, at *14).

Accordingly, the Court concludes that Iran proximately caused plaintiffs' injuries through its material support for the attempted extrajudicial killings of U.S. servicemembers and a contractor. Since plaintiffs have proven each element of the FSIA's terrorism exception, the Court possesses subject matter jurisdiction over this dispute under 28 U.S.C. § 1330(a) and § 1605A(a)(1).

### B.  Personal Jurisdiction

The Court now turns to its personal jurisdiction over Iran. A court has "an independent obligation . . . to satisfy itself of its personal jurisdiction before entering a default [judgment] against a missing party." *Kaplan v. Cent. Bank of the Islamic Repub. of Iran*, 896 F.3d 501, 512 (D.C. Cir. 2018). Federal courts have personal jurisdiction over a foreign state if (1) the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), and (2) plaintiffs properly effectuate service under 28 U.S.C. § 1608(a). *See* 28 U.S.C. § 1330(b). As explained above, the Court possesses subject matter jurisdiction over this dispute under § 1330(a). The remaining issue is whether plaintiffs followed the procedures required by § 1608(a).

The FSIA prescribes four valid methods of service. *See* 28 U.S.C. § 1608(a). If a method of service is unavailable or unsuccessful, a plaintiff may attempt the next method listed. *Worley v. Islamic Repub. of Iran*, 75 F. Supp. 3d 311, 327 (D.D.C. 2014). First, a plaintiff should follow

"any special arrangement[s]" for service—e.g., contractual provisions—between the plaintiff and the foreign state. 28 U.S.C. § 1608(a)(1). Second, a plaintiff may serve a defendant state "in accordance with an applicable international convention" on service of process. *Id.* § 1608(a)(2). Neither option is available in this case. *See Lee*, 518 F. Supp. 3d at 495.

Plaintiffs thus attempted service under § 1608(a)(3), which permits service by mailing copies of the complaint, summons, and notice of suit on a defendant state's head of ministry of foreign affairs. *See* 28 U.S.C. § 1608(e)(3); Aff. Requesting Foreign Mailing, ECF No. 15. When that attempt failed, plaintiffs tried to serve Iran via diplomatic channels. *See id.* § 1608(a)(4); Aff. Requesting Foreign Mailing, ECF No. 18. According to the Department of State, these documents were served on August 12, 2018, under cover of diplomatic note. Return of Service, ECF No. 21. The Court concludes that plaintiffs have complied with § 1608(a)(4) and properly served Iran in accordance with the FSIA. The Court may exercise personal jurisdiction over the parties.

### C. Timeliness

Actions under the FSIA's terrorism exception "may be brought or maintained" only if filed "not later than" the later of (1) "10 years after April 24, 1996" or (2) "10 years after the date on which the cause of action arose." 28 U.S.C. § 1605A(b). But when a defendant state "fail[s] to enter an appearance or submit a filing at any stage of [a] case[]," it forfeits any potential statute-of-limitations defenses. *Maalouf v. Islamic Repub. of Iran*, 923 F.3d 1095, 1108 (D.C. Cir. 2019). A federal court has no authority to raise this statute of limitations defense "on behalf of an entirely absent defendant." *Id.* at 1112. Because Iran has not appeared in this case—and, therefore, has not raised a statute-of-limitations defense—the Court will not enforce the limitations period *sua sponte*.

### D.  Venue

For civil actions "against a foreign state or political subdivision thereof," venue is proper "in the United States District Court for the District of Columbia." 28 U.S.C. § 1391(f)(4).  Iran is a "foreign state" as defined by § 1603 of the FSIA.  *See* 28 U.S.C. § 1603(a); *see e.g.*, *Henkin v. Islamic Repub. of Iran*, No. 18-cv-1273, 2021 WL 2914036 (D.D.C. July 12, 2021).  Since Iran is a foreign state, the Court concludes that venue is proper in this District.

### E.  Liability

#### i.  *Claims by Surviving Plaintiffs and Estates of Deceased Victims*

Finally, the Court will assess Iran's liability for plaintiffs' injuries.  As explained above, plaintiffs plead claims arising under § 1605A(c)'s private cause of action.  Plaintiffs' § 1605A(c) claims arising from the 61 total attacks fall into three categories: the claims of (1) the U.S. soldiers and civilians injured in Iraq by terrorist acts that Iran materially supported; (2) the estates of U.S. soldiers and civilians killed in Iraq as a result of such acts; and (3) the immediate family members (or the estates of now-deceased immediate family members) of the injured and deceased U.S. soldiers and civilians.  The first two categories comprise the § 1605A(c) claims of 63 plaintiffs:

**Surviving Plaintiffs:** (1) Steven Vernier, Jr.; (2) Brian Radke; (3) Luke Murphy; (4) Arne Eastlund; (5) Matthew Adamson; (6) James Shepard; (7) John P. Sklaney, III; (8) Joshua Starkey; (9) William Ronald Little; (10) Josh Denman; (11) Joshua Brooks; (12) Matthew Lammers; (13), Angel Gomez; (14) Andrew Moores; (15) Matthew Benson; (16) Joshua Schichtl; (17) Steve Wadleigh; (18) Jason Whitehorse; (19) Austin Bewley; (20) Matthew Fieser; (21) Benjamin Daniel Carrington; (22) Jonathan Heslop; (23) Tyler Latham; (24) Bryant Bearfield; (25) Andrew Bradley; (26) Rhett Murphy; (27) Roady Landtiser; (28) Nathan Richards; and (29) Donald Field.

**Estates of Deceased Victims:** (1) Clifford Leroy Smith, Jr., on behalf of the Estate of Kevin J. Smith; (2) David G. Cardinal, Jr., on behalf of the Estate of Anthony Cardinal; (3) Henry J. Bandhold, Sr., on behalf of the Estate of Scott Bandhold; (4) Kathy Stillwell, on behalf of the Estate of Daniel Crabtree; (5) Cathy Andino, on behalf of the Estate of Edwin A. Andino; (6) Nannette Bryne-Haupt, on behalf of the Estate of Ryan Haupt; (7) Jackie Farrar-Finken, on behalf of the Estate of Paul Finken; (8) Samantha Balsley, on behalf of the Estate of Michael C. Balsley; (9) Deadra Garrigus, on behalf of the Estate of Mickel D. Garrigus; (10) Hyunjung Glawson, on behalf of the Estate of Curtis E. Glawson; (11) Lindsay Young, on behalf of the Estate of Brett A. Walton; (12) Dwight Martin, on behalf of the Estate of Jay E. Martin; (13) Tiffany M. Little, on behalf of the Estate of Kyle A. Little; (14) Delilah Brown, on behalf of the Estate of Scott J. Brown; (15) Sheila Tracy, on behalf of the Estate of Jacob Tracy; (16) Katherine McRill-Fellini, on behalf of the Estate of Robert McRill; (17) Ursula Ann Joshua, on behalf of the Estate of Ron J. Joshua, Jr.; (18) Jessica Heinlein, on behalf of the Estate of Charles T. Heinlein; (19) Margarita Aristizabal, on behalf of the Estate of Alfed H. Jairala; (20) Maria Alvarez, on behalf of the Estate of Conrad Alvarez; (21) Tabitha McCoy, on behalf of the Estate of Steve A. McCoy; (22) Kynesha Dhanoolal, on behalf of the Estate of Dayne D. Dhanoolal; (23) Merlese Pickett, on behalf of the Estate of Emanuel Pickett; (24) Lee Wolfer, on behalf of the Estate of Stuart Wolfer; (25) William Allmon, on behalf of the Estate of William E. Allmon; (26) Breanna Lynn Gasper, on behalf of the Estate of Frank J. Gasper; (27) Daniel Menke, on behalf of the Estate of Jonathan D. Menke; (28) Jessica H. Williams, on behalf of the Estate of James M. Hale; (29) Kari Carosella, on behalf of the Estate of Justin Bauer; (30) Roberto Andrade, Sr., on behalf of the Estate of Roberto Andrade, Jr.; (31) Joseph D. Helton, Sr., on behalf of the Estate of Joseph D. Helton, Jr.; (32)

Cassie Collins, on behalf of the Estate of Shannon M. Smith; (33) Katrina Coe, on behalf of the Estate of Keith Coe; and (34) Angel Mayes, on behalf of the Estate of Antonio Stiggins.

*See supra* Section II.D–F.  The plaintiffs properly fall within the FSIA's private cause of action, and the Court will enter default judgment on their claims.

Plaintiffs' claims derive from the injuries or deaths of members of the U.S. armed forces, or, in the case of Mr. William Ronald Little, a government contractor, proximately caused by Iran's material support for an EFP attack in Iraq.  *See* 28 U.S.C. § 1605A(c); *Roth v. Islamic Repub. of Iran*, 78 F. Supp. 3d 379, 398 (D.D.C. 2015) (reviewing a claim by legal representative of an estate).  Given the factual and legal overlap in an FSIA case, the Court's finding of subject-matter jurisdiction over each of these plaintiffs' claims also establishes their entitlement to relief under 28 U.S.C. § 1605A(c).  See, e.g., *Allan v. Islamic Repub. of Iran*, No. 17-cv-338 (RJL), 2019 WL 2185037, at *6 (D.D.C. May 21, 2019) ("[M]ost courts conduct the analysis together, since evidence sufficient to establish jurisdictional causation will almost always establish a theory of 'personal injury' necessary to prevail under § 1605 A(c) [sic].")

Since the Court has already established its subject matter jurisdiction over the qualifying plaintiffs' claims, *see supra* Section III.A, the Court concludes that Iran is liable to the surviving plaintiffs and estates of the deceased victims under § 1605A(c) for their injuries suffered from EFP and non-EFP attacks in Iraq.

### ii.   *Emotional Distress Claims by Family Members*

The third and final set of § 1605A(c) claims are those of family members of the U.S. soldiers and civilian injured or killed in the 61 attacks. This category comprises the claims of 166 plaintiffs:

**Family Member Plaintiffs:** (1) JoDee Johnson; (2) James Higgins; (3) Wendy Coleman; (4) Nova Radke; (5) Clifford Leroy Smith, Jr.; (6) Georgianna Stephens-Smith; (7) Corena Martin; (8) David G. Cardinal, Jr.; (9) Henry J. Bandhold, Sr.; (10) Afonso Bandhold; (11) Mariana Bandhold; (12) Willette Murphy; (13) Joaqina Saenz Chorens; (14) Luz Maria Estrada; (15) Frances Catherine Castro; (16) Elva Espinoza; (17) Bayli Vacho; (18) Tina Eastlund; (19) Sven Eastlund; (20) Taylor Eastlund; (21) Elizabeth Jo Eastlund; (22) R.A.; (23) Kathy Adamson; (24) Richard Adamson; (25) Christopher Adamson; (26) Jeffrey Adamson; (27) Justin Adamson; (28) Kathy Stillwell; (29) M.C.; (30) Cathy Andino; (31) Nannette Bryne-Haupt; (32) Michael Mock; (33) Tammy Dorsey; (34) Eric Phye; (35) Jackie Farrar-Finken; (36) Emilie Finken; (37) C.F.; (38) J.F.; (39) Stephen Finken; (40) Alan Finken; (41) Richard Finken; (42) David Finken; (43) Mark Finken; (44) Peter Finken; (45) Jean Pruitt; (46) Joan Henscheid; (47) Brenda Little; (48) Kira Sikes; (49) William Ronald Little, Jr.; (50) Adam G. Stout; (51) Samantha Balsley; (52) L.R.-W.; (53) Deadra Garrigus; (54) David Garrigus; (55) Nichole Garrigus; (56) Kyla Ostenson; (57) Matthew Garrigus; (58) Jazmon Reyna; (59) Lindsay Young; (60) S.W.; (61) Dwight Martin; (62) Dove Deanna Adams; (63) Raven Adams; (64) Lark Adams; (65) Casey Boehmer; (66) Kimberlee Austin-Oliver; (67) M.R.; (68) L.R.; (69) David Dixon; (70) Daniel A. Dixon; (71) Gretchen Lang; (72) Tiffany M. Little; (73) K.L.; (74) Dakota Smith-Lizotte; (75) Shyanne Smith-Lizotte; (76) Joyce Brooks; (77) Danny Brooks; (78) Daniel Tyler Brooks; (79) Delilah Brown; (80) Alicia Lammers; (81) Sheila Tracy; (82) Donald Tracy; (83) Nichole Sweeney; (84) Christina Sheridan; (85) Melissa Benson; (86) C.B.; (87) B.B.; (88) Daniel P. Benson; (89) Carol Benson; (90) Daniel R. Benson; (91) Katherine McRill-Fellini; (92) Ronald McRill; (93) Rene Pool; (94) Jessica Heinlein; (95) Charles Heinlein, Sr.; (96) Jody Lyn Heinlein; (97) Margarita Aristizabal; (98) J.J.; (99) Sebastian Niuman; (100) Prestron Reece; (101) Shaylyn C. Reece; (102) Judy Hoffman; (103)

Mark Schichtl; (104) Katherine Prowse; (105) Nicholas Prowse; (106) H.S.; (107) S.S.; (108) C.S.; (109) A.S.; (110) Lee-Ann Wadleigh; (111) Maira Alvarez; (112) A.A.; (113) C.A.; (114) K.A.; (115) Belinda Garcia; (116) Mary Catherine McLaughlin; (117) Tabitha McCoy; (118) L.M.; (119) R.M.; (120) Kynesha Dhanoolal; (121) Marlen Pickett; (122) Kemely Pickett; (123) Vivian Pickett; (124) Kyshia Sutton; (125) Lee Wolfer; (126) L.W.; (127) M.W.; (128) I.W.; (129) Beverly Wolfer; (130) Thomas Smith; (131) David Wayne Hartley; (132) Kaylie Hartley; (133) Lisa Duncan; (134) William Allmon; (135) Jesse Williamson; (136) Breanna Lynn Gasper; (137) Jamie Barnes; (138) Jessica H. Williams; (139) J.M.H.; (140) J.J.H.; (141) J.H.; (142) Kari Carosella; (143) Julie Salhus; (144) Kristen Galen; (145) Sandra Valencia; (146) Veronica Pena Andrade; (147) Angelica Andrade; (148) Veronica D. Andrade; (149) Jennifer Roose; (150) Joseph D. Helton, Sr.; (151) Jessica Cabot; (152) Jeanne Rhea McManus; (153) Katrina Coe; (154) K.A.C.; (155) K.A.C.; (156) K.A.C.; (157) Rhonda Smith; (158) Matthew Coe; (159) Sabrina Chapman; (160) Angel Mayes; (161) Luke Stiggins; (162) Donald Mayes; (163) Angelica Field; (164) Senovia Field; (165) S.F.; and (166) Edward Elliott.

These plaintiffs seek solatium damages under an intentional infliction of emotional distress theory of liability. *See* Am. Compl., at ¶¶ 1342–55; *Roth*, 78 F. Supp. 3d at 402 ("Solatium under the FSIA is functionally identical to IIED"). Section 1605A(a)(2) of the FSIA includes as plaintiffs "those whose claims arise out of those injuries" suffered as a result of a terrorist attack "but who might not be victims themselves." *Valore*, 700 F. Supp. 2d at 68; *accord Leibovitch v. Islamic Repub. of Iran*, 697 F.3d 561, 572 (7th Cir. 2012). One such category of permitted plaintiffs is the "immediate family" of claimants mentioned in 28 U.S.C. § 1605A(a)(2)(A)(ii). The family member plaintiffs bring claims centered on emotional distress from the attacks. This

causal link brings the family member plaintiffs within the scope of "claimant[s]" contemplated by the FSIA. *See id.* at § 1605A(a)(2).

This Court has set out the following standard for recovery on a theory of IIED in section 1605A(c) cases: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Heiser v. Islamic Repub. of Iran*, 659 F. Supp. 2d 20, 26 (D.D.C. 2009) (quoting Restatement (Second) of Torts § 46(1)). An actor may also be liable for IIED to a party against whom the extreme and outrageous conduct was not directed if that party is a member of the victim's immediate family and that party was present at the time of the extreme and outrageous conduct. *See Murphy v. Islamic Repub. of Iran*, 740 F. Supp. 2d 51, 75 (D.D.C. 2010) (citing Restatement (Second) of Torts § 46(2)(a)). Thus, IIED claims by family members in the FSIA context must meet both the "immediate family member" and "presence" requirements to recover.

The "immediate family" requirement is strictly construed in FSIA cases; generally, only spouses, parents, siblings, and children may recover. *Roth*, 78 F. Supp. 3d at 400 (D.D.C. 2015). The family member plaintiffs clear this bar as they are all the "spouses, parents, siblings, [or] children" or step-family members[44] of parties mentioned in 28 U.S.C. § 1605A(a)(2)(A)(ii).

As to the issue of presence, this Court has previously held that one "need not be present at the time of a terrorist attack upon a third person to recover for severe emotional injuries suffered

---

[44] Step-family members are not automatically included as claimants under the statute. The Circuit has held that where claimants "were members of the victim's household" such that they were "viewed as the functional equivalents of family members," the immediate-family requirement could potentially be stretched to include non-adoptive stepparents, non-adopted stepchildren, and stepsiblings. *See Bettis v. Islamic Repub. of Iran*, 315 F.3d 325, 337 (D.C. Cir. 2003). The mere existence of a "close relationship" between a claimant who is a non-immediate family member and the victim, however, falls "far short of what [Restatement (Second) of Torts] § 46(2)(a) requires." *Id.* It is the plaintiffs' responsibility to demonstrate this close relationship to the special master and ultimately to this Court. *See Fritz*, 324 F. Supp. 3d at 63–64.

as a result." *Valore*, 700 F. Supp. 2d at 80.  This is because terrorism is sufficiently extreme and outrageous to demonstrate that it is intended to inflict severe emotional harm on even those not present at the site of the act.  *Id.*

The plaintiffs have therefore stated a valid theory of recovery as to their IIED claims.  As this Court has previously held, "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Murphy*, 740 F. Supp. 2d at 74 (quoting *Belkin v. Islamic Repub. of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009)).  The evidence establishes that "Iran intentionally provided material support to proxy groups, and did so with the intent that Hamas would carry out attacks that would cause severe emotional distress." *Greenbaum*, 451 F. Supp. 2d at 104 (stating this conclusion in a case arising out of the same attack which underlies this suit).  Finally, plaintiffs have proved the additional elements of an IIED claim applicable when the claim is based on actions directed against a third person.  Although the family member plaintiffs do not allege that they were present at the site of the attack, this requirement is not imposed when the extreme and outrageous conduct is a terrorist attack such as the ones alleged.

## IV.   CONCLUSION

For the above-mentioned reasons, the Court will **GRANT** plaintiffs' motion for default judgment.  A separate Order consistent with this Memorandum Opinion shall issue this date.

SIGNED this __27th__ day of September, 2022.

_____
Royce C. Lamberth
United States District Judge