UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SHIRLEY STEARNS,** *et al.*,

*Plaintiffs,*

**v.**

**THE ISLAMIC REPUBLIC OF IRAN,**

*Defendant.*

**Case No. 17-cv-131 (RCL)**

## MEMORANDUM OPINION

Before the Court is the Special Master's first report and recommendations regarding damages in this case. ECF No. 60. For the reasons stated below, the Court adopts the damages recommendations provided by the Special Master, subject to one exception. Additionally, the Court awards punitive damages in favor of plaintiffs.

### I. BACKGROUND

This civil action arises from a series of attacks involving explosively formed penetrators ("EFPs"), a type of improvised explosive device ("IED"), that insurgents in Iraq used to injure or kill American servicemembers and a military contractor between 2004 and 2011.

Filed on January 19, 2017, the Complaint was brought under 28 U.S.C. § 1605A by the surviving victims, the estates of the deceased victims, and their close family members seeking compensatory and punitive damages. ECF No. 1. Plaintiffs filed an Amended Complaint on March 22, 2018. ECF No. 14. Plaintiffs served defendant Islamic Republic of Iran ("Iran") through diplomatic channels on August 12, 2018. ECF No. 21. Following Iran's failure to

respond, and upon affidavit by plaintiffs' counsel, the Clerk of Court entered default on October 15, 2018. ECF No. 23.

On December 30, 2021, plaintiffs filed a memorandum of proposed findings of fact and conclusions of law ("PFFCL") in support of their motion for default judgment as to Iran's liability for plaintiffs' injuries stemming from 58 of the attacks alleged in their Amended Complaint. PFFCL in Supp. of Mot. for Default J., ECF No. 35 at 2. Specifically, they asked this Court to: (1) "Court find Iran liable for the attacks at issue in this PFFCL"; (2) "based upon the evidence they presented in [*Karcher v. Islamic Republic of Iran*, No. 16-cv-232 (CKK) (D.D.C.)]" "as well as additional evidence that" plaintiffs submitted here. *Id.*

On October 3, 2022, the Court issued a Memorandum Opinion, ECF No. 47, holding that Iran materially supported the attacks, that Iran proximately caused plaintiffs' injuries through its material support, and that Iran did so with an intent to cause severe emotional distress. *See also Stearns v. Islamic Republic of Iran*, __ F. Supp. 3d ___, No. 17-cv-131 (RCL), 2022 WL 4764905 (D.D.C. Oct. 3, 2022). Accordingly, the Court issued a Finding of Liability as to injuries sustained by 229 plaintiffs. ECF No. 48. Plaintiffs moved to appoint a special master. ECF No. 50. This Court granted plaintiffs' motion on February 21, 2021, appointing Stephen A. Salzburg to serve as Special Master. ECF No. 52. Plaintiffs then moved for orders to seal the Special Master's reports and to allow the Special Master to submit periodic reports. ECF Nos. 54 & 55. The Court granted plaintiffs' motions. ECF No. 57 & 58.

On June 8, 2023, the Special Master filed his first report and recommendations with the Court regarding solatium damages alleged by 17 plaintiffs. ECF No 60. Plaintiffs submitted their proposed redactions to the Special Master's report. ECF No. 62 ("1st Special Master

Rep."). The parties have not filed any objections to the report and recommendation within the statutorily allotted time. *See* Fed. R. Civ. P. 53(f)(2) (allowing a party to "file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served").

Having established liability, this Court examines the Special Master's recommended awards for the 17 plaintiffs identified in his first report.

## II. DISCUSSION

Damages available under the FSIA "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). To demonstrate entitlement to damages, "a default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq*, 328 F.3d 680, 683–84 (D.C. Cir. 2003) (quoting *Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980)). *See also* H.R. REP. No. 94-1487, at 26 (1976) (stating that 28 U.S.C. § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F[ed]. R. Civ. P."). For future damages, a plaintiff must demonstrate entitlement to a "reasonable certainty or a preponderance of the evidence," and prove damages by a "reasonable estimate." *Hill*, 328 F.3d at 684. For past losses, a plaintiff must "prove the fact of injury with reasonable certainty" yet only "reasonably prove" the amount of damages. *Id.* at 684 (quoting *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997)).

Plaintiffs have amply demonstrated that Iran's commission of acts of completed and attempted extrajudicial killing and provision of material support and resources for such killings

and attempted killings was reasonably certain to —and, indeed, was intended to—injure plaintiffs. *See Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 37 (D.D.C. 2007).

Apropos of damage awards, the Court has received and reviewed the recommendations of the Special Master and **ADOPTS**, without discussion, all facts found and recommendations made that conform to the well-established solatium-damages framework articulated below. *See id.* at 51–53; *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83–87 (D.D.C. 2010). The Court will, however, discuss the three instances where the Special Master has recommended that upward departures be granted. Additionally, the Court will discuss why an award of punitive damages is appropriate here.

**A. Solatium Damages**

Solatium damages are designed "to compensate persons for mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as well as the harm caused by the loss of the decedent's society and comfort." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402–03 (D.D.C. 2015) (quoting *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 25 (D.D.C. 2011)) (internal quotation marks and alterations omitted).

In *Estate of Heiser v. Islamic Republic of Iran*, this Court surveyed damages awarded to the family members of deceased terrorism victims and determined that, based on averages, that "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (D.D.C. 2006). This Court then established a framework whereby spouses of deceased victims receive approximately $8 million, parents receive $5 million, and siblings receive $2.5 million. *Id. See also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as

'an appropriate measure of damages for the family members of victims'") (quoting *Peterson*, 515 F. Supp. 2d at 51). Step-family members may similarly receive solatium damages awards consistent with the *Heiser* framework when they "were members of the victim's household" such that they were "viewed as the functional equivalents of family members." *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 337 (D.C. Cir. 2003).

When applying this framework, this Court is mindful that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that upward deviations may be warranted in the face of "evidence establishing an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27. "Decisions to deviate from the starting points provided by the *Heiser* framework are committed to the discretion of the particular court in each case[.]" *Id.* at 26. Any departures from the *Heiser* framework are generally small relative to the award specified by the developed framework, absent "circumstances that appreciably worsen" a claimant's "pain and suffering, such as cases involving torture or kidnapping." *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006). Conversely, downward departures may be appropriate where the evidence suggests that the relationship between the victim and his family members is attenuated, *Valore*, 700 F. Supp. 2d at 86, or where a claimant fails to "prove damages in the same manner and to the same extent as any other default winner." *Hill*, 328 F.3d at 683 (internal quotation marks and citation omitted).

Most of the Special Master's awards for loss of solatium adhere to the *Heiser* guidelines and are grounded in sound evidentiary principles. *See generally* 1st Special Master Rep. Those recommendations will not be disturbed. However, the Special Master recommended, consistent with plaintiffs' request, that the Court award upward departures from the *Heiser* guidelines for three plaintiffs. The Court agrees that their injuries warrant upward departures, but in one case not to the same extent as the Special Master's recommendation. The Court will explain why.

The first of these plaintiffs to request an upward departure is Michael Mock, the father of Sergeant ("Sgt.") Willsun Mock, a U.S. servicemember killed in Iraq on October 22, 2006 when an EFP struck his vehicle. *See Stearns*, 2022 WL 4764905, at *31. He requests an upward departure of 20 percent from the damages award typically given to parents because, although he was informed of the fact of his son's death shortly after it occurred, he later learned through a book that his son significantly suffered before he died and that knowledge, combined with Michael Mock's own experience as a U.S. servicemember in Vietnam, "greatly exacerbated" his existing post-traumatic stress disorder diagnosis and "caus[ed] his [Department of Veteran's Affairs] disability rating to increase to 100%." 1st Special Master Rep. at 35–36 (citing Ex. X, Decl. of Michael Mock (Mar. 3, 2022), ¶¶ 20–22). The Court agrees with the Special Master that the serious, lasting impacts of Sgt. Mock's death on Michael Mock warrant an upward departure. Michael Mock's close relationship with his son, the manner in which is son died, how Michael Mock learned of the circumstances surrounding his son's death, and the enhanced treatment that Michael Mock requires as a result are all factors demonstrating the appropriateness of an upward departure in his case. This enhancement is consistent with decisions by other courts in this District to award enhanced damages to parents suffering

persistent, significant distress emotional due to the death of their child. *See Ben-Yishai v. Syrian Arab Republic*, __ F. Supp. 3d __, 2022 WL 17250344, at *13–14 (D.D.C. Nov. 28, 2022); *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 86 (D.D.C. 2017); *Flanagan v. Islamic Republic of Iran*, 87 F. Supp. 3d 93, 118 (D.D.C. 2015). Therefore, the Court **ADOPTS** the Special Master's recommendation to award an upward departure—$6 million in solatium damages—to Michael Mock.

The second plaintiff to request an upward departure is Tammy Dorsey, Sgt. Mock's younger sister. She requests an upward departure of 20 percent from the damages award typically given to siblings "premised on her knowing the horrific manner in which Sgt. Mock died, and the effect that had on her suffering," and the additional trauma that she experienced in burying part of her brother's body at one time and then returning to his gravesite several months later to "bury his legs which had been blown off in the attack that killed him." 1st Special Master Rep. at 40–41 (citing Ex. Z, Decl. of Tammy Dorsey (Aug. 17, 2021), ¶¶ 33–37). The Court is mindful of the emotional impact that Sgt. Mock's death has had on Tammy Dorsey and recognizes that the emotional toll of burying a beloved family member on two separate occasions merits some measure of enhanced damages. However, Tammy Dorsey's injuries have not required hospitalization, significant medical treatment, or other interventions similar to cases where courts awarded large upward departures to siblings. *Ben-Yishai*, 2022 WL 17250344, at *14; *Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 43–44 (D.D.C. 2012); *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 83–84 (D.D.C. 2011). Therefore, the Court **DECLINES TO ADOPT** the Special Master's recommendation with respect to Tammy Dorsey to award a 20 percent departure from the *Heiser* framework and

instead finds it appropriate to 2 percent departure—or $50,000—for a total of $2,550,000 in solatium damages.

The third plaintiff to request an upward departure is Michael Lucas, the step-brother of Private First Class ("Priv. 1st Class") Shawn Falter, a U.S. servicemember killed by insurgents in Iraq on January 20, 2007 during an attack on the Provincial Joint Coordination Center in Karbala. *See Stearns*, 2022 WL 4764905, at *8. He requests an upward departure of 20 percent from the damages award typically given to siblings due to "the shock of the manner of [Priv. 1st Class Falter's] death," specifically the fact that Priv. 1st Class Falter "had been kidnapped, tortured, and murdered," the media presence at the family home after news of the attack broke, and the loss he still feels. 1st Special Master Rep. at 58 (citing Ex. JJ, Declaration of Michael Lucas (Mar. 27, 2023), ¶¶ 18–26). Another judge in this District awarded 20 percent upward departures to Priv. 1st Class Falter's other family members, including step-siblings, who brought claims in *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 62 (D.D.C. 2018). *Id.* at 56. The Court agrees with the *Fritz* court that Priv. 1st Class Falter's death "and the manner in which [it] occurred, ha[s] wrought profound harm" on Michael Lucas and that he has satisfactorily "presented to the Court and the special master testimony demonstrating his [] close relationship to [Priv. 1st Class Falter] and the irreparable loss he [] continues to bear." *Id.* at 62. Therefore, the Court **ADOPTS** the Special Master's recommendation to award an upward departure—$3 million in solatium damages—to Michael Lucas.

### B. Punitive Damages

Finally, plaintiffs have requested an award of punitive damages. ECF No. 63.

Punitive damages serve to punish and deter the actions for which they are awarded, rather than to compensate the victim. *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 61 (D.D.C. 2009). In determining the proper punitive damages award, courts evaluate four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008) (citing Restatement (Second) of Torts § 908). Though there was some confusion among circuits as to whether punitive damages were available in 28 U.S.C. § 1065A actions for conduct occurring prior to the statute's enactment, such as some of the attacks at issue in the instant case, the Supreme Court recently answered the question in the affirmative. *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1608 (2020) ("Congress was as clear as it could have been when it expressly authorized punitive damages under § 1605A(c) and explicitly made that new cause of action available to remedy certain past acts of terrorism.").

This District has developed three primary methods of calculating punitive damages in FSIA cases. The first, used more commonly in mass-casualty events, involves multiplying the foreign state's "annual expenditures on terrorism" by a factor between three and five. *See Valore*, 700 F. Supp. 2d at 87–88. The second approach awards a fixed amount of $150 million per affected family. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008). The third approach involves multiplying the total compensatory damages award by a factor of between one and five. *See Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 73 (D.D.C. 2015). The multiplier approach is especially appropriate when the defendants "did not directly carry out the attack, but funded [a proxy actor], [and] it is doubtful whether a large amount . . . would have the

deterrent effect that it might have had in times past." *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 28 (D.D.C. 2017) (quoting *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 26 (D.D.C. 2016)).

The nature of Iran's acts is heinous and the extent of the harm they caused is tragic. Iran intentionally supported proxy actors who specifically sought to wreak particularly lethal injury on U.S. servicemembers and contractors. Nevertheless, the conduct here fits more squarely within the line of cases awarding punitive damages as a multiplier of compensatory damages. Given that punitive damages calculated as "a multiplier of three" of the compensatory damages is "the usual practice in state sponsored terrorism cases," *see Roth v. Islamic Republic of Iran*, No. 14-cv-1946 (RCL), 2018 WL 4680270, at *17 (D.D.C. Sept. 28, 2018), and the plaintiffs have not offered a reason to depart from this practice, this Court concludes that the plaintiffs are entitled to punitive damages in the amount three times the compensatory damages, to be apportioned according to each plaintiff's share of the compensatory damages. *See id.* (awarding punitive damages equal to three times compensatory damages for Syria and Iran's sponsorship of a bombing in Jerusalem that killed fifteen people, including a plaintiff); *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 105–06 (D.D.C. 2017) (awarding punitive damages equal to three times compensatory damages for plaintiffs injured in a shooting in Israel); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50–51 (D.D.C. 2012) (using a three times multiplier in a case involving a terrorist bombing); *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011) (same); *Murphy*, 740 F. Supp. 2d at 82–83 (same).

## III. CONCLUSION

This Court acknowledges plaintiffs' efforts to hold Iran responsible for these particularly calculated and destructive acts of terror. This Court hopes that the victims and their families may find some measure of solace from this Court's final judgment.

The Court finds defendants responsible for the injuries sustained by the plaintiffs and thus liable under the FSIA's state-sponsored terrorism exception for $56,550,000 in compensatory damages and $169,650,000 in punitive damages, for a total award of $226,200,000.

A separate Order and Judgment consistent with these findings shall be entered this date.

**IT IS SO ORDERED.**

SIGNED this 4th day of August, 2023.

Royce C. Lamberth
United States District Judge