UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**SHIRLEY STEARNS**, *et al.*,

    *Plaintiffs*,

v.

**THE ISLAMIC REPUBLIC OF IRAN**,

    *Defendant*.

Case No. 17-cv-131 (RCL)

## MEMORANDUM OPINION

Before the Court is the Special Master's second report and recommendations regarding damages in this case. ECF No. 64. For the reasons stated below, the Court adopts the damages recommendations provided by the Special Master, subject to one exception. Additionally, the Court awards punitive damages in favor of plaintiffs.

### I.  BACKGROUND

This civil action arises from a series of attacks involving explosively formed penetrators ("EFPs"), a type of improvised explosive device ("IED"), that insurgents in Iraq used to injure or kill American servicemembers and a military contractor between 2004 and 2011.

Filed on January 19, 2017, the Complaint was brought under 28 U.S.C. § 1605A by the surviving victims, the estates of the deceased victims, and their close family members seeking compensatory and punitive damages. ECF No. 1. Plaintiffs filed an Amended Complaint on March 22, 2018. ECF No. 14. Plaintiffs served defendant Islamic Republic of Iran ("Iran") through diplomatic channels on August 12, 2018. ECF No. 21. Following Iran's failure to

respond, and upon affidavit by plaintiffs' counsel, the Clerk of Court entered default on October 15, 2018. ECF No. 23.

On December 30, 2021, plaintiffs filed a memorandum of proposed findings of fact and conclusions of law ("PFFCL") in support of their motion for default judgment as to Iran's liability for plaintiffs' injuries stemming from 58 of the attacks alleged in their Amended Complaint. PFFCL in Supp. of Mot. for Default J., ECF No. 35 at 2. Specifically, they asked this Court to: (1) "Court find Iran liable for the attacks at issue in this PFFCL"; (2) "based upon the evidence they presented in [*Karcher v. Islamic Republic of Iran*, No. 16-cv-232 (CKK) (D.D.C.)]" "as well as additional evidence that" plaintiffs submitted here. *Id.*

On October 3, 2022, the Court issued a Memorandum Opinion, ECF No. 47, holding that Iran materially supported the attacks, that Iran proximately caused plaintiffs' injuries through its material support, and that Iran did so with an intent to cause severe emotional distress. *See also Stearns v. Islamic Republic of Iran*, __ F. Supp. 3d __, No. 17-cv-131 (RCL), 2022 WL 4764905 (D.D.C. Oct. 3, 2022). Accordingly, the Court issued a Finding of Liability as to injuries sustained by 229 plaintiffs. ECF No. 48. Plaintiffs moved to appoint a special master. ECF No. 50. This Court granted plaintiffs' motion on February 21, 2021, appointing Stephen A. Salzburg to serve as Special Master. ECF No. 52. Plaintiffs then moved for orders to seal the Special Master's reports and to allow the Special Master to submit periodic reports. ECF Nos. 54 & 55. The Court granted plaintiffs' motions. ECF No. 57 & 58.

On June 22, 2023, the Special Master filed his second report and recommendations with the Court regarding solatium, pain and suffering, and economic damages alleged by 16 plaintiffs. ECF No 64. Plaintiffs submitted their proposed redactions to the Special Master's report. ECF

No. 66 ("2d Special Master Rep."). The parties have not filed any objections to the reports and recommendations within the statutorily allotted time. *See* Fed. R. Civ. P. 53(f)(2) (allowing a party to "file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served").

Having established liability, this Court examines the Special Master's recommended awards for the 16 plaintiffs identified in his second report.

## II.   DISCUSSION

Damages available under the FSIA "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). To demonstrate entitlement to damages, "a default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq,* 328 F.3d 680, 683–84 (D.C. Cir. 2003) (quoting *Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980)). *See also* H.R. REP. No. 94-1487, at 26 (1976) (stating that 28 U.S.C. § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F[ed]. R. Civ. P."). For future damages, a plaintiff must demonstrate entitlement to a "reasonable certainty or a preponderance of the evidence," and prove damages by a "reasonable estimate." *Hill,* 328 F.3d at 684. For past losses, a plaintiff must "prove the *fact of injury* with reasonable certainty" yet only "reasonably prove" the amount of damages. *Id.* at 684 (quoting *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997)).

Plaintiffs have amply demonstrated that Iran's commission of acts of completed and attempted extrajudicial killing and provision of material support and resources for such killings

and attempted killings was reasonably certain to —and, indeed, was intended to—injure plaintiffs. *See Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 37 (D.D.C. 2007).

Apropos of damage awards, the Court has received and reviewed the recommendations of the Special Master and **ADOPTS**, without discussion, all facts found and recommendations made that conform to the well-established solatium-damages framework articulated below. *See id.* at 51–53; *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83–87 (D.D.C. 2010). The Court will, however, discuss the instances where the Special Master has recommended that departures to the framework, pain and suffering, and economic damages be granted. Additionally, the Court will discuss why an award of punitive damages is appropriate here.

**A.    Solatium Damages**

Solatium damages are designed "to compensate persons for mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as well as the harm caused by the loss of the decedent's society and comfort." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402–03 (D.D.C. 2015) (quoting *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 25 (D.D.C. 2011)) (internal quotation marks and alterations omitted).

In *Estate of Heiser v. Islamic Republic of Iran*, this Court surveyed damages awarded to the family members of the deceased terrorism victims and determined that, based on averages, that "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (D.D.C. 2006). This Court then established a framework whereby spouses of deceased victims receive approximately $8 million, parents receive $5 million, and siblings receive $2.5 million. *Id. See also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as

'an appropriate measure of damages for the family members of victims'") (quoting *Peterson*, 515 F. Supp. 2d at 51). Step-family members may similarly receive solatium damages awards consistent with the *Heiser* framework when they "were members of the victim's household" such that they were "viewed as the functional equivalents of family members." *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 337 (D.C. Cir. 2003).

When applying this framework, this Court is mindful that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that upward deviations may be warranted in the face of "evidence establishing an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27. "Decisions to deviate from the starting points provided by the *Heiser* framework are committed to the discretion of the particular court in each case[.]" *Id.* at 26. Any departures from the *Heiser* framework are generally small relative to the award specified by the developed framework, absent "circumstances that appreciably worsen" a claimant's "pain and suffering, such as cases involving torture or kidnapping." *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006). Conversely, downward departures may be appropriate where the evidence suggests that the relationship between the victim and his family members is attenuated, *Valore*, 700 F. Supp. 2d at 86, or where a claimant fails to "prove damages in the same manner and to the same extent as any other default winner." *Hill*, 328 F.3d at 683 (internal quotation marks and citation omitted).

Most of the Special Master's awards for loss of solatium adhere to the *Heiser* guidelines and are grounded in sound evidentiary principles. *See generally* 2d Special Master Rep. Those recommendations will not be disturbed. However, the Special Master recommended, consistent with plaintiffs' request, that the Court award departures from the *Heiser* guidelines for two plaintiffs. The Court agrees disagrees with the Special Master in part and agrees with the Special Master in part. The Court will go on to explain why.

The first of these plaintiffs to request a departure is Jazmon Reyna, the younger step-sister of Specialist ("Spec.") Curtis Glawson, Jr., a U.S. servicemember killed in Iraq on March 20, 2007 when an EFP struck his vehicle. *See Stearns*, 2022 WL 4764905, at *17. She requests an upward departure of 25 percent from the damages award typically given to siblings because of the impact of Spec. Glawson's death on her and on her brother, Cortez. 2d Special Master Rep. at 29–31. Specifically, she describes how Cortez, also a U.S. servicemember, turned to alcohol and drugs to cope with the pain of losing his brother and eventually died of a fentanyl overdose. *Id.* (Ex. T, Declaration of Reyna Jazmon (May 5, 2023), ¶¶ 19–20). The Special Master recommended that the Court grant the upward departure to "reflect[] the degree to which Cortez's suffering and death," a "foreseeable" consequence of Spec. Glawson's death, "compounded the already profound tragedy of SPC Glawson's death." *Id.* at 31. He analogized this case to *Valore*, where the Court granted a 25 percent upward departure from the typical solatium-damages award to a plaintiff whose brother was killed in the attack at issue and who used alcohol and drugs to treat the pain of losing her brother.[1] *Id.* at 30–31 (citing *Valore*, 700 F.

---

[1] The Court granted a separate solatium-damages award to the same plaintiff because her husband of six months was also killed in the attack.

Supp. 2d at 86). Here, it was a third party, Cortez, who turned to alcohol and drugs, substances that eventually killed him. The impact of Cortez's death on Jazmon Reyna is sufficiently attenuated from Spec. Glawson's death so as to make it unreasonable to award Jazmon Reyna enhanced solatium damages for the combined impact of both deaths, only one of which was caused by Iran's material support for the EFP attack at issue here. Nor has Jazmon Reyna provided the Court with any authority demonstrating her entitlement to enhanced damages for trauma associated with a third party's death that may have been indirectly precipitated by Iran's actions. Instead, Cortez's estate, which is a plaintiff in the *Karcher* case, is the proper party to request an upward departure for enhanced solatium damages for his suffering. And although the Court is mindful of impact that losing two siblings has had on Jazmon Reyna, she has not demonstrated particularly acute suffering like the plaintiff in *Valore* or other similar cases. For these reasons, the Court **DECLINES TO ADOPT** the Special Master's recommendation with respect to Jazmon Reyna and instead finds it appropriate to award damages to her in the amount consistent with siblings under the *Heiser* framework—$2.5 million.

The second plaintiff to request a departure is Donald Mayes, the stepfather of Private First Class ("Priv. 1st Class") Antonio Stiggins, a U.S. servicemember killed in Iraq on April 22, 2011 when an EFP struck his vehicle. *See Stearns*, 2022 WL 4764905, at *42. Donald Mayes requests a downward departure of 25 percent from the damages award typically given to parents because, although Priv. 1st Class Stiggins and he lived in the same home for many years and he considered Priv. 1st Class Stiggins as a son, "much of Donald Mayes's suffering in the wake of Priv. 1st Class Stiggins's death stems from the effects that PFC Stiggins's death has had on Angel [his wife and Priv. 1st Class Stiggins's biological mother]." 2d Special Master Rep. at

50–52 (citing Ex. LL, Declaration of Donald Mayes, dated June 18, 2021, ¶¶ 9–10, 32, 35). In light of this testimony, the Court agrees with the Special Master that it is reasonable to award Donald Mayes less than the award typically given to biological parents because "[w]hile [he] feels a loss, the focus of [his] concern is the effect that [PFC Stiggins's] death has had on his wife." *Fritz*, 2018 WL 5046229, *22. Therefore, the Court **ADOPTS** the Special Master's recommendation to award a downward departure—$3,750,000 million in solatium damages—to Donald Mayes.

### B.   Pain and Suffering Damages

Assessing appropriate pain and suffering damages depends upon several factors. Where "death was instantaneous there can be no recovery[.]" *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.D.C. 2000) (citation omitted). *See also Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 39 n.4 (D.D.C. 2016) (noting that where plaintiffs "submit[ ] no evidence . . . showing that either of the [v]ictims suffered any pain and suffering prior to their deaths in the suicide bombings," damages must be denied). Victims who survived a few minutes to a few hours after the bombing typically receive an award of $1 million. *Elahi*, 124 F. Supp. 2d at 113.

The Special Master has recommended that the estate of Priv. 1st Class Stiggins be awarded pain and suffering damages in line with the established framework for such damages in this District. 2d Special Master Rep. at 43–44. The Court agrees with the Special Master and therefore **ADOPTS**, without modification, the Special Master's recommended damage award for pain and suffering.

C.    **Economic Damages**

28 U.S.C. § 1605A, like its statutory predecessor 28 U.S.C. § 1605(a)(7), establishes a cause of action for economic damages resulting from an act of state-sponsored terrorism. "The report of a forensic economist may provide a reasonable basis for determining the amount of economic damages." *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012). Before recommending the adoption of a forensic analysis, the Special Master must first examine the methodological soundness of the calculations, mindful that "mathematical exactitude is often impossible," *Bova v. Islamic Republic of Iran*, No. 15-cv-1074 (RCL), 2020 WL 2838582, at *11 (D.D.C. May 31, 2020), and then examine "the reasonableness and foundation of the assumptions relied upon by the expert," *Roth*, 78 F. Supp. 3d at 402, to safeguard against "speculation, contingency, or conjecture." *Bova*, 2020 WL 2838582, at *11. The need for scrutiny becomes enhanced for those claims implicating "[d]epartures from actual pre-injury earnings," as they "must be justified and cannot be unduly speculative." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 727 (6th Cir. 2012).

The Special Master has recommended that economic damages be awarded to the estate of Roberto Andrade, a U.S. servicemember killed in Iraq on January 18, 2009 when an EFP struck his vehicle, *see Stearns*, 2022 WL 4764905, at *27, as well as the estates of Spec. Glawson and Priv. 1st Class Stiggins, "for economic losses in the form of lost wages, benefits, and retirement pay." 2d Special Master Rep. at 5–6, 25–26, 41–42. The Special Master reviewed appraisals of the present value of the economic life of these plaintiffs prepared by Dr. L. Wayne Plumly, Jr., an acknowledged expert in the field of forensic economics. *Id.* at 1–2; Ex. C, Appraisal of Present Value of Economic Life of Roberto Andrade, Jr. (Mar. 30, 2023); Ex. R,

Appraisal of Present Value of Economic Life on Curtis Eric Glawson, Jr., (May 29, 2023); Ex. EE, Appraisal of Present Value of Economic Life of Antonio Stiggins, (Apr. 27, 2023). The estates of those servicemen have proven to the satisfaction of the Special Master, and thus to the satisfaction of this Court, the loss of accretions resulting from these wrongful deaths. *Valore*, 700 F. Supp. 2d at 85. The Court therefore **ADOPTS**, without modification, the Special Master's recommended damage awards for economic loss.

### D. Punitive Damages

Finally, plaintiffs have requested an award of punitive damages. ECF No. 63.

Punitive damages serve to punish and deter the actions for which they are awarded, rather than to compensate the victim. *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 61 (D.D.C. 2009). In determining the proper punitive damages award, courts evaluate four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008) (citing Restatement (Second) of Torts § 908). Though there was some confusion among circuits as to whether punitive damages were available in 28 U.S.C. § 1065A actions for conduct occurring prior to the statute's enactment, such as some of the attacks at issue in the instant case, the Supreme Court recently answered the question in the affirmative. *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1608 (2020) ("Congress was as clear as it could have been when it expressly authorized punitive damages under § 1605A(c) and explicitly made that new cause of action available to remedy certain past acts of terrorism.").

This District has developed three primary methods of calculating punitive damages in FSIA cases. The first, used more commonly in mass-casualty events, involves multiplying the foreign state's "annual expenditures on terrorism" by a factor between three and five. *See Valore*, 700 F. Supp. 2d at 87–88. The second approach awards a fixed amount of $150 million per affected family. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008). The third approach involves multiplying the total compensatory damages award by a factor of between one and five. *See Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 73 (D.D.C. 2015). The multiplier approach is especially appropriate when the defendants "did not directly carry out the attack, but funded [a proxy actor], [and] it is doubtful whether a large amount . . . would have the deterrent effect that it might have had in times past." *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 28 (D.D.C. 2017) (quoting *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 26 (D.D.C. 2016)).

The nature of Iran's acts is heinous and the extent of the harm they caused is tragic. Iran intentionally supported proxy actors who specifically sought to wreak particularly lethal injury on U.S. servicemembers and contractors. Nevertheless, the conduct here fits more squarely within the line of cases awarding punitive damages as a multiplier of compensatory damages. Given that punitive damages calculated as "a multiplier of three" of the compensatory damages is "the usual practice in state sponsored terrorism cases," *see Roth v. Islamic Republic of Iran*, No. 14-cv-01946 (RCL), 2018 WL 4680270, at *17 (D.D.C. Sept. 28, 2018), and the plaintiffs have not offered a reason to depart from this practice, this Court concludes that the plaintiffs are entitled to punitive damages in the amount three times the compensatory damages, to be apportioned according to each plaintiff's share of the compensatory damages. *See id.* (awarding punitive damages equal to

three times compensatory damages for Syria and Iran's sponsorship of a bombing in Jerusalem that killed fifteen people, including a plaintiff); *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 105–06 (D.D.C. 2017) (awarding punitive damages equal to three times compensatory damages for plaintiffs injured in a shooting in Israel); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50–51 (D.D.C. 2012) (using a three times multiplier in a case involving a terrorist bombing); *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011) (same); *Murphy*, 740 F. Supp. 2d at 82–83 (same).

### III.  CONCLUSION

This Court acknowledges plaintiffs' efforts to hold Iran responsible for these particularly calculated and destructive acts of terror. This Court hopes that the victims and their families may find some measure of solace from this Court's final judgment.

The Court finds defendants responsible for the injuries sustained by the plaintiffs and thus liable under the FSIA's state-sponsored terrorism exception for $52,682,202 in compensatory damages and $158,046,607 in punitive damages, for a total award of $210,728,809.

A separate Order and Judgment consistent with these findings shall be entered this date.

**IT IS SO ORDERED.**

SIGNED this _4th_ day of August, 2023.

Royce C. Lamberth
United States District Judge