UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHIRLEY STEARNS, *et al.*,

      *Plaintiffs,*

v.

THE ISLAMIC REPUBLIC OF IRAN,

      *Defendant.*

Case No. 17-cv-131 (RCL)

## MEMORANDUM OPINION

Before the Court is the Special Master's fourth report and recommendations regarding damages in this case.  ECF No. 87.  For the reasons stated below, the Court adopts each of the damages recommendations provided by the Special Master—with two exceptions. Additionally, the Court awards punitive damages in favor of plaintiffs.

### I.    BACKGROUND

This civil action arises from a series of attacks involving explosively formed penetrators ("EFPs"), a type of improvised explosive device ("IED"), that insurgents in Iraq used to injure or kill American servicemembers and a military contractor between 2004 and 2011.

Filed on January 19, 2017, the Complaint was brought under 28 U.S.C. § 1605A by the surviving victims, the estates of the deceased victims, and their close family members seeking compensatory and punitive damages.  ECF No. 1.  Plaintiffs filed an Amended Complaint on March 22, 2018.  ECF No. 14.  Plaintiffs served defendant Islamic Republic of Iran ("Iran") through diplomatic channels on August 12, 2018.  ECF No. 21.  Following Iran's failure to

- 1 -

respond, and upon affidavit by plaintiffs' counsel, the Clerk of Court entered default on October 15, 2018.  ECF No. 23.

On December 30, 2021, plaintiffs filed a memorandum of proposed findings of fact and conclusions of law ("PFFCL") in support of their motion for default judgment as to Iran's liability for plaintiffs' injuries stemming from 58 of the attacks alleged in their Amended Complaint. PFFCL in Supp. of Mot. for Default J., ECF No. 35 at 2.  Specifically, they asked this Court to: (1) "Court find Iran liable for the attacks at issue in this PFFCL"; (2) "based upon the evidence they presented in [*Karcher v. Islamic Republic of Iran*, No. 16-cv-232 (CKK) (D.D.C.)]" "as well as additional evidence that" plaintiffs submitted here.  *Id.*

On October 3, 2022, the Court issued a Memorandum Opinion, ECF No. 47, holding that Iran materially supported the attacks, that Iran proximately caused plaintiffs' injuries through its material support, and that Iran did so with an intent to cause severe emotional distress.  *See also Stearns v. Islamic Republic of Iran*, 633 F. Supp. 3d 284 (D.D.C. 2022).  Accordingly, the Court issued a Finding of Liability as to injuries sustained by 229 plaintiffs.  ECF No. 48.  Plaintiffs moved to appoint a special master.  ECF No. 50.  This Court granted plaintiffs' motion on February 21, 2023, appointing Stephen A. Salzburg to serve as Special Master.  ECF No. 52.  Plaintiffs then moved for orders to seal the Special Master's reports and to allow the Special Master to submit periodic reports.  ECF Nos. 54 & 55.  The Court granted plaintiffs' motions.  ECF No. 57 & 58.

On November 17, 2023, the Special Master filed his fourth report and recommendations with the Court regarding solatium and economic damages alleged by 18 plaintiffs.  ECF No 87. Plaintiffs submitted their proposed redactions to the Special Master's report.  ECF No. 88 ("4th Special Master Rep.").  The parties have not filed any objections to the reports and

- 2 -

recommendations within the statutorily allotted time. *See* Fed. R. Civ. P. 53(f)(2) (allowing a party to "file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served").

Having established liability, this Court examines the Special Master's recommended damages awards for the plaintiffs identified in his fourth report.

## II.   DISCUSSION

Damages available under the FSIA "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c).  To demonstrate entitlement to damages, "a default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq,* 328 F.3d 680, 683–84 (D.C. Cir. 2003) (quoting *Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980)).  *See also* H.R. REP. No. 94-1487, at 26 (1976) (stating that 28 U.S.C. § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F[ed]. R. Civ. P."). For future damages, a plaintiff must demonstrate entitlement to a "reasonable certainty or a preponderance of the evidence," and prove damages by a "reasonable estimate." *Hill,* 328 F.3d at 684.  For past losses, a plaintiff must "prove the *fact of injury* with reasonable certainty" yet only "reasonably prove" the amount of damages.  *Id.* at 684 (quoting *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997)).

Before the Court assesses the Special Master's recommendations as to damages, it must exclude two plaintiffs' claims from consideration at this time. First, the Court will not assess the claims of Nichole Garrigus.  The Court held Iran liable to Ms. Garrigus and several other plaintiffs on September 27, 2022. ECF No. 44. However, the Court has since learned—through declarations

that plaintiffs have submitted to the Special Master—that Ms. Garrigus died on July 19, 2020, during the pendency of litigation. *See* 4th Special Master Rep. 53 n. 343. The Court cannot award damages to a deceased litigant, as "[a] deceased individual cannot serve as the real party in interest in a civil action." *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 54 n.2 (D.D.C. 2013) (citing Fed. R. Civ. P. 25(a)(1)). Moreover, the Court cannot, at this junction, adopt the Special Master's recommended damages award to the Estate of Nichole Garrigus because the Estate of Nichole Garrigus is not a plaintiff in this case. Instead, the Court will order plaintiffs to file a motion for substitution within 60 days of the Order accompanying this Memorandum Opinion. Assuming plaintiffs move to substitute an estate, plaintiffs will be further ordered to provide the court with the applicable state law to assess that estate's standing to bring suit. *See Anderson v. The Islamic Republic of Iran*, 753 F. Supp. 2d 68, 82 (D.D.C. 2010) (explaining that whether estate-plaintiffs have standing to pursue claims for emotional injuries that the decedents suffered while alive is a question governed by "the law of the state which also governs the creation of the estate.").

Second, the Court will not assess Jennifer Roose's claims for solatium damages. In this case, jurisdiction under the FSIA's terrorism exception requires an "extrajudicial killing." 28 U.S.C. § 1605A(a)(1); *Stearns*, 633 F. Supp. 3d at 344–49. However, Ms. Roose's injuries appear to arise from an attack in which no one was killed. 4th Special Master Rep. 19–27. Thus, as this Court recently ordered, plaintiffs must explain why this Court should not vacate it's finding of liability as to Ms. Roose and dismiss her claims for lack of jurisdiction. *See* ECF No. 100; *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053 (D.C. Cir. 2024). The Court will reserve ruling on Ms. Roose's claims until plaintiffs' time to respond to the Court's Order has elapsed. *See* ECF

- 4 -

No. 100. With these exceptions set aside, plaintiffs have amply demonstrated that Iran's commission of acts of completed extrajudicial killings and provision of material support and resources for such killings was reasonably certain to—and, indeed, was intended to—injure plaintiffs. *See Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 37 (D.D.C. 2007).

The Court has received and reviewed the recommendations of the Special Master and **ADOPTS**, without discussion, all facts found and recommendations made that conform to the well-established solatium-damages framework articulated below. *See id.* at 51–53; *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83–87 (D.D.C. 2010). The Court will, however, discuss the instances where the Special Master has recommended that economic damages be granted. The Court will also discuss why an award of punitive damages is appropriate.

### A.      Solatium Damages

Solatium damages are designed "to compensate persons for mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as well as the harm caused by the loss of the decedent's society and comfort." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402–03 (D.D.C. 2015) (quoting *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 25 (D.D.C. 2011)) (internal quotation marks and alterations omitted).

In *Estate of Heiser v. Islamic Republic of Iran*, this Court surveyed damages awarded to the family members of the deceased terrorism victims and determined that, based on averages, that "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (D.D.C. 2006). This Court then established a framework whereby spouses of deceased victims receive approximately $8 million, parents receive $5 million, and siblings receive $2.5 million. *Id. See also Valore*, 700

F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson*, 515 F. Supp. 2d at 51).  Step-family members may similarly receive solatium damages awards consistent with the *Heiser* framework when they "were members of the victim's household" such that they were "viewed as the functional equivalents of family members." *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 337 (D.C. Cir. 2003).

When applying this framework, this Court is mindful that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that upward deviations may be warranted in the face of "evidence establishing an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27. "Decisions to deviate from the starting points provided by the *Heiser* framework are committed to the discretion of the particular court in each case[.]" *Id.* at 26.  Any departures from the *Heiser* framework are generally small relative to the award specified by the developed framework, absent "circumstances that appreciably worsen" a claimant's "pain and suffering, such as cases involving torture or kidnapping." *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006).  Conversely, downward departures may be appropriate where the evidence suggests that the relationship between the victim and his family members is attenuated, *Valore*, 700 F. Supp. 2d at 86, or where a claimant fails to "prove damages in the same manner and to the same extent as any other default winner." *Hill*, 328 F.3d at 683 (internal quotation marks and citation omitted).

- 6 -

All of the Special Master's awards for loss of solatium adhere to the *Heiser* guidelines and are grounded in sound evidentiary principles. *See generally* 4th Special Master Rep. Thus, with the exception of the claims of Nichole Garrigus and Jennifer Roose, the Court **ADOPTS** each of the Special Master's recommendations as to solatium damages.

**B.    Economic Damages**

28 U.S.C. § 1605A, like its statutory predecessor 28 U.S.C. § 1605(a)(7), establishes a cause of action for economic damages resulting from an act of state-sponsored terrorism. "The report of a forensic economist may provide a reasonable basis for determining the amount of economic damages." *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012). Before recommending the adoption of a forensic analysis, the Special Master must first examine the methodological soundness of the calculations, mindful that "mathematical exactitude is often impossible," *Bova v. Islamic Republic of Iran*, No. 15-cv-1074 (RCL), 2020 WL 2838582, at *11 (D.D.C. May 31, 2020), and then examine "the reasonableness and foundation of the assumptions relied upon by the expert," *Roth*, 78 F. Supp. 3d at 402, to safeguard against "speculation, contingency, or conjecture." *Bova*, 2020 WL 2838582, at *11. The need for scrutiny becomes enhanced for those claims implicating "[d]epartures from actual pre-injury earnings," as they "must be justified and cannot be unduly speculative." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 727 (6th Cir. 2012).

The Special Master has recommended that economic damages be awarded to the Estates of Joseph D. Helton, Jr., Dayne Dhanoolal, Jonathan Menke, Stuart Wolfer, and Mickel Garrigus, five U.S. servicemembers killed in Iraq, *see Stearns*, 633 F. Supp. 3d at 350–51, "for economic losses in the form of lost wages, benefits, and retirement pay." 4th Special Master Rep. at 6–7,

16–17, 18–19, 28–30, 47–48. The Special Master reviewed appraisals of the present value of the economic life of these plaintiffs prepared by Dr. L. Wayne Plumly, Jr., an acknowledged expert in the field of forensic economics. *Id.* at 2; Ex. C, Appraisal of Present Value of Economic Life on Joseph Dennis Helton, Jr., (October 19, 2023); Ex. L, Appraisal of Present Value of Economic Life on Dayne Darren Dhanoolal, (August 23, 2023); Ex. O, Appraisal of Present Value of Economic Life on Jonathan Menke, (Sept. 15, 2023), Ex. T, Appraisal of Present Value of Economic Life on Stuart A. Wolfer, (Sept. 12, 2023), Ex. GG, Appraisal of Present Value of Economic Life on Mickel Garrigus, (July 15, 2023). The estates of those servicemembers have proven to the satisfaction of the Special Master, and thus to the satisfaction of this Court, the loss of accretions resulting from these wrongful deaths. *Valore*, 700 F. Supp. 2d at 85. The Court therefore **ADOPTS**, without modification, the Special Master's recommended damage awards for economic loss.

### D. Punitive Damages

Finally, plaintiffs have requested an award of punitive damages. ECF No. 63.

Punitive damages serve to punish and deter the actions for which they are awarded, rather than to compensate the victim. *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 61 (D.D.C. 2009). In determining the proper punitive damages award, courts evaluate four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008) (citing Restatement (Second) of Torts § 908). Though there was some confusion among circuits as to whether punitive damages were available in 28 U.S.C. § 1605A actions for conduct occurring prior

- 8 -

to the statute's enactment, such as some of the attacks at issue in the instant case, the Supreme Court recently answered the question in the affirmative. *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1608 (2020) ("Congress was as clear as it could have been when it expressly authorized punitive damages under § 1605A(c) and explicitly made that new cause of action available to remedy certain past acts of terrorism.").

This District has developed three primary methods of calculating punitive damages in FSIA cases. The first, used more commonly in mass-casualty events, involves multiplying the foreign state's "annual expenditures on terrorism" by a factor between three and five. *See Valore*, 700 F. Supp. 2d at 87–88. The second approach awards a fixed amount of $150 million per affected family. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008). The third approach involves multiplying the total compensatory damages award by a factor of between one and five. *See Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 73 (D.D.C. 2015). The multiplier approach is especially appropriate when the defendants "did not directly carry out the attack, but funded [a proxy actor], [and] it is doubtful whether a large amount . . . would have the deterrent effect that it might have had in times past." *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 28 (D.D.C. 2017) (quoting *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 26 (D.D.C. 2016)).

The nature of Iran's acts is heinous and the extent of the harm they caused is tragic. Iran intentionally supported proxy actors who specifically sought to wreak particularly lethal injury on U.S. servicemembers and contractors. Nevertheless, the conduct here fits more squarely within the line of cases awarding punitive damages as a multiplier of compensatory damages. Given that punitive damages calculated as "a multiplier of three" of the compensatory damages is "the usual

practice in state sponsored terrorism cases," *see Roth v. Islamic Republic of Iran*, No. 14-cv-01946 (RCL), 2018 WL 4680270, at *17 (D.D.C. Sept. 28, 2018), and the plaintiffs have not offered a reason to depart from this practice, this Court concludes that the plaintiffs are entitled to punitive damages in the amount three times the compensatory damages, to be apportioned according to each plaintiff's share of the compensatory damages. *See id.* (awarding punitive damages equal to three times compensatory damages for Syria and Iran's sponsorship of a bombing in Jerusalem that killed fifteen people, including a plaintiff); *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 105–06 (D.D.C. 2017) (awarding punitive damages equal to three times compensatory damages for plaintiffs injured in a shooting in Israel); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50–51 (D.D.C. 2012) (using a three times multiplier in a case involving a terrorist bombing); *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011) (same); *Murphy*, 740 F. Supp. 2d at 82–83 (same).

### III.     CONCLUSION

This Court acknowledges plaintiffs' efforts to hold Iran responsible for these particularly calculated and destructive acts of terror.  This Court hopes that the victims and their families may find some measure of solace from this Court's final judgment.

The Court finds defendants responsible for the injuries sustained by the plaintiffs and thus liable under the FSIA's state-sponsored terrorism exception for $56,068,379.74 in compensatory damages and $168,205,139.22 in punitive damages, for a total award of $224,273,518.96.

A separate Order and Judgment consistent with these findings shall be entered this date.

**IT IS SO ORDERED.**

SIGNED this ___30th___ day of April, 2024.

Royce C. Lamberth
United States District Judge