UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHIRLEY STEARNS, *et al.*,

       *Plaintiffs,*

    v.

THE ISLAMIC REPUBLIC OF IRAN,

       *Defendant.*

Case No. 17-cv-131 (RCL)

## MEMORANDUM OPINION

Before the Court is the Special Master's ninth report and recommendations regarding damages in this case. ECF No. 146. For the reasons stated below, the Court adopts each of the damages recommendations provided by the Special Master.

### I.    BACKGROUND

This civil action arises from a series of attacks involving explosively formed penetrators ("EFPs"), a type of improvised explosive device ("IED"), that insurgents in Iraq used to injure or kill American servicemembers and a military contractor between 2004 and 2011.

Filed on January 19, 2017, the Complaint was brought under 28 U.S.C. § 1605A by the surviving victims, the estates of the deceased victims, and their close family members seeking compensatory and punitive damages. ECF No. 1. Plaintiffs filed an Amended Complaint on March 22, 2018. ECF No. 14. Plaintiffs served defendant Islamic Republic of Iran ("Iran") through diplomatic channels on August 12, 2018. ECF No. 21. Following Iran's failure to respond, and upon affidavit by plaintiffs' counsel, the Clerk of Court entered default on October 15, 2018. ECF No. 23.

On December 30, 2021, plaintiffs filed a memorandum of proposed findings of fact and conclusions of law ("PFFCL") in support of their motion for default judgment as to Iran's liability for plaintiffs' injuries stemming from 58 of the attacks alleged in their Amended Complaint. PFFCL in Supp. of Mot. for Default J., ECF No. 35 at 2. Specifically, they asked this Court to: (1) "Court find Iran liable for the attacks at issue in this PFFCL"; (2) "based upon the evidence they presented in [*Karcher v. Islamic Republic of Iran*, No. 16-cv-232 (CKK) (D.D.C.)]" "as well as additional evidence that" plaintiffs submitted here. *Id.*

On October 3, 2022, the Court issued a Memorandum Opinion, ECF No. 47, holding that Iran materially supported the attacks, that Iran proximately caused plaintiffs' injuries through its material support, and that Iran did so with an intent to cause severe emotional distress. *See also Stearns v. Islamic Republic of Iran*, 633 F. Supp. 3d 284 (D.D.C. 2022). Accordingly, the Court issued a Finding of Liability as to injuries sustained by 229 plaintiffs. ECF No. 48. Plaintiffs moved to appoint a special master. ECF No. 50. This Court granted plaintiffs' motion on February 21, 2023, appointing Stephen A. Salzburg to serve as Special Master. ECF No. 52. The Court instructed that the "Special Master shall be guided in reviewing and evaluating damages claims by FSIA opinions, including *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269, 318 (D.D.C. 2006); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010), and their progeny." *Id.* Plaintiffs then moved for orders to seal the Special Master's reports and to allow the Special Master to submit periodic reports. ECF Nos. 54 & 55. The Court granted plaintiffs' motions. ECF No. 57 & 58.

On January 15, 2025, the Special Master filed his ninth report and recommendations with the Court regarding solatium, pain and suffering, and economic damages alleged by twenty-five

plaintiffs ("9th Special Master Rep."). ECF No 146. These plaintiffs were injured in seven attacks spanning June 5, 2006, to March 23, 2008.[1] Plaintiffs submitted their proposed redactions to the Special Master's report. ECF No. 147. The parties have not filed any objections to the reports and recommendations within the statutorily allotted time. *See* Fed. R. Civ. P. 53(f)(2) (allowing a party to "file objections to—or a motion to adopt or modify—the master's order, report, or recommendations no later than 21 days after a copy is served").

Having established liability, this Court examines the Special Master's recommended damages awards for the plaintiffs identified in his ninth report.

## II.    DISCUSSION

Damages available under the FSIA "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). To demonstrate entitlement to damages, "a default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq,* 328 F.3d 680, 683–84 (D.C. Cir. 2003) (quoting *Alameda v. Sec'y of Health, Educ. & Welfare*, 622 F.2d 1044, 1048 (1st Cir. 1980)). *See also* H.R. REP. No. 94-1487, at 26 (1976) (stating that 28 U.S.C. § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F[ed]. R. Civ. P."). For future damages, a plaintiff must demonstrate entitlement to a "reasonable certainty or a preponderance of the evidence," and prove damages by a "reasonable estimate." *Hill*, 328 F.3d at 684. For past losses, a plaintiff must "prove the *fact of injury* with reasonable certainty" yet only "reasonably prove" the amount of damages. *Id.* at 684 (quoting *Samaritan Inns, Inc. v.*

---

[1] Specifically, the seven attacks occurred on June 5, 2006 (two attacks); June 8, 2006; May 14, 2007; June 17, 2007; July 9, 2007; March 23, 2008.

*District of Columbia*, 114 F.3d 1227, 1235 (D.C. Cir. 1997)).  There are three sets of plaintiffs whose damages were calculated in the 9th Special Master Report: six direct victims of terrorist attacks who survived the attacks; family members of these survivors as well as family members of other individuals who did not survive; and the estate of one victim who did not survive.  Each set of plaintiffs requires application of a different framework for their damages.  The Court will address the damages of each set of plaintiffs in turn.

### A.     The WIA Plaintiffs

The first set of plaintiffs is composed of six surviving victims of EFP attacks ("WIA Plaintiffs").  The WIA Plaintiffs requested that the Special Master apply the framework adopted by the Court in *Lee v. Islamic Republic of Iran*, which takes into account the range of injuries that medical experts have identified as stemming specifically from EFP attacks.  No. 19-cv-830-APM, 2023 WL 7458370 (D.D.C. Oct. 16, 2023).  Based on the Special Master's findings in this case, the Court will adopt the *Lee* framework for the WIA plaintiffs.  That framework establishes the following categories for individuals based on their various injuries:

| Category | Characteristic Injuries | Proposed Damages |
|---|---|---|
| **Category 1** | Psychological injuries (without traumatic brain injury ("TBI") diagnosis/severe shrapnel/ fractures/orthopedic injuries/polytrauma) | Baseline: $2 million<br>Range: $1.5 - $8 million |
| **Category 2** | Mild TBI with psychological injuries (without severe shrapnel/fractures/ orthopedic injuries/polytrauma/traumatic amputations) | Baseline: $5 million<br>Range: $3 - $7 million |
| **Category 3** | Mild TBI with psychological injuries (with severe | Baseline: $7 million<br>Range: $4 - $10 million |

| | shrapnel/fractures/orthopedic injuries) | |
|---|---|---|
| **Category 4** | Mild TBI with psychological injuries (with polytrauma/traumatic amputations) | Baseline: $15 million<br>Range: $10 - $20 million |
| **Category 5** | Moderate/severe TBI (without severe shrapnel/fractures/orthopedic injuries/ polytrauma/traumatic amputations) | Baseline: $20 million<br>Range: $15 - $25 million |
| **Category 6** | Moderate/severe TBI (with severe shrapnel/fractures/orthopedic injuries/polytrauma/traumatic amputations) | Baseline: $30 million<br>Range: $25 - $50 million |

Based on the extensive documentary and other evidence submitted to him, the Special

Master made findings and proceeded to sort each of the six WIA Plaintiffs into one of the *Lee*

categories before recommending a commensurate award of damages:

| Name | Category of Injury | Non-Economic Damages | Summary of Injuries |
|---|---|---|---|
| Matthew Adamson | Category 2 | $3.5 million | • TBI diagnosis<br>██████████<br>• Adjustment Disorder diagnosis<br>• Service-connected rated for PTSD |
| James Shepard | Category 1 | $1.5 million | ██████████<br>• PTSD and Depression diagnoses |
| John Sklaney, III | Category 2 | $3.5 million | • PTSD diagnosis<br>• Adjustment disorder<br>• Positive depression screen<br>• Chronic insomnia<br>• Screened positive for TBI (Diagnosis |

| | | | |
|---|---|---|---|
| | | | for cognitive/linguistic deficits due to TBI)<br>• Hearing loss and tinnitus |
| Joshua Starkey | Category 1 | $2 million | • Shrapnel injuries, including shrapnel to shoulder and glass shards removed from back of head<br>████████████<br>• Chronic PTSD diagnosis |
| Joshua Brooks | Category 3 | $10 million | • Severe shrapnel injury to left lower leg<br>• 3rd degree burns<br>• Massive soft tissue injuries and scarring<br>• Chronic pain<br>• Screened positive for TBI<br>• Insomnia<br>• OSA (Obstructive Sleep Apnea)<br>• Diagnosis of PTSD and MDD (Major Depressive Disorder)<br>████████████ |
| Matthew Benson | Category 4 | $15 million | • Severe head wound on left side resulting in fracture to back of the head, serious brain injury with swelling and a brain bleed<br>• Neck puncture wound<br>• Moderate TBI<br>• Chronic pain (head, neck, shoulder, and back)<br>• Daily headaches, migraines |

| | | | • Balance and vestibular disorder resulting in multiple fainting episodes<br>• Insomnia .<br>• Cognitive impairment and memory issues<br>• Encephalomalacia (softening of the brain)<br>• Acute encephalopathy<br>• Adjustment Disorder diagnosis<br>• PTSD diagnosis |
|---|---|---|---|

The Court **ADOPTS**, without discussion, the Special Master's recommendations, pursuant to the *Lee* framework, with regard to all six of the WIA Plaintiffs.

### B.     The Family Member Plaintiffs—Solatium Damages

Solatium damages are designed "to compensate persons for mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as well as the harm caused by the loss of the decedent's society and comfort." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402–03 (D.D.C. 2015) (quoting *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 25 (D.D.C. 2011)) (internal quotation marks and alterations omitted).

In *Heiser*, this Court surveyed damages awarded to the family members of the deceased terrorism victims and determined that, based on averages, that "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d at 269.  This Court then established a framework whereby spouses of deceased victims receive approximately $8 million, parents receive $5 million, and siblings receive

$2.5 million. *Id. See also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 51(D.D.C. 2007)). Step-family members may similarly receive solatium damages awards consistent with the *Heiser* framework when they "were members of the victim's household" such that they were "viewed as the functional equivalents of family members." *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 337 (D.C. Cir. 2003).

When applying this framework, this Court is mindful that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that upward deviations may be warranted in the face of "evidence establishing an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship" or with "medical proof of severe pain, grief or suffering on behalf of the claimant" or if the "circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27. "Decisions to deviate from the starting points provided by the *Heiser* framework are committed to the discretion of the particular court in each case[.]" *Id.* at 26. Any departures from the *Heiser* framework are generally small relative to the award specified by the developed framework, absent "circumstances that appreciably worsen" a claimant's "pain and suffering, such as cases involving torture or kidnapping." *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006). Conversely, downward departures may be appropriate where the evidence suggests that the relationship between the victim and his family members is attenuated, *Valore*, 700 F. Supp. 2d

at 86, or where a claimant fails to "prove damages in the same manner and to the same extent as any other default winner." *Hill*, 328 F.3d at 683 (internal quotation marks and citation omitted).

The Special Master made several upward departures from the *Heiser* framework for the surviving family members of deceased terrorism victims. The first of these plaintiffs is Rene Pool, the mother of a U.S. servicemember killed by an EFP attack. 9th Special Master Rep. 195. Her son, Specialist ("SPC") Mikeal Miller, was struck by an EFP in the July 9, 2007, attack. *Id.* at 193. Ms. Pool sat by his bedside for many days in the ensuing months, encouraging him and providing comfort in the face of her son's deteriorating condition. After doctors took SPC Miller off a feeding tube and continued other interventions, Ms. Pool sat by his side for the final twelve days of his life. Based on these and other details, the Special Master determined that Ms. Pool was entitled to the 20% upward departure provided for under the framework adopted by the court in *Fritz v. Islamic Republic of Iran*, No. 15-cv-456-RDM, 2018 WL 5046229 (D.D.C. Aug. 13, 2008). The Court agrees that the upward departure is warranted and **ADOPTS** the recommendation as to Ms. Pool.

The next plaintiff to receive an upward departure is Mrs. Tabitha McCoy, the widow of U.S. Army Sergeant ("SGT") Steve McCoy. SGT McCoy was seriously injured in the March 23, 2008 attack, and he eventually succumbed to his injuries on June 10, 2008. Mrs. McCoy "remained steadfast by Mr. McCoy's side" as his condition steadily improved after the March attack. 9th Special Master Rep. at 211. In a particularly devastating passage, Mrs. McCoy describes SGT McCoy's birthday on June 1, 2008, on which he said his only wish was a kiss from his wife. Decl. of Tabitha McCoy at ¶ 61. Sadly, SGT McCoy's condition quickly deteriorated after his birthday. 9th Special Master Rep. at 213. After experiencing a profound hope that her husband could pull

through, Mrs. McCoy was forced to make what must have been one of the hardest decisions of her young life: not resuscitating her husband in the event his heart stopped again. *Id.* On June 10, 2008, just nine days after his twenty-third birthday, SGT McCoy died from his injuries. Based on the foregoing and other horrific details, the Special Master determined that Mrs. McCoy was entitled to the 20% upward departure provided for under the framework adopted by the court in *Fritz.* The Court agrees that the upward departure is warranted and **ADOPTS** the recommendation as to Mrs. McCoy.

Courts in this District have established a separate set of baseline solatium awards for family members of victims who survived terrorist attacks: Spouses receive $4 million, parents and children receive $2.5 million, and siblings receive $1.25 million. *See Peterson*, 515 F. Supp. 2d at 52. Courts have awarded upward departures from those amounts when the victim's family members endured especially severe suffering. *See, e.g., Estate of Brown v. Islamic Republic of Iran*, 872 F. Supp. 2d 37, 43–44 (D.D.C. 2012) (awarding 20% upward departure to victim's sister who "suffered a 'nervous breakdown' following Anthony's death for which she sought medical treatment and was prescribed medication for approximately one year") (citing Report of the Special Master (Estate of Anthony Brown), No. 08-cv-531-RCL, ECF No. 51, at 11–13, 17). The Special Master applied this *"Valore/Peterson II"* framework to those family member plaintiffs whose loved ones survived the EFP attacks.

The rest of the Special Master's awards for loss of solatium adhere to the *Heiser* and *Valore/Peterson II* framework and are grounded in sound evidentiary principles. *See generally* 9th Special Master Rep. Thus, the Court **ADOPTS**, without modification, each of the Special Master's remaining recommendations as to solatium damages.

### C.    The Estate Plaintiff—Economic Damages

28 U.S.C. § 1605A, like its statutory predecessor 28 U.S.C. § 1605(a)(7), establishes a cause of action for economic damages resulting from an act of state-sponsored terrorism. "The report of a forensic economist may provide a reasonable basis for determining the amount of economic damages." *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012). Before recommending the adoption of a forensic analysis, the Special Master must first examine the methodological soundness of the calculations, mindful that "mathematical exactitude is often impossible," *Bova v. Islamic Republic of Iran*, No. 15-cv-1074-RCL, 2020 WL 2838582, at *11 (D.D.C. May 31, 2020), and then examine "the reasonableness and foundation of the assumptions relied upon by the expert," *Roth*, 78 F. Supp. 3d at 402, to safeguard against "speculation, contingency, or conjecture." *Bova*, 2020 WL 2838582, at *11. The need for scrutiny becomes enhanced for those claims implicating "[d]epartures from actual pre-injury earnings," as they "must be justified and cannot be unduly speculative." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 727 (6th Cir. 2012).

The Special Master has recommended that economic damages be awarded to the Estate of Sergeant First Class ("SFC") Daniel Crabtree, who was killed by an EFP on June 8, 2006. 9th Special Master Rep. at 203–04. The Special Master reviewed appraisals of the present value of the economic life of these plaintiffs prepared by Dr. L. Wayne Plumly, Jr., an acknowledged expert in the field of forensic economics. *Id.* at 4, 6; Ex. MMM, Appraisal of Present Value of Economic Life on Daniel Brian Crabtree (Sept. 26, 2024). The Estate has proven to the satisfaction of the Special Master, and thus to the satisfaction of this Court, the loss of accretions resulting from his wrongful death. *Valore*, 700 F. Supp. 2d at 85. The Court therefore **ADOPTS**, without

modification, the Special Master's recommended damage awards for economic loss as to SFC Crabtree.

### Punitive Damages

Finally, plaintiffs have requested an award of punitive damages. ECF No. 63.

Punitive damages serve to punish and deter the actions for which they are awarded, rather than to compensate the victim. *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 61 (D.D.C. 2009). In determining the proper punitive damages award, courts evaluate four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008) (citing Restatement (Second) of Torts § 908). Though there was some confusion among circuits as to whether punitive damages were available in 28 U.S.C. § 1605A actions for conduct occurring prior to the statute's enactment, such as some of the attacks at issue in the instant case, the Supreme Court recently answered the question in the affirmative. *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1608 (2020) ("Congress was as clear as it could have been when it expressly authorized punitive damages under § 1605A(c) and explicitly made that new cause of action available to remedy certain past acts of terrorism.").

This District has developed three primary methods of calculating punitive damages in FSIA cases. The first, used more commonly in mass-casualty events, involves multiplying the foreign state's "annual expenditures on terrorism" by a factor between three and five. *See Valore*, 700 F. Supp. 2d at 87–88. The second approach awards a fixed amount of $150 million per affected family. *See Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008). The third

- 12 -

approach involves multiplying the total compensatory damages award by a factor of between one and five. *See Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 73 (D.D.C. 2015). The multiplier approach is especially appropriate when the defendants "did not directly carry out the attack, but funded [a proxy actor], [and] it is doubtful whether a large amount . . . would have the deterrent effect that it might have had in times past." *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 28 (D.D.C. 2017) (quoting *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 26 (D.D.C. 2016)).

The nature of Iran's acts is heinous and the extent of the harm they caused is tragic. Iran intentionally supported proxy actors who specifically sought to wreak particularly lethal injury on U.S. servicemembers and contractors. Nevertheless, the conduct here fits more squarely within the line of cases awarding punitive damages as a multiplier of compensatory damages. Given that punitive damages calculated as "a multiplier of three" of the compensatory damages is "the usual practice in state sponsored terrorism cases," *see Roth v. Islamic Republic of Iran*, No. 14-cv-01946 (RCL), 2018 WL 4680270, at *17 (D.D.C. Sept. 28, 2018), and the plaintiffs have not offered a reason to depart from this practice, this Court concludes that the plaintiffs are entitled to punitive damages in the amount three times the compensatory damages, to be apportioned according to each plaintiff's share of the compensatory damages. *See id.* (awarding punitive damages equal to three times compensatory damages for Syria and Iran's sponsorship of a bombing in Jerusalem that killed fifteen people, including a plaintiff); *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 105–06 (D.D.C. 2017) (awarding punitive damages equal to three times compensatory damages for plaintiffs injured in a shooting in Israel); *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50–51 (D.D.C. 2012) (using a three times multiplier in a case involving a terrorist bombing);

*Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011) (same); *Murphy*, 740 F. Supp. 2d at 82–83 (same).

## III.    CONCLUSION

This Court acknowledges plaintiffs' efforts to hold Iran responsible for these particularly calculated and destructive acts of terror.  This Court hopes that the victims and their families may find some measure of solace from this Court's final judgment.

The Court finds defendants responsible for the injuries sustained by the plaintiffs and thus liable under the FSIA's state-sponsored terrorism exception for $35,500,000 in compensatory damages, $55,850,000 in solatium damages, and $2,161,226.14 in economic-loss damages for a total award of $93,511,226.14.

A separate Order and Judgment consistent with these findings shall be entered this date.

**IT IS SO ORDERED.**

SIGNED this 29th day of April, 2025.

Royce C. Lamberth
United States District Judge

- 14 -